Mark C. Hansen (*pro hac vice* pending)
Michael J. Guzman (*pro hac vice* pending)
David L. Schwarz (CA Bar No. 206257)
 *Attorneys for Defendants Pritzker and Valani*
KELLOGG HANSEN TODD FIGEL &
      FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
TEL: (202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | Case No. 3:20-cv-02345-WHO<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NON-MANAGEMENT DIRECTORS' MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:      April 21, 2021<br>Time:      2:00 p.m.<br>Courtroom.:  2<br>Judge:     Hon. William H. Orrick |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on April 21, 2021, at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendants Nicholas Pritzker and Riaz Valani will and hereby do move the Court for an order dismissing all claims against them in the Direct Purchaser Consolidated Class Action Complaint (ECF No. 135).  This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, any Reply Memorandum, the pleadings and files in the proceeding, and such other matters as may be presented at or before the hearing.

DATED:  January 15, 2021             Respectfully Submitted,

By:   */s/ Michael J. Guzman*
        Mark C. Hansen (*pro hac vice* pending)
        Michael J. Guzman (*pro hac vice* pending)
        David L. Schwarz (CA Bar No. 206257)
        *Attorneys for Defendants Pritzker
        and Valani.*
        KELLOGG HANSEN TODD FIGEL &
            FREDERICK, P.L.L.C.
        1615 M Street, N.W., Suite 400
        Washington, DC 20036
        TEL: (202) 326-7900
        mhansen@kellogghansen.com
        mguzman@kellogghansen.com
        dschwarz@kellogghansen.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

STATEMENT OF THE ISSUES TO BE DECIDED .......................................................... 1

INTRODUCTION ............................................................................................................... 2

STANDARD FOR DISMISSAL ......................................................................................... 3

ARGUMENT ....................................................................................................................... 4

I. THE COMPLAINT FAILS TO STATE A SECTION 7 CLAIM AGAINST EITHER NON-MANAGEMENT DIRECTOR ........................................................ 4

II. THE COMPLAINT FAILS TO STATE A SECTION 1 CLAIM AGAINST EITHER NON-MANAGEMENT DIRECTOR ........................................................ 5

III. THE COMPLAINT FAILS TO STATE A CLAIM FOR INJUNCTIVE RELIEF AGAINST EITHER NON-MANAGEMENT DIRECTOR ..................... 8

CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES** Page(s)

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 4, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 4

*Bogan v. Hodgkins*,
   166 F.3d 509 (2d Cir. 1999) .......................................................................................... 6

*C & W Const. Co. v. Bhd. of Carpenters & Joiners of Am., Local 745, AFL-CIO*,
   687 F. Supp. 1453 (D. Haw. 1988) ............................................................................... 6

*California Bail Bond Antitrust Litig., In re*,
   2020 WL 3041316 (N.D. Cal. Apr. 13, 2020) .............................................................. 6

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
   610 F.3d 820 (3d Cir. 2010) .......................................................................................... 3

*Fagbohungbe v. Caltrans*,
   2014 WL 644008 (N.D. Cal. Feb. 19, 2014) ............................................................ 4, 7

*Gerlinger v. Amazon.Com, Inc.*,
   311 F. Supp. 2d 838 (N.D. Cal. 2004) .......................................................................... 4

*GVF Cannery, Inc. v. California Tomato Growers Ass'n, Inc.*,
   511 F. Supp. 711 (N.D. Cal. 1981) ............................................................................... 6

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007) ....................................................................................................... 6

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
   726 F.2d 1381 (9th Cir. 1984) ...................................................................................... 8

*Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*,
   467 F. Supp. 841 (N.D. Cal. 1979) ....................................................................... passim

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
   2017 WL 4310767 (N.D. Cal. Sept. 28, 2017) ............................................................. 4

*Pillsbury, Madison & Sutro v. Lerner*,
   31 F.3d 924 (9th Cir. 1994) .......................................................................................... 4

*Polk Bros. v. Forest City Enters., Inc.*,
   776 F.2d 185 (7th Cir. 1985) ........................................................................................ 8

*Shannon v. Crowley*,
   538 F. Supp. 476 (N.D. Cal. 1981) ............................................................................... 6

*Siegler v. Sorrento Therapeutics, Inc.*,
 2019 WL 581719 (S.D. Cal. Feb. 13, 2019) .................................................................................. 6

*Top Rank, Inc. v. Haymon*,
 2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) ............................................................................... 4

*United States v. Coca-Cola Bottling Co. of Los Angeles*,
 575 F.2d 222 (9th Cir. 1978) ........................................................................................................ 4

*United States v. Topco Assocs., Inc.*,
 405 U.S. 596 (1972) ..................................................................................................................... 5

*United States v. U.S. Gypsum Co.*,
 438 U.S. 422 (1978) ..................................................................................................................... 5

**STATUTES**

15 U.S.C. § 1 ................................................................................................................................. 4, 5

15 U.S.C. § 18 .................................................................................................................................... 4

**RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 3

**STATEMENT OF THE ISSUES TO BE DECIDED**

1. Whether the claims in the Direct Purchaser Consolidated Class Action Complaint against Defendants Nicholas Pritzker and Riaz Valani should be dismissed for failure to meet the applicable legal standards.

**INTRODUCTION**

The Direct Purchaser Consolidated Class Action Complaint ("Complaint") alleges that two non-management directors of JUUL Labs, Inc. ("JLI") – Nicholas Pritzker and Riaz Valani (collectively, the "Non-Management Directors") – violated federal antitrust law by representing JLI in negotiations with a prospective investor.  Those negotiations led to Altria Group, Inc. ("Altria," and together with JLI, "the Companies") purchasing a minority, non-voting stake in JLI.  In conjunction with that purchase, the Companies also executed a series of forward-looking agreements, including licensing and services agreements.  Direct Purchaser Plaintiffs ("Plaintiffs") allege that the Non-Management Directors violated Section 7 of the Clayton Act and Section 1 of the Sherman Act based solely on their involvement in negotiating the agreements between the Companies.

Plaintiffs' attempt to hold the Non-Management Directors *personally liable* for the purported anticompetitive effects of a heavily lawyered business transaction between two corporations is unprecedented.  The Non-Management Directors have not located any prior example in which business-to-business negotiations resulting in any remotely similar transaction led to personal antitrust liability for some of the negotiators.  That does not reflect a failure of ambition by the plaintiffs' bar.  Antitrust claims against individuals must overcome a high standard before courts will expose them to treble damages and joint-and-several liability.  This Complaint does not come close to stating a valid claims against the Non-Management Directors.

Plaintiffs' Section 7 claims fail under the plain language of the statute:  That section prohibits the anticompetitive *acquisition* of stock or assets (as opposed to a sale).  Plaintiffs allege that JLI *sold* shares to Altria, and that the Non-Management Directors, among others, helped negotiate that sale.  Plaintiffs do not allege any acquisition of stock or assets by JLI or any involvement in any acquisition by either Non-Management Director.  The allegations thus cannot satisfy Section 7.

Plaintiffs' Section 1 claims against them likewise fail.  There is no vicarious liability for directors under the federal antitrust laws.  Rather, antitrust claims against *individuals* for a

1  corporation's alleged anticompetitive conduct cannot survive *unless* those claims are premised
2  on well-pled allegations of direct participation in a *per se* antitrust violation.  *See Murphy*
3  *Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841 (N.D. Cal. 1979), *aff'd*
4  *sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981).  The Complaint pleads
5  no such violation.  Moreover, Plaintiffs fail to allege any antitrust injury for the reasons set forth
6  in Altria's Motion to Dismiss (ECF No. 207), which the Non-Management Directors join in full
7  and incorporate by reference.  And a claim for injunctive relief cannot lie against the Non-
8  Management Directors, who lack the authority to compel JLI to take any particular action.
9         Ultimately, Plaintiffs' decision to name the Non-Management Directors as individual
10 defendants is nothing more than an attempt to put additional perceived deep pockets in the case.
11 This Complaint – filed just a few months ago – named ten other individuals, including JLI
12 executives as well as Altria board members and executives.  But Plaintiffs have now dropped all
13 of those other individual defendants from the case, despite their allegations that those individuals
14 also participated in negotiating Altria's investment in JLI.  The dismissal of most, but not all, of
15 the alleged negotiators makes clear that there has never been a credible legal basis for Plaintiffs
16 including *any* individuals in their Complaint.  The claims against the Non-Management Directors
17 are meritless and should be dismissed with prejudice.  *See* Fed. R. Civ. P. 12(b)(6).[1]

## STANDARD FOR DISMISSAL

19         Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a
20 complaint for "failure to state a claim upon which relief can be granted."  To withstand such a
21 motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its
22 face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  It is not enough that the claims

---

[1] When a plaintiff fails to allege an underlying corporate violation of the antitrust laws, any individual antitrust claims against the corporation's directors necessarily fail.  *See, e.g.*, *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 833 n.8 (3d Cir. 2010) (affirming the district court's judgment as a matter of law in favor of a corporation's directors because the plaintiff failed to prove an underlying corporate antitrust violation).  Because the Complaint fails to state a claim against JLI, all claims against the Non-Management Directors must be dismissed.

might be "conceivable." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555.

A complaint cannot rest on "labels and conclusions," nor on a "formulaic recitation of the elements of a cause of action." *Id.*; *see Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (allegations of a "conclusory nature" are "not entitled to be assumed true" when resolving a motion to dismiss); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim."). A complaint also may not rely on "general allegation[s] regarding 'defendants,'" as such allegations fail to "differentiate between each of the defendants and clearly state the factual basis for each cause of action as to each specific defendant." *Fagbohungbe v. Caltrans*, 2014 WL 644008, at *3 n.4 (N.D. Cal. Feb. 19, 2014) (Orrick, J.); *see also Top Rank, Inc. v. Haymon*, 2015 WL 9948936, at *9 (C.D. Cal. Oct. 16, 2015) (holding that the plaintiff "impermissibly relied on group pleading, *especially* by lumping [two differently situated groups of defendants] together") (emphasis in original).

**ARGUMENT**

**I.     THE COMPLAINT FAILS TO STATE A SECTION 7 CLAIM AGAINST EITHER NON-MANAGEMENT DIRECTOR**

Section 7 of the Clayton Act makes it unlawful for any person or entity to "acquire, directly or indirectly, the whole or any part" of the stock or assets of another, where "the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18; *see Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2017 WL 4310767, at *3 (N.D. Cal. Sept. 28, 2017) (discussing Section 7). "By its express terms [Section] 7 proscribes only the act of acquiring . . . ." *United States v. Coca-Cola Bottling Co. of Los Angeles*, 575 F.2d 222, 227 (9th Cir. 1978). A Section 7 claim "must be brought against the acquiring person or entity"; there is no cause of action, "as a matter of law, . . . against the person or entity selling the assets." *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 852 (N.D. Cal. 2004).

The Complaint challenges only one acquisition of stock or assets: *Altria's* acquisition of

a minority stake in JLI. *See* Compl. ¶¶ 93 ("Pursuant to the Purchase Agreement, Altria purchased a 35% non-voting stake in JLI for $12.8 billion in cash."), 169 (grounding the Section 7 claim in Altria's "recei[pt] of a substantial ownership stake in JLI"). Plaintiffs have no plausible basis for asserting Section 7 claims against the individual Non-Management Directors – who are corporate directors of JLI – for an acquisition of JLI stock made by Altria. As far as the Non-Management Directors are aware, no court has ever entertained, let alone allowed, such a claim; the statute's plain language makes such a claim inapt as a matter of law. The Court should dismiss Plaintiffs' Section 7 claims with prejudice.

## II. THE COMPLAINT FAILS TO STATE A SECTION 1 CLAIM AGAINST EITHER NON-MANAGEMENT DIRECTOR

Section 1 of the Sherman Act makes it unlawful to "make any contract or engage in any combination or conspiracy" "in restraint of trade or commerce among the several States." 15 U.S.C. § 1. As the Supreme Court has long recognized, "judicial elaboration of the [Sherman] Act" has not "always yielded the clear and definitive rules of conduct which the statute omits" and has led to "open-ended and fact-specific standards" such as the Rule of Reason, which involves an inquiry into the market effects of particular conduct. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 438 (1978). "Modern business patterns . . . are so complex that market effects of proposed conduct are only imprecisely predictable." *Id.* at 439 (quoting Report of the Attorney General's National Committee to Study the Antitrust Laws 349 (1955)). The result is that "the behavior proscribed by the [Sherman] Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct," especially in advance. *Id.* at 440-41; *see United States v. Topco Assocs., Inc.*, 405 U.S. 596, 609 n.10 (1972) ("Without the *per se* rules, businessmen would be left with little to aid them in predicting in any particular case what courts will find to be legal and illegal under the Sherman Act." (italics added)).

In light of "[t]he generality of the [Sherman] Act's prohibition, the often uncertain line between proper and improper conduct, and the social interest in not deterring economically

5
NMD Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Class Action Complaint –
Case No. 3:20-cv-02345-WHO

useful conduct by the imposition of excessive risks," *Murphy Tugboat*, 467 F. Supp. at 853, courts in the Ninth Circuit have set a high bar for individual antitrust liability.  Following *Murphy Tugboat* – "an excellent, well-reasoned opinion," *Shannon v. Crowley*, 538 F. Supp. 476, 480 (N.D. Cal. 1981) – courts have uniformly restricted individual liability for a corporation's alleged antitrust violation "to cases of participation in inherently wrongful conduct."  *Murphy Tugboat*, 467 F. Supp. at 853; *see, e.g.*, *In re California Bail Bond Antitrust Litig.*, 2020 WL 3041316, at *1, 17 (N.D. Cal. Apr. 13, 2020) ("Individuals may be liable for the antitrust violations of their employers if they have directly participated in or knowingly approved or ratified 'inherently wrongful' conduct." (quoting *Murphy Tugboat*, 467 F. Supp. at 853)); *Siegler v. Sorrento Therapeutics, Inc.*, 2019 WL 581719, at *13 (S.D. Cal. Feb. 13, 2019) ("[B]ecause Plaintiff has not alleged any 'inherently wrongful conduct' by any individual director, officer, or agent, any claim for personal liability fails on that additional ground.").[2]

"[I]nherently wrongful" conduct capable of triggering potential individual antitrust liability means *per se* antitrust violations.  *See Murphy Tugboat*, 467 F. Supp. at 853.  The "*per se*" label is reserved for categories of conduct "that would always or almost always tend to restrict competition and decrease output."  *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (citation omitted).  Such conduct is "obviously anticompetitive," *Bogan v. Hodgkins*, 166 F.3d 509, 514 (2d Cir. 1999), and "lack[s] . . . any redeeming virtue," *Leegin*, 551 U.S. at 886.  In short, while a corporation may be liable for rule of reason antitrust violations, the executives of that corporation may not.  *See Murphy Tugboat*, 467 F. Supp. at 853 (If a corporation's alleged conduct "violates no *per se* prohibition," as it "is supported by legitimate business considerations" and "is simply evidence of [anticompetitive conduct] when viewed in the light of all the surrounding facts and circumstances," then that conduct is not "inherently

---

[2] *See also, e.g.*, *C & W Const. Co. v. Bhd. of Carpenters & Joiners of Am., Local 745, AFL-CIO*, 687 F. Supp. 1453, 1465 (D. Haw. 1988); *GVF Cannery, Inc. v. California Tomato Growers Ass'n, Inc.*, 511 F. Supp. 711, 717 (N.D. Cal. 1981).

wrongful," and there can be no individual liability in antitrust. (italics added)).[3]

The Complaint is devoid of any well-pled allegations of any *per se* antitrust violation. *See* ECF No. 207.[4] Plaintiffs' conclusory and group-pled assertion that "Defendants' anticompetitive and unlawful conduct is *per se* unlawful," Compl. ¶ 166 (italics added), is entitled to no weight on a motion to dismiss. *See Iqbal*, 556 U.S. at 681 (discussing conclusory allegations); *Fagbohungbe*, 2014 WL 644008, at *3 n.4 (discussing group-pled allegations). The Complaint plausibly alleges only one agreement that relates to competition between the Companies: a run-of-the-mill non-compete provision in the Companies' "Relationship Agreement." Compl. ¶ 95; *see* ECF No. 207. The Relationship Agreement, in turn, was one of several multifaceted agreements that the Companies executed in conjunction with Altria's purchase of a minority stake in JLI. *See* Compl. ¶¶ 92-100.

The Complaint itself makes clear that the non-compete provision was a means to facilitate a much larger pro-competitive deal between the Companies. According to the Complaint, Mr. Valani explained that the non-compete was intended to ensure that Altria could not use its access as a major JLI investor to undermine JLI in the marketplace. *See* Compl. ¶ 70. Kevin Burns, who was JLI's CEO during negotiations between the Companies, is alleged to have expressed the same view. *See id.* ("I don't think it's practical in terms of Altria wanting to have

---

[3] The facts of *Murphy Tugboat* are instructive. The trial evidence showed that a CEO's "direct participation" in the conduct at issue "was limited" to a business-to-business purchase of assets. *Id.* The court rejected personal antitrust liability against the CEO on the basis of that participation, because the asset purchase, "even if coupled with a non-competition covenant, was not inherently wrongful." *Id.* The court further held that knowledge of the alleged anti-competitive behavior was not enough. While the CEO "must be assumed" to have knowingly "approved or ratified" a corporate policy of "refusing" jobs that included competitors, "that policy also [could not] be said to be inherently wrongful." *Id.*

[4] Tellingly, the Federal Trade Commission's administrative complaint against JLI and Altria – the basis for Plaintiffs' own case – does not suggest that the Companies' deal even raises the possibility of any *per se* violation. *See* Complaint, *In re Altria Group, Inc.*, No. 9393 (F.T.C. filed Apr. 1, 2020), https://www.ftc.gov/system/files/documents/cases/d09393 _administrative_part_iii_complaint-public_version.pdf (redacted). Rather, the Complaint alleges a violation pursuant to rule of reasons analysis

a significant stake in the company, have transparency on all the major strategic and operational priorities . . . and in parallel at the same time be competing with us against that product roadmap and those products.").

In short, Plaintiffs' own allegations confirm that the non-compete was "part of a larger endeavor whose success [it] promote[d]" by providing assurances JLI could "trust" Altria with its competitively sensitive information. *Polk Bros. v. Forest City Enters., Inc.*, 776 F.2d 185, 189 (7th Cir. 1985) (Easterbrook, J.). That trust laid the groundwork for "cooperation" between the Companies, thereby "facilitat[ing] efficient production." *Id.* at 188; *see id.* at 188–89 (explaining the benefits of non-competes). And as Altria explains in its Motion to Dismiss, the restrictions were necessary to allow Altria to obtain access to JLI's proprietary information in order to provide regulatory (and other) services to JLI. *See* ECF No. 207. It is well established that such "ancillary" non-competes – those that are "subordinate and collateral to another legitimate transaction and necessary to make that transaction effective," *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1395 (9th Cir. 1984) – are not *per se* antitrust violations. *See* ECF No. 207; *see also, e.g.*, *Polk Bros.*, 776 F.2d at 189 (explaining that covenants not to compete that are components of broader business transactions qualify as "ancillary restraints" subject to the Rule of Reason).

Because the Complaint fails to plead any *per se* antitrust violation, as required to impose antitrust liability on an individual, the Section 1 claims against the Non-Management Directors should be dismissed with prejudice.

### III. THE COMPLAINT FAILS TO STATE A CLAIM FOR INJUNCTIVE RELIEF AGAINST EITHER NON-MANAGEMENT DIRECTOR

Plaintiffs ask for "equitable and injunctive relief . . . to correct the anticompetitive effects caused by Defendants' unlawful conduct." Compl. ¶ 183. But the "series of agreements" challenged in the Complaint are between JLI and Altria; the Non-Management Directors are not parties to those agreements. Compl. ¶ 92; *see id.* ¶¶ 93-100 (describing the agreements). And as two individual members of JLI's Board, the Non-Management Directors have no authority to

compel JLI to take any action, so injunctive relief directed at them would be pointless.

## CONCLUSION

For these reasons, the Court should dismiss all claims against the Non-Management Directors. Because Plaintiffs have already received voluminous discovery, it is clear that further amendment cannot cure the Complaint's fundamental deficiencies and so dismissal should be with prejudice.

DATED: January 15, 2021                    Respectfully Submitted,

By: */s/ Michael J. Guzman*
Mark C. Hansen (*pro hac vice* pending)
Michael J. Guzman (*pro hac vice* pending)
David L. Schwarz (CA Bar No. 206257)
*Attorneys for Defendants Pritzker and Valani.*
KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
TEL: (202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com