David I. Gelfand (*pro hac vice*)
Jeremy J. Calsyn (State Bar No. 205062)
Nowell D. Bamberger (*pro hac vice*)
dgelfand@cgsh.com
jcalsyn@cgsh.com
nbamberger@cgsh.com
**Cleary Gottlieb Steen & Hamilton LLP**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999

Attorneys for Defendant
Juul Labs, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC. ANTITRUST LITIGATION | Case No. 3:20-CV-02345-WHO |
| | **Defendant Juul Labs, Inc.'s Notice of Motion and Motion to Compel Arbitration and Stay Litigation Or Alternatively Strike Class Allegations; Memorandum of Points and Authorities; [Proposed] Order** |
| This Document Relates to: **ALL DIRECT PURCHASER ACTIONS** | Judge: Hon. William H. Orrick<br>Date: April 21, 2021<br>Time: 2:00 P.M. PT<br>Ctrm.: 2 |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on April 21, 2021, at 2:00 P.M. PT., or as soon thereafter as this matter may be heard, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendants Juul Labs, Inc. ("JLI"), Nicholas Pritzker, and Riaz Valani will and hereby do move the Court for an order (a) compelling arbitration and dismissing or staying the litigation of claims brought by the Direct-Purchaser Plaintiffs in the Consolidated Class Action Complaint or, alternatively, (b) striking those Plaintiffs' class action allegations. JLI does not waive other Rule 12(b)(6) defenses to these or any related actions by not asserting such defenses in this Motion.

1    The Motion is based on this Notice of Motion, the accompanying Memorandum of Points

2  and Authorities, the attached Declaration of Eadon Jacobs and Exhibits, the pleadings and files in

3  these actions, and such other matters as may be presented at or before the hearing.

4

5  DATED:  January 15, 2021

6

7  **CLEARY GOTTLIEB STEEN &**                    **KELLOGG HANSEN TODD FIGEL**
   **HAMILTON LLP**                                **& FREDERICK, P.L.L.C.**

8

9  By:  _____*/s/ David I. Gelfand*_____         By:  _____*/s/ Michael J. Guzman*_____
              David I. Gelfand                              Michael J. Guzman

10                                                   Mark C. Hansen (admitted *pro hac vice*)
   David I. Gelfand (admitted *pro hac vice*)        Michael J. Guzman (admitted *pro hac*
11 Jeremy Calsyn (SBN #25062)                        *vice*)
   Nowell D. Bamberger (admitted *pro hac vice*)     David L. Schwarz (CA Bar No. 206257)
12 2112 Pennsylvania Avenue, NW                      1615 M Street, N.W. Suite 400
   Washington, D.C. 20037                            Washington, D.C. 20036
13 Telephone:  (202) 974-1500                        Telephone:  (202) 326-7900
   Email:  dgelfand@cgsh.com                         Email:  mhansen@kellogghansen.com
14         jcalsyn@cgsh.com                                  mguzman@kellogghansen.com
           nbamberger@cgsh.com                               dschwarz@kellogghansen.com
15

16 *Counsel for Defendants Juul Labs, Inc.*          *Counsel for Nicholas Pritzker and Riaz*
                                                      *Valani*
17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................1

II.    BACKGROUND ..............................................................................................2

    A.    Plaintiffs Agreed To The JLI Website Terms When They Created And Accessed JLI Website Accounts Between February 2019 and March 2020.............2

    B.    The Terms The Plaintiffs Agreed To When They Created Their Accounts Contained A Prominent Agreement To Arbitrate Claims Including Those Asserted Here And A Waiver Of The Right To Bring Class Claims........................7

III.    LEGAL STANDARD ......................................................................................9

IV.    ARGUMENT ................................................................................................10

    A.    Plaintiffs Agreed to Resolve This Dispute By Arbitration. ....................................10

    B.    The Arbitration Provision in JLI's Terms Encompasses Plaintiffs' Claims. ...........14

    C.    Any Dispute Regarding The Scope of The Agreement To Arbitrate Must Also Be Referred To Arbitration..............................................................................16

    D.    If The Court Declines To Compel Arbitration, Plaintiffs' Class Action Allegations Should Be Struck ...............................................................................18

    E.    Plaintiffs' Claims Against Individuals Associated With JLI Are Subject To The Agreement To Arbitrate ...............................................................................19

V.    CONCLUSION ............................................................................................21

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

**Federal Cases**

*Abreu v. Slide, Inc.*,
   No. C 12–00412, 2012 WL 2873772 (N.D. Cal. July 12, 2012) ...............................................10

*Allen v. Shutterfly, Inc.*,
   No. 20-cv-02448, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ..................................... 12-13

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ................................................................................................................15

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
   No. CV 15–00153, 2015 WL 1266787 (C.D. Cal. Mar. 18, 2015)...........................................18

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*,
   622 F. Supp. 2d 825 (N.D. Cal. 2007) .....................................................................................20

*ASUS Comput. Int'l v. InterDigital, Inc.*,
   No. 15-CV-01716, 2015 WL 5186462 (N.D. Cal. Sept. 4, 2015) ...........................................17

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002)....................................................................................16

*Bosinger v. Phillips Plastics Corp.*,
   57 F. Supp. 2d 986 (S.D. Cal. 1999) ........................................................................................15

*Brice v. 7HBF No. 2, Ltd.*,
   No. 19-cv-01481, 2019 WL 5684529 (N.D. Cal. Nov. 1, 2019) .............................................18

*Castorena v. Charter Commc'ns, LLC*,
   No. 18-cv-07981, 2018 WL 10806903 (C.D. Cal. Dec. 14, 2018) ..........................................19

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000)..................................................................................................14

*Colgate v. JUUL Labs, Inc.*,
   402 F. Supp. 3d 728 (N.D. Cal. 2019) ...............................................................................1, 12

*Dohrmann v. Intuit, Inc.*,
   823 F. App'x 482 (9th Cir. 2020)..............................................................................................13

**TABLE OF AUTHORITIES**
(Continued)

Page

*Epic Systems Corp. v. Lewis*,
    138 S. Ct. 1612, 1621 (2018) ...................................................................................19

*Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*,
    No. 20-CV-00574, 2020 WL 3869186 (N.D. Cal. July 9, 2020) ................................20

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ......................................................................14

*Gonzalez v. Comenity Cap. Bank*,
    No. 19-CV-00342, 2019 WL 5596811 (E.D. Cal. Oct. 30, 2019) ..............................19

*Greenberg v. Flynn*,
    No. CV 09-05273, 2010 WL 11596156 (C.D. Cal. Apr. 14, 2010) ...........................14

*Gutierrez v. Jolt Delivery, LLC*,
    No. LACV 17-8380, 2018 WL 6118581 (C.D. Cal. Aug. 7, 2018) ............................18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) .......................................................................................... 16-18

*Holl v. United Parcel Serv., Inc.*,
    No. 16-CV-05856, 2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) .........................11

*In re Am. Express Merchs.' Litig.*,  F.3d 204, 209 (2d Cir. 2012) ...................................16

*In re Apple & AT & TM Antitrust Litig.*,
    826 F. Supp. 2d 1168 (N.D. Cal. 2011) ................................................................9, 16

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003) ......................................................................16

*In re Evanston Nw. Corp. Antitrust Litig.*,
    No. 07-cv-04446, 2015 WL 13735423 (N.D. Ill. Sept. 4, 2015) ..............................16

*In re Facebook Biometric Info. Priv. Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................................................................10

*In re TFT-FLC (Flat Panel) Antitrust Litig.*,
    Nos. M 07–1827, C 10–5458, 2011 WL 5325589 (N.D. Cal. Sept. 19, 2011) ..........16

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Johnmohammadi v. Bloomingdale's, Inc.*,
    755 F.3d 1072 (9th Cir. 2014)...................................................................10

*KKE Architects, Inc. v. Diamond Ridge Dev. LLC*,
    No. CV 07-06866, 2008 WL 637603 (C.D. Cal. Mar. 3, 2008) ...............................14

*La Force v. GoSmith, Inc.*,
    No. 17-cv-05101, 2017 WL 9938681 (N.D. Cal. Dec. 12, 2017)...........................10

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020)...............................................................11

*Lomeli v. Midland Funding, LLC*,
    No. 19-CV-01141, 2019 WL 5684531 (N.D. Cal. Nov. 1, 2019)...........................10

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017).................................................................. 11-12

*Mohamed v. Uber Tech., Inc.*,
    109 F. Supp. 3d 1185 (N.D. Cal. June 9, 2015) ...............................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .....................................................................................9

*Nitsch v. DreamWorks Animation SKG Inc.*,
    100 F. Supp. 3d 851 (N.D. Cal. 2015) .........................................................10

*Norcia v. Samsung Telecomms. Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017).....................................................................11

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) ..................................................... 13-14

*Plastoform Indus. Ltd. v. Monster LLC*,
    No. 18-cv-02805, 2018 WL 10562845 (N.D. Cal. Sept. 6, 2018) ...........................10

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
    862 F.3d 981 (9th Cir. 2017)......................................................................17

*Regents of Univ. of Cal. v. Japan Sci. & Tech. Agency*,
    No. CV 14–04419, 2014 WL 12690187 (C.D. Cal. Oct. 16, 2014).........................10

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Romero v. Securus Techs., Inc.,*
  216 F. Supp. 3d 1078 (S.D. Cal. 2016) ....................................................................18

*Sanders v. Apple, Inc.,*
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .....................................................................18

*Simula Inc. v. Autoliv, Inc.,*
  175 F.3d 716 (9th Cir. 1999)............................................................................... 14-15

*Tompkins v. 23andMe, Inc.,*
  2014 WL 2903752 (N.D. Cal. June 25, 2014) .........................................................10

*Vigueras v. Red Robin Int'l, Inc.,*
  No. SACV 17-01422, 2019 WL 1425887 (C.D. Cal. Feb. 21, 2019) .......................19

**State Cases**

*Behm v. Am. Int'l Grp., Inc.,*
  No. N10C–10–013, 2013 WL 3981663 (Del. Super. Ct. July 30, 2013) ...................9

*Edelist v. MBNA Am. Bank,*
  790 A.2d 1249 (Del. Super. Ct. 2001) .....................................................................19

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,*
  89 Cal. App. 4th 1042, 107 Cal. Rptr. 2d 645 (2001) .............................................11

*Saint Agnes Med. Ctr. v. PacifiCare of Cal.,*
  31 Cal. 4th 1187 (2003)...........................................................................................9

**Federal Statutes**

9 U.S.C. § 1 ....................................................................................................9, 16, 18

9 U.S.C. § 3 ..............................................................................................1, 10, 16, 18

## ISSUE TO BE DECIDED

Whether the Direct-Purchaser claims in the Consolidated Class Action Complaint filed by plaintiffs Anthony Martinez, Jessica McGee, and Mallory Flannery (ECF No. 135) must be submitted to arbitration and, alternatively, whether their class action allegations should be struck pursuant to provisions contained in Terms and Conditions on Juul Labs, Inc.'s website to which each plaintiff agreed.

Motion to Compel Arbitration or Strike Class Allegations

I.        **<u>INTRODUCTION</u>**

Plaintiffs Anthony Martinez, Jessica McGee, and Mallory Flannery assert claims arising out of their purchases of Juul Labs, Inc.'s ("JLI") electronic nicotine delivery system ("ENDS") products.  Plaintiffs allege that they were "injured in connection with [his or her] purchases"— including that the prices they paid for these products were higher than they would have been if JLI had not had certain alleged dealings with Altria Group, Inc. ("Altria").  Each of the plaintiffs agreed, however, to arbitrate such claims.

Plaintiffs purchased their ENDS products from JLI through its website, www.juul.com. These purchases occurred pursuant to Terms and Conditions in a "clickwrap" agreement.  Plaintiffs agreed to these Terms and Conditions by clicking a conspicuous checkbox when they created their accounts between August 2018 and July 2019.  This is distinguishable from the situation considered by the Court in *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019), which involved a different visual presentation on the JLI website.

The Terms and Conditions include all of the terms of sale for the JUUL products, including terms related to the prices displayed to plaintiffs on the JLI website and paid by plaintiffs.  Those Terms and Conditions include an agreement to arbitrate "any claim, dispute, or controversy arising out of or in connection with or relating to these Terms, the breach or alleged breach thereof."  *See* Declaration of Eadon Jacobs ("Jacobs Decl."), Exs. 10-12.  Because plaintiffs' claims regarding the allegedly inflated prices of Juul products arise directly from and relate to the purchases plaintiffs made pursuant to the Terms, plaintiffs' claims that they were "injured in connection with [their] purchases" plainly fall within the scope of this agreement to arbitrate.  *See* CCAC ¶¶ 13-15.

For these reasons, JLI respectfully requests that plaintiffs' claims be referred to arbitration pursuant to 9 U.S.C. § 3, and that they be dismissed or stayed pending the outcome of the arbitration.

## II.     BACKGROUND

### A.     Plaintiffs Agreed To The JLI Website Terms When They Created And Accessed JLI Website Accounts Between February 2019 And March 2020.

Plaintiffs Mallory Flannery, Anthony Martinez, and Jessica McGee, purchased products directly from JLI during the relevant period.  Consolidated Class Action Complaint ("CCAC"), ECF No. 135, ¶¶ 13-15.  To do so, each accessed the JLI website, created an account, and signed into that account to verify their age and make their purchases.  Declaration of Eadon Jacobs ("Jacobs Decl."), Exs. 4-8.  JLI's e-commerce records confirm that each of the plaintiffs first created their JLI website accounts between August 2018 and July 2019.  *Id.* Exs. 1-3.

Plaintiffs Flannery and McGee completed their only e-commerce purchase from JLI on the same day they created their accounts.  *Id.*  Plaintiff Martinez accessed his account after its creation, including as recently as March 2020.  The table below summarizes the relevant dates based on JLI's records.

| Direct-Purchaser Plaintiff Dates of Account Creation and Direct Purchase(s) | | |
| --- | --- | --- |
| **Individual Plaintiff** | **Account Creation** | **Most Recent Purchase** |
| Mallory Flannery | February 26, 2019 | February 26, 2019 |
| Anthony Martinez | August 26, 2018 | March 13, 2020 |
| Jessica McGee | July 19, 2019 | July 19, 2019 |

Jacobs Decl., Exs. 1-3.

When each of the plaintiffs signed up for an account on JLI's website, they clicked a box and agreed to the Terms and Conditions, including the agreement to arbitrate "any claim, dispute, or controversy arising out of or in connection with or relating to these Terms, the breach or alleged breach thereof."  *Id.*, Exs. 10-12.  Reference to the agreement was conspicuous, as was the availability of the full text of the Terms and Conditions.  Users simply needed to click on a bolded, capitalized, and underlined hyperlink.  *Id.*, Exs. 4-8.  Without clicking on the agreement box, plaintiffs could not have created an account or completed their purchases from JLI, which plaintiffs assert as their only basis for standing to sue as direct purchasers in this case.

The following figures illustrate the screens on the JLI website that plaintiffs accessed when they created and subsequently logged into their accounts.  As the figures demonstrate, the prominent

reference to the Terms and Conditions, and requirement to "click" to agree to them, is a common feature that existed throughout the relevant time period.

**Figure 1** below is a screenshot of the JLI website account creation page as it existed in August 2018, when Plaintiff Martinez created his account.  Jacobs Decl., Ex. 4.



**Figure 1**

**Figure 2** below is a screenshot of the JLI website account creation page as it existed in February 2019, the month in which plaintiff Flannery created her account and made her purchase. Jacobs Decl., Ex. 5.

**Figure 2**

In July 2019, the JLI Website login page was updated to a "split screen" format, in which different screens were used to create new accounts and log in to existing accounts. **Figure 3** below is a screenshot of the "Create Your Account" accessed by plaintiff Jessica McGee on July 19, 2019, the day she created her account and made her purchase. Jacobs Decl., Ex. 6.

**CREATE YOUR ACCOUNT**

EMAIL

PASSWORD

BY REGISTERING WITH JUUL LABS, INC., YOU AGREE TO
OUR TERMS AND CONDITIONS AND PRIVACY POLICY.

SIGN UP

**ALREADY HAVE AN ACCOUNT?**

SIGN IN

**Figure 3**

In addition to creating his account on August 26, 2018, plaintiff Martinez subsequently signed in to the JLI Website and made purchases on July 31, 2019 and February 27 and March 13, 2020.   Jacobs Decl., Ex. 3.   On July 31, 2019, the JLI website was in the process of being incrementally updated and accordingly plaintiff Martinez would have signed in using either (a) a version of the "Log In/Sign Up" screen similar to the one depicted above, *see* Jacobs Decl., Ex. 8, or (b) the "Welcome Back" screen depicted in **Figure 4** below.  Jacobs Decl., Ex. 7, *see also id.* ¶ 7.



**WELCOME BACK**

EMAIL

PASSWORD

FORGOT YOUR PASSWORD?

SIGN IN

By registering with JUUL Labs, Inc., you agree to our _Terms and Conditions_ and _Privacy Policy._

---

**DON'T HAVE AN ACCOUNT?**

CREATE AN ACCOUNT

**Figure 4**

When plaintiff Martinez subsequently signed into the JLI Website on February 27, 2020 and March 13, 2020, he accessed the "Welcome Back" screen depicted in **Figure 5** below.  Jacobs Decl. Ex. 9.

**WELCOME BACK**

EMAIL

PASSWORD

FORGOT YOUR PASSWORD?

SIGN IN

By proceeding, you agree to our **Terms and Conditions** and **Privacy Policy**.

**Figure 5**

The common features of all of the pages plaintiffs used to access their accounts are that they (a) agreed to the Terms and Conditions by "clicking" a box when they created their accounts, and (b) acknowledged agreement to the Terms and Conditions by proceeding to subsequently sign in.

**B.** **The Terms The Plaintiffs Agreed To When They Created Their Accounts Contained A Prominent Agreement To Arbitrate Claims Including Those Asserted Here And A Waiver Of The Right To Bring Class Claims.**

While the Terms and Conditions on the JLI website were revised over time, the provisions relevant to this motion were identical when each of the plaintiffs agreed to be bound by them.  In each case, plaintiffs entered into a broad agreement with JLI to arbitrate claims arising out of or connected to the Terms and Conditions that governed their purchase of JUUL products from JLI.  The agreement to arbitrate and class action waiver were prominently presented, clearly explained and unambiguous:

**GOVERNING LAW, VENUE, AND CLASS ACTION /JURY TRIAL WAIVER**

[*     *     *]

Arbitration.  Read this section carefully because it requires the parties to arbitrate their disputes and limits the manner in which you can seek relief from JUUL Labs. For any dispute with JUUL Labs, you agree to first contact us via email and attempt to resolve the dispute with us informally.  In the unlikely event that JUUL Labs has not been able to resolve a dispute it has with you after sixty (60) days, **we each agree to resolve any claim, dispute, or controversy (excluding any claims for injunctive or other equitable relief as provided below) arising out of or in connection with or relating to these Terms, or the breach or alleged breach thereof (collectively, "Claims"), by binding arbitration by JAMS, under the Optional Expedited Arbitration Procedures then in effect for JAMS . . . .** Nothing in this Section shall be deemed as preventing JUUL Labs from seeking injunctive or other equitable relief from the courts as necessary to prevent the actual or threatened infringement, misappropriation, or violation of our data security, Intellectual Property Rights or other proprietary rights.

**Class Action/Jury Trial Waiver.**  With respect to all persons and entities, regardless of whether they have obtained or used the Website or JUUL Labs Products or services for personal, commercial or other purposes, all claims must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class action, collective action, private attorney general action or other representative proceeding.  This waiver applies to class arbitration, and, unless we agree otherwise, the arbitrator may not consolidate more than one person's claims.  You agree that, by entering into this agreement, you and JUUL Labs are each waiving the right to a trial by jury or to participate in a class action, collective action, private attorney general action, or other representative proceeding of any kind.

*Id.*, Ex. 10; *see also id.*, Exs. 11-12 (identical in relevant part) (emphasis added).  In each case, the Terms and Conditions in place when plaintiffs created their accounts were governed by California law.  *Id.*

When Plaintiff Martinez subsequently accessed his JLI account on February 27 and March 13, 2020, he agreed to be bound by a subsequent version of the agreement that, in addition to this language, stated that the agreement to arbitrate included claims arising or related to his "purchase or use of JUUL Products." Jacobs Decl., Ex. 12. These Terms and Conditions included a Delaware choice of law and venue provision. *Id.*

In all relevant versions of the JLI website Terms and Conditions, the arbitration agreement and class action waiver provisions were called out in a notice at the top of the page:

**GENERAL STATEMENT / WEBSITE TERM OF USE**:

> JUUL Labs has adopted these Terms of Service to inform you of your rights and obligations when using the Website and/or when purchasing any JUUL Labs products or goods . . . . Your use of this Website, and/or your purchase of any Products constitutes your agreement to the following Terms of Service. If you do not agree to these Terms of Service you may not use the Website or purchase our Products from the websites.

> JUUL Labs may, and reserves the right, to from time to time modify, limit, change, discontinue, or replace the website and these Terms of Service at any time. In the event JUUL Labs modifies, limits, changes, or replaces the website or these Terms of Service, your continued use thereafter constitutes your agreement to such modification, limitation, change, or replacement.

> It is your responsibility to review these Terms of Service on a regular basis to keep yourself informed of any modifications, limitations, changes, or replacements.

> * * *

> Please read these Terms of Service carefully to ensure that you understand each provision. **These Terms contain a mandatory individual arbitration and class action/jury trial waiver provision that requires the use of arbitration on an individual basis to resolve disputes, rather than jury trials or class actions**.

*Id.*, Ex. 10 (emphases added); *see also id.*, Exs. 11-12 (identical in relevant part) (emphases added).

Plaintiffs' claims in this case are predicated on their purchases of JUUL products from JLI in transactions conducted pursuant and subject to the terms of agreement described above. Their allegations of antitrust injury arise directly from and relate to those transactions.

Each of the plaintiffs allege, and JLI's e-commerce records confirm, that they purchased ENDS products, including devices and pods, directly from JLI during the relevant period. CCAC ¶¶ 13-15. Likewise, each alleges that they were "injured in connection with its purchases … as a

1  result of Defendants' anticompetitive and unlawful agreements alleged herein." *Id.*  Plaintiffs

2  contend that allegedly illegal agreements between JLI and Altria "had the purpose and effect of

3  raising[,] fixing, maintaining and/or stabilizing prices, reducing innovation and eliminating

4  consumer choice."  CCAC ¶ 139.  Plaintiffs assert that "[p]rice competition among Defendants in

5  the sale, marketing and distribution of Closed-System E-Vapor products … has been restrained,"

6  and that "Prices for Closed-System E-Vapor products sold by Defendants … have been raised, fixed,

7  maintained, and/or stabilized at artificial and non-competitive levels."  CCAC ¶ 160.  Plaintiffs also

8  allege that they were "injured in their business or property," CCAC ¶¶ 167, 170, 181, and that

9  "[t]heir injury includes paying higher prices for Closed-System E-Vapor products than they would

10  have paid in the absence of those violations," CCAC ¶ 181.

11  **III.**   **LEGAL STANDARD**

12      The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, "is a congressional declaration of a

13  liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or

14  procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

15  U.S. 1, 24 (1983).  In accordance with that pro-arbitration policy, "any doubts concerning the scope

16  of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

17  construction of the contract language itself or an allegation of waiver, delay, or a like defense to

18  arbitrability."  *Id.* at 24-25.  To the extent that either California or Delaware law may apply to certain

19  claims, the same pro-arbitration policies apply.  Like federal law, California law "reflects a strong

20  policy favoring arbitration agreements," *Saint Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th

21  1187, 1195 (2003).  And Delaware law provides for "a strong presumption in favor of arbitration."

22  *Behm v. Am. Int'l Grp., Inc.*, No. N10C–10–013, 2013 WL 3981663, at *5 (Del. Super. Ct. July 30,

23  2013).

24      On a motion to compel arbitration, "[t]he district court's 'role is limited to determining

25  whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the

26  dispute at issue."  *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1173 (N.D. Cal.

27  2011) (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)).

28  In so doing, "courts apply 'general state-law principles of contract interpretation, while giving due

1    regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of

2    arbitration in favor of arbitration.'" *Plastoform Indus. Ltd. v. Monster LLC*, No. 18-cv-02805, 2018

3    WL 10562845, at *3 (N.D. Cal. Sept. 6, 2018) (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d

4    1042, 1044 (9th Cir. 2009)).  "'The standard for demonstrating arbitrability is not a high one,'" and,

5    "[i]f the party seeking to compel arbitration establishes both factors, the court must compel

6    arbitration." *Id.* (quoting *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir.

7    1991)).

8         After determining that arbitration should be compelled, a district court "may either stay the

9    action or dismiss it outright." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th

10   Cir. 2014); *see also, e.g.*, *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *18 (N.D. Cal. June

11   25, 2014) ("When arbitration is mandatory, courts have discretion to stay the case under 9 U.S.C.

12   § 3 or dismiss the litigation entirely.").

13        When evaluating a motion to compel arbitration, the court may consider evidence outside

14   the pleadings.  *Regents of Univ. of Cal. v. Japan Sci. & Tech. Agency*, No. CV 14–04419, 2014 WL

15   12690187, at *3 n.24 (C.D. Cal. Oct. 16, 2014); *see also, e.g.*, *Nitsch v. DreamWorks Animation*

16   *SKG Inc.*, 100 F. Supp. 3d 851, 863–64 (N.D. Cal. 2015); *Lomeli v. Midland Funding, LLC*, No. 19-

17   CV-01141, 2019 WL 5684531, at *1–4 (N.D. Cal. Nov. 1, 2019); *Plastoform*, 2018 WL 10562845,

18   at *3 & n.2; *Abreu v. Slide, Inc.*, No. C 12–00412, 2012 WL 2873772, at *3–4 (N.D. Cal. July 12,

19   2012).

20   **IV.   <u>ARGUMENT</u>**

21        **A.    <u>Plaintiffs Agreed To Resolve This Dispute By Arbitration.</u>**

22        By clicking to acknowledge and agree to JLI's Terms and Conditions of sale, each of the

23   plaintiffs entered into a contract with JLI that included a requirement to arbitrate disputes such as

24   this.  "Courts enforce clickwrap-type agreements where the user indicates actual notice of the terms

25   of use, or where the user was required to acknowledge the terms of use before proceeding with

26   further use of the site." *La Force v. GoSmith, Inc.*, No. 17-cv-05101, 2017 WL 9938681, at *3

27   (N.D. Cal. Dec. 12, 2017); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1165

28   (N.D. Cal. 2016) (enforcing "clickwrap" agreement to terms, observing "our Circuit has recognized

that the closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable."); *Holl v. United Parcel Serv., Inc.*, No. 16-CV-05856, 2017 WL 11520143, at *5 (N.D. Cal. Sept. 18, 2017) (compelling arbitration where enrollment "requires clicking a checkbox" to assent to terms including an arbitration agreement).

The enforcement of arbitration agreements by way of clickwrap agreements has been endorsed by the Ninth Circuit.  In *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020), the court enforced a consumer arbitration agreement with Ticketmaster because "each time he clicked the 'Sign In' button when signing into his Ticketmaster account, where three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use.'"  The Court observed that "it is easier to find mutual assent in cases dealing with clickwrap agreements," and "[w]e are 'more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with the use of the website.'"  *Id.* at 394 (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'").

Plaintiffs' agreement to arbitrate is enforceable because each plaintiff, when creating their accounts and making purchases from JLI (and, in the case of Plaintiff Martinez, additionally when he signed back into his account two additional times) manifested their assent to JLI's terms of use. Importantly, whether or not they actually read the arbitration provision is irrelevant because it was made readily available to them at the time they agreed to be bound.  "A party who is bound by a contract is bound by all its terms, whether or not the party was aware of them." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017); *Lee*, 817 F. App'x at 394 (a party "'cannot avoid the terms of [the] contract on the ground that he ... failed to read it before signing,' *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049, 107 Cal. Rptr. 2d 645 (2001), especially when he 'had a legitimate *opportunity* to review it,' *Mohamed v. Uber Tech., Inc.*, 109 F. Supp. 3d 1185, 1198 (N.D. Cal. June 9, 2015)").

The JLI website screen presentation relevant to each of the plaintiffs in this case distinguishes it from this Court's consideration of earlier iterations of JLI's website in *Colgate*, 402 F. Supp. 3d at 764.  In *Colgate*, the Court recognized that, with respect to arbitration agreements in website Terms and Conditions, "Courts considering similar agreements have found them valid where the existence of the terms was reasonably communicated to the user."  *Id.* at 764.  The Court went on, however, to find insufficient the earlier versions of the JLI website, on which references to the agreement were included in a plain text statement below the "Sign Up" button and which did not have a checkbox or other affirmative requirement to manifest intent.  The Court found that the link to the Terms and Conditions "was not highlighted, underlined, in all caps, or in a separate box." *Id.* at 765.

In contrast, plaintiffs in this case not only received conspicuous notice of hyperlinked Terms and Conditions, they were required to agree to be bound by them in order to proceed with their purchases.  A hyperlink to the JLI website Terms and Conditions was presented in clear, capitalized, offset, bolded text, using formatting that plainly told the user the full terms were available by clicking the link.  *Compare Colgate*, 402 F. Supp. 3d at 765 ("Users cannot be reasonably expected to click on every word of the sentence in case one of them is actually a link.") *with Meyer*, 868 F.3d at 71 (finding sufficient, even in the absence of an affirmative manifestation of consent, notice of terms where the reference was "bright blue and underlined, was a hyperlink that, when clicked, took the user to a third screen containing a button that, in turn, when clicked, would then display the current version of both Uber's Terms of Service and Privacy Policy.").  Here, plaintiffs had to click to agree to be bound to the Terms and Conditions when creating their account and then each subsequent time were notified that by proceeding, they agreed to be bound.

The form of plaintiffs' agreement to be bound by the JLI website Terms and Conditions was clear and unambiguous.  Courts in this Circuit have held consumers to arbitration agreements based on similar forms of assent, some even less conspicuous than the "clickwrap" agreements created when Plaintiffs created their accounts on the JLI website.  For example, in *Allen v. Shutterfly, Inc.*, No. 20-cv-02448, 2020 WL 5517172, at *1–2 (N.D. Cal. Sept. 14, 2020), the court compelled arbitration based on the plaintiffs' having clicked through the following screen:

*Id.* The Court did so notwithstanding that the plaintiffs were not required to separately click a box to indicate agreement with the terms and conditions, reasoning that "when Lifetouch customers 'Submit Payment' for their purchase on Lifetouch website, they are presented with a statement that 'by clicking "Submit Payment" I agree to the Privacy Statement and Terms of Service' with a blue hyperlink to those Terms" and that "Courts in this Circuit routinely uphold the validity of internet contracts like Lifetouch's 2018 TOS." *Id.*

Likewise in *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020), the Ninth Circuit recently found "sufficient notice to a reasonably prudent internet user of [TurboTax's] Terms of Use, which includ[ed] an arbitration clause" where the user was "required to click a 'Sign In' button, directly under which the following language appeared: '*By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement.*'" 823 F. App'x at 484. "Turbo Terms of Use," "TurboTax Terms of Use," and "Privacy Statement" were each highlighted in "hyperlinks which, if clicked, directed the user to a new webpage." *Id.* Based on this display, the Ninth Circuit concluded that "TurboTax's website . . . required users to 'affirmatively acknowledge' the agreement before proceeding, and the website contained 'explicit textual notice that continued use will act as a manifestation of the user's intent to be bound.'" *Id.*

Similarly in *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020), the court found that DoorDash's Terms and Conditions, placed directly below the "Sign Up" button, with a statement that read "By tapping Sign Up, . . . you agree to our Terms and Conditions and Privacy Statement" with the words "Terms and Conditions" hyperlinked to the DoorDash's Terms and Conditions in effect at the time was sufficient to bind the plaintiffs to an arbitration provision in the

1  Terms and Conditions.  *Id.*; *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y.

2  2012) (enforcing choice of forum clause in Facebook's terms of service based on agreement to terms

3  hyperlinked under "Sign Up" button where "[t]he phrase 'Terms of Service' is underlined, an

4  indication that the phrase is a hyperlink[.]").

5      The law in this Circuit is thus clear:  clickwrap agreements are fully enforceable against

6  consumers so long as the webpage informs them that proceeding with a transaction will bind them

7  to the agreement and the terms are clearly communicated.  JLI's requirement that account creators

8  affirmatively check a box demonstrating assent to clear and conspicuous, hyperlinked terms more

9  than satisfies that standard.

10      **B.      The Arbitration Provision In JLI's Terms Encompasses Plaintiffs' Claims.**

11      The Terms and Conditions agreed to by plaintiffs contained a broad arbitration provision

12  requiring arbitration of "any claim, dispute, or controversy . . . arising out of or in connection with

13  or relating to these Terms, or the breach or alleged breach thereof."  Jacobs Decl., Exs. 10-12; *see*

14  *supra* Section IV.A.  The scope of this type of arbitration provision is "broad and far reaching."

15  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); *see also, e.g.*,

16  *Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("Every court that has construed the

17  phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly.").

18  As a result of this broad language, and "[t]o require arbitration, [plaintiffs'] factual allegations need

19  only 'touch matters' covered by" the Terms.  *Simula*, 175 F.3d at 721 (quoting *Mitsubishi Motors*

20  *Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)).

21      Courts in this Circuit recognize the language "related to" and "connected to" in the

22  arbitration clause of a contract to be broad and presumptively inclusive of disputes arising from the

23  relationship created by the contract.  *See, e.g.*, *KKE Architects, Inc. v. Diamond Ridge Dev. LLC*,

24  No. CV 07-06866, 2008 WL 637603, at *6 (C.D. Cal. Mar. 3, 2008) ("Here, the arbitration clause

25  to which the parties agreed is broad.  It applies to 'any claim, dispute, or other matter in question

26  arising out of or related to' the contract. Courts have held that use of similar phrases connotes an

27  expansive arbitration provision."); *Greenberg v. Flynn*, No. CV 09-05273, 2010 WL 11596156, at

28  *4 (C.D. Cal. Apr. 14, 2010) ("The Agreements' arbitration provisions require arbitration of not only

disputes 'arising' out of them, but of disputes 'relating' to them, as well. . . . Consequently, it is clear from the plain language of the Agreements' arbitration provisions, namely the 'related to' language, that they are intended to cover a wide range of disputes between Plaintiff and KPMG, as well as disputes between Plaintiff and KPMG employees, agents, and third party beneficiaries, such as Defendant Collins, and which Plaintiff concedes, as he has admitted that the other three related claims against Defendant Collins should be arbitrated."); *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986, 993 (S.D. Cal. 1999) ("The Court first notes the breadth of the arbitration clause at issue. In comparison to an arbitration clause utilizing the language 'arising out of,' which is construed to apply only to a narrow range of disputes specifically relating to the interpretation and performance of the contract at issue, courts interpret an arbitration provision containing the language 'arising out of and or relating to' as a 'broad arbitration clause.'").

Here, plaintiffs' claims fall squarely within the scope of their agreement to arbitrate. Plaintiffs' claims are premised on allegations arising from their purchase of products from JLI, and allege that they were injured by the prices paid in those transactions. *See, e.g.*, CCAC ¶ 9 ("As a direct and proximate result of Defendants' anticompetitive conduct, prices for Closed-System E-Vapor were raised, fixed, maintained, and/or stabilized at supracompetitive levels."); *see also* ¶¶ 139-140; ¶ 181 (plaintiffs' "injury includes paying higher prices for Closed-System E-Vapor products than they would have paid in the absence of those violations."). The transactions at issue were governed by the Terms and Conditions on the JLI website, to which plaintiffs expressly agreed. Accordingly, their claims against JLI are claims "arising out of or in connection with," or "relate" to those terms. *Simula, Inc.*, 175 F.3d at 721 ("the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.").

Courts have construed similar language in terms of sale to compel arbitration where antitrust claims arise out of and relate to the purchase made pursuant to agreed terms of sale. *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 231–39 (2013) (plaintiff merchants' class-action antitrust suit subject to arbitration on individual basis when arbitration clause covered "any assertion of a right, dispute or controversy between you and us arising from or relating to this Agreement

and/or the relationship resulting from this Agreement," *In re Am. Express Merchs.' Litig.*, 667 F.3d 204, 209 (2d Cir. 2012)); *In re TFT-FLC (Flat Panel) Antitrust Litig.*, Nos. M 07–1827, C 10–5458, 2011 WL 5325589, at *3–4 (N.D. Cal. Sept. 19, 2011) (antitrust claims subject to arbitration because they were "'relating to' or 'arising in connection with' the agreements"); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1106 (C.D. Cal. 2002) (compelling arbitration of antitrust claims where arbitration provision encompassed "any legal claim relating to this Agreement . . . or your Service"); *In re Evanston Nw. Corp. Antitrust Litig.*, No. 07-cv-04446, 2015 WL 13735423, at *6–7 (N.D. Ill. Sept. 4, 2015) (compelling arbitration where "the antitrust claims [were]—in essence—claims to recover alleged overpayments made pursuant to the contracts containing the [arbitration] clauses."); *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d at 1174–79 (granting defendants' motions to compel arbitration of Sherman Act claims under mobile phone terms of service); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 405–06 (S.D.N.Y. 2003) (antitrust claims arbitrable under arbitration provision encompassing "any claim 'arising from or relating in any way to . . . [the] Account,' and 'arising out of or relating to . . . [the] Account,'").

Here, plaintiffs' claims arise directly from their transactions with JLI, and their transactions with JLI were conducted pursuant to the JLI Terms and Conditions that included mandatory arbitration.

### C.   Any Dispute Regarding The Scope Of The Agreement To Arbitrate Must Also Be Referred To Arbitration.

Even if there were a question as to whether the particular claims plaintiffs bring in this case fall within the scope of their agreement to arbitrate, referral to arbitration pursuant to 9 U.S.C. § 3 would nonetheless be required because plaintiffs agreed to arbitrate the question of arbitrability. The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).

In *Schein,* the Supreme Court held that an arbitration agreement referring to the arbitration rules of the American Arbitration Association ("AAA"), and which was otherwise silent on the

question of arbitrability, reflected an agreement to arbitrate that threshold question because "[t]he rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions." *Id.* at 528. On that basis, the Court affirmed a district court order compelling arbitration of antitrust claims pursuant an arbitration clause in a sales agreement very similar to the one at issue in this case.

Similarly here, the relevant arbitration provision refers to arbitration by JAMS under its Optional Expedited Arbitration Procedures:

> "[W]e each agree to resolve any claim, dispute, or controversy (excluding any claims for injunctive or other equitable relief as provided below) arising out of or in connection with or relating to these Terms, or the breach or alleged breach thereof (collectively, "Claims"), by binding arbitration by JAMS, under the Optional Expedited Arbitration Procedures then in effect for JAMS, except as provided herein."

*See* Jacobs Decl., Exs. 10-12.

Just like the AAA rules at issue in *Schein*, those rules provide that questions of arbitrability – e.g., whether the claims asserted fall within the scope of the agreement to arbitrate – is to be decided by the arbitrator:

> **Rule 11.  Interpretation of Rules and Jurisdictional Challenges**
>
> [*     *     *]
>
> (b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*JAMS Comprehensive Arb. Rules & Procs.*, *Rule 11,* JAMS (July 1, 2014),  https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11; *see also Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) ("when the parties have incorporated by reference the rules of the American Arbitration Association ('AAA'), which state in relevant part that the 'arbitrator shall have the power to rule on his or her own jurisdiction . . . ,'" they have "clearly and unmistakably" delegated questions issues of arbitrability to the arbitrator); *ASUS Comput. Int'l v.*

*InterDigital, Inc.*, No. 15-CV-01716, 2015 WL 5186462, at *4 (N.D. Cal. Sept. 4, 2015) ("[T]he parties agreed to arbitration under the ICDR rules, . . . and these rules allow an arbitrator to decide arbitrability. . . . Several courts have held that even when an arbitration clause uses permissive language, the clause still gives rise to mandatory arbitration.").

While this Court declined to apply *Schein* to require arbitration in *Brice v. 7HBF No. 2, Ltd.*, No. 19-cv-01481, 2019 WL 5684529 (N.D. Cal. Nov. 1, 2019), the issue presented there was very different from the circumstances here.  In *Brice*, the issue was whether a valid agreement to arbitrate had been formed at all, a question that the FAA clearly assigns to the Court.  *See* 9 U.S.C. § 3.  In contrast here, there should be no question that a valid arbitration agreement was formed for the reasons discussed above.  If there is a question at all, it is whether the plaintiffs' claims fall within the scope of the parties' agreement to arbitrate, and *that* question is one the parties have agreed to arbitrate.  "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."  *Schein*, 139 S. Ct. at 531.

### D.   **If The Court Declines To Compel Arbitration, Plaintiffs' Class Action Allegations Should Be Struck.**

While it is clear, for the reasons discussed above, that plaintiffs should be held to their agreement to arbitrate these claims, if the Court were to decline to do so it should still strike plaintiffs' class allegations.  "Rule 12(f) … grants courts the authority to strike class allegations that 'cannot possibly move forward on a classwide basis.'"  *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, No. CV 15–00153, 2015 WL 1266787, at *3 (C.D. Cal. Mar. 18, 2015) (*quoting Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989-90 (N.D. Cal. 2009) ("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."); *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1095 (S.D. Cal. 2016) ("A court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained."); *see also Gutierrez v. Jolt Delivery, LLC*, No. LACV 17-8380, 2018 WL 6118581, at *5 (C.D. Cal. Aug. 7, 2018) (dismissing class claims and compelling individual claims to arbitration).

1    Here, plaintiffs expressly agreed that "***all claims*** must be brought in the parties' individual

2    capacity, and not as a plaintiff or class member in any purported class action, collective action,

3    private attorney general action or other representative proceeding." *See* Jacobs Decl., Exs. 10-12

4    (emphasis added); *supra* IV.A.  That agreement is broader than plaintiffs' agreement to arbitrate,

5    and encompasses – by its terms – "all claims" whether or not subject to arbitration.  *Id.*

6    The Supreme Court has held class action waiver agreements of the type at issue here are

7    enforceable.  In *Epic Systems Corp. v. Lewis*, enforcing class-action waivers is consistent with the

8    fundamental principle that courts must honor contracting parties' agreements, including "their

9    intention to use individualized rather than class or collective action procedures."  138 S. Ct. 1612,

10   1621 (2018).  Since *Epic Systems*, the enforceability of class action waiver agreements has not been

11   meaningfully in doubt. *See, e.g.*, *Gonzalez v. Comenity Cap. Bank*, No. 19-CV-00342, 2019 WL

12   5596811, at *8 (E.D. Cal. Oct. 30, 2019) ("It is settled law that '[c]lass action waivers contained

13   within arbitration agreements are valid and enforceable.'") (quoting *Hoekman v. Tamko Bldg. Prod.,*

14   *Inc.*, No. 14-cv-01581, 2015 WL 9591471, at *1 (E.D. Cal. Aug. 26, 2015)); *Castorena v. Charter*

15   *Commc'ns, LLC*, No. 18-cv-07981, 2018 WL 10806903, at *5 (C.D. Cal. Dec. 14, 2018) ("Class

16   action waivers are enforceable under both federal and California law."); *Vigueras v. Red Robin Int'l,*

17   *Inc.*, No. SACV 17-01422, 2019 WL 1425887, at *3 (C.D. Cal. Feb. 21, 2019) ("Class action

18   waivers are enforceable in California."); *see also Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1261

19   (Del. Super. Ct. 2001) (enforcing class action waiver, where the "surrender of that class action right

20   was clearly articulated in the arbitration amendment.").  Plaintiffs' unambiguous agreement waiving

21   the ability to bring class claims is enforceable, and should be enforced here.  Their class allegations

22   should be struck.

23   **E.    Plaintiffs' Claims Against Individuals Associated With JLI Are Subject To The Agreement To Arbitrate.**

24   Finally, although Defendants Nicholas J. Pritzker and Riaz Valani are not themselves parties

25   to the agreements to arbitrate with the plaintiffs, they are sued in connection with duties performed

26   within their responsibilities at JLI.  Accordingly, to the extent that plaintiffs seek to join them

27   individually to claims that are subject to arbitration, as discussed above, those individual claims are

28

also subject to mandatory arbitration.  "The Ninth Circuit has explained that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles."  *Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*, No. 20-CV-00574, 2020 WL 3869186, at *6 (N.D. Cal. July 9, 2020) (quoting *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)).

Corporate arbitration agreements may be enforced by non-signatory officers and directors where (1) "the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents," and (2) "the claims against the agents . . .  relate to the contract containing the arbitration clause," *Esguerra-Aguilar*, 2020 WL 3869186, at *6 (quoting *Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007)).  As the court explained in *Amisil Holdings*:

> There are two reasons why courts have held that nonsignatory agents are covered by the arbitration agreement: (1) because "[a]n entity ... can only act through its employees, and an arbitration agreement would be of little value if it did not extend to [them]," [*Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir.1993)] (internal quotation marks omitted); and (2) because, if a party could "avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, ... the effect of the rule requiring arbitration would, in effect, be nullified." [*Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990)] (internal quotation marks omitted).

*Amisil Holdings*, 622 F. Supp. 2d at 833 (Jenkins, J., adopting Report and Recommendation of then-Magistrate Judge Edward M. Chen).

Plaintiffs' allege that Mr. Pritzker and Mr. Valani have been, "at all relevant times" members of JLI's Board of Directors who are alleged to have approved and/or helped facilitate the transaction with Altria by, among other things, attending meetings with Altria on behalf of JLI.  CCAC ¶¶ 19-20.  Because plaintiffs' claims against JLI are subject to an agreement to arbitrate, for the reasons discussed above, their claims against these individual defendants are likewise subject to arbitration.  *See, e.g.*, *Amisil Holdings*, 622 F. Supp. 2d at 835 (compelling arbitration of claims against individuals where the "complaint demonstrates that the individual defendants are being sued

precisely because of their duties to [the plaintiff] as officers and managers of [the defendant company].").

## V.      <u>CONCLUSION</u>

For the foregoing reasons, JLI and the individual defendants respectfully ask that the Court grant their motion to compel arbitration and dismiss this litigation or stay it pending completion of arbitration, or in the alternative, strike plaintiffs' class action allegations.

DATED:  January 15, 2021

Respectfully submitted,

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

By:      _/s/ David I. Gelfand_
             David I. Gelfand

David I. Gelfand (admitted *pro hac vice*))
Jeremy Calsyn (SBN #25062
Nowell D. Bamberger (admitted *pro hac vice*)
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
Telephone:  (202) 974-1500
Email:  dgelfand@cgsh.com
           jcalsyn@cgsh.com
           nbamberger@cgsh.com

*Counsel for Defendants Juul Labs, Inc.*

**KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C.**

By:      _/s/ Michael J. Guzman_
             Michael J. Guzman
Mark C. Hansen (admitted *pro hac vice*)
Michael J. Guzman (admitted *pro hac vice*)
David L. Schwarz (CA Bar No. 206257)
1615 M Street, N.W. Suite 400
Washington, D.C. 20036
Telephone:  (202) 326-7900
Email:  mhansen@kelloghansen.com
           mguzman@kelloghansen.com
           dschwarz@kelloghansen.com

*Counsel for Nicholas Pritzker and Riaz Valani*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, David I. Gelfand, attest that concurrence in the filing of this document has been obtained.

DATED:  January 15, 2021

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ David I. Gelfand*

DAVID I. GELFAND