David I. Gelfand (*pro hac vice*)
Jeremy J. Calsyn (State Bar No. 205062)
Nowell D. Bamberger (*pro hac vice*)
dgelfand@cgsh.com
jcalsyn@cgsh.com
nbamberger@cgsh.com
**Cleary Gottlieb Steen & Hamilton LLP**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999

Attorneys for Defendant
Juul Labs, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**IN RE JUUL LABS, INC. ANTITRUST LITIGATION**

This document relates to:

ALL ACTIONS

Case No. 3:20-cv-02345-WHO

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINTS; [PROPOSED] ORDER**

Date: April 21, 2021
Time: 2:00 P.M. PT
Courtroom: 2
Before: Hon. William H. Orrick

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on April 21, 2021 at 2:00 P.M. PT, or at such other date as may be agreed upon or ordered, at the courtroom of the Honorable William H. Orrick, Courtroom 2, 17th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, CA, Defendant Juul Labs, Inc. will and hereby does move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice Plaintiffs' Consolidated Class Action Complaints (ECF Nos. 131-4, 133-3, 134-3). The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the contemporaneously filed Motion and supporting Memorandum of Altria Group, Inc., the arguments of counsel, and all other matters properly considered by the Court. This motion to dismiss is brought on the grounds that the Complaints fail to state a claim against JLI upon which relief can be granted.

## REQUEST FOR RELIEF

Defendant requests that the Court dismiss the Complaints with prejudice.

Dated: January 15, 2021

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ David I. Gelfand*
DAVID I. GELFAND

Attorneys for Defendant
Juul Labs, Inc.

**TABLE OF CONTENTS**

NOTICE OF MOTION .......... i

REQUEST FOR RELIEF .......... i

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. STATEMENT OF ISSUES (Civil L. R. 7-4(A)(3)) .......... 4

IV. ARGUMENT .......... 5

A. The Claims Against JLI Under Sections 1 and 2 of the Sherman Act and State Law Should Be Dismissed For The Reasons Stated In Support Of Altria's Motion To Dismiss .......... 5

B. JLI Did Not "Acquire" Any Stock And Accordingly Cannot Have Liability Under Section 7 of the Clayton Act. .......... 5

C. Plaintiffs Are Not Entitled To Injunctive Relief Under Section 2 of the Sherman Act .......... 6

V. CONCLUSION .......... 9

## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017) ........ 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8

*Dailey v. Quality School Plan, Inc.*,
380 F.2d 484 (5th Cir. 1967) ........ 6

*Gerlinger v. Amazon.com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004) ........ 6

*In re Fluidmaster, Inc.*,
149 F. Supp. 3d 940 (N.D. Ill. 2016) ........ 9

*O'Neal v. City of Seattle*,
66 F.3d 1064 (9th Cir. 1995) ........ 9

*Opperman v. Path, Inc.*,
84 F. Supp. 3d 962 (N.D. Cal. 2015) ........ 9

*Ritchie v. Sempra Energy*,
No. 2011 WL 13152469 (S.D. Cal. Sept. 19, 2011) ........ 8

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ........ 7

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993) ........ 7

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ........ 9

*United States v. Coca-Cola Bottling Co. of Los Angeles*,
575 F.2d 222 (9th Cir. 1978) ........ 6

*Weisbuch v. City of Los Angeles*,
119 F.3 778, 783 ........ 8-9

**Federal Statutes & Rules**

15 U.S.C. § 1 .......... 5

15 U.S.C. § 2 .......... *passim*

15 U.S.C. § 18 .......... *passim*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Juul Labs, Inc. ("JLI") respectfully moves to dismiss all of the claims asserted against it by the Direct Purchaser Plaintiffs ("DPPs"), Indirect Purchaser Plaintiffs ("IPPs"), and Indirect Reseller Plaintiffs ("IRPs") (individually or collectively, "Plaintiffs"). Plaintiffs' allege that JLI engaged in anticompetitive conduct related to and leading up to the December 2018 transaction in which Altria Group, Inc. ("Altria") acquired a 35% minority stake in JLI and JLI entered into certain services and related agreements with Altria (the "Transaction"). As discussed below and in the contemporaneously filed Memorandum in support of Altria's Motion to Dismiss, Plaintiffs' allegations fail to state a plausible basis for relief, either with respect to their claims for monetary damages or their claims for prospective injunctive relief.

JLI is a Washington, D.C.-based company that designs, manufactures, and markets Electronic Nicotine Delivery Systems ("ENDS"), including JUUL devices and JUULpods. While JUUL had become a popular alternative to combustible cigarettes, by 2018 JLI was still a relatively small and young company facing numerous challenges with respect to distribution, an increasingly complex regulatory environment, and a requirement to obtain FDA authorization to continue offering products for sale. In December 2018, Altria made an investment in JLI, acquiring a 35% minority stake. The companies simultaneously entered into agreements under which Altria would provide JLI regulatory expertise and other services. These agreements, and Plaintiffs' unsubstantiated allegations that a predicate for the Transaction was an unwritten agreement that Altria would remove its own e-vapor product from the market, are the subject of the allegations in this case.

Plaintiffs' claims in this case are deficient in numerous respects, as explained in Altria's Motion to Dismiss ("Altria Br."), which JLI joins in and incorporates herein. JLI writes separately to address two additional points relevant to JLI:

*First*, Plaintiffs' claims against JLI under Section 7 of the Clayton Act, 15 U.S.C. § 18, cannot proceed because JLI did not "acquire" anything, as required by a Section 7 claim.

*Second*, the IPPs and IRPs are not entitled to an injunction under Section 2 of the Sherman

Act, the only relief they seek for that claim, because their factual allegations fail to state a plausible claim of future harm from actual or attempted monopolization.

## II. STATEMENT OF FACTS

JLI joins in and incorporates the Background Facts as set out in support of Altria's Motion to Dismiss, and provides here a brief high-level overview of the factual allegations relevant to the separate issues addressed below. Without admitting any particular allegations, the facts below are drawn from, and accepted as true for purposes of this motion alone, the allegations of the DPP, IPP, and IRP Complaints.

This case concerns competition in the sale of "e-vapor" products, which are electronic devices that deliver nicotine to a user by aerosolizing a liquid nicotine solution. DPP Compl. ¶ 1; IPP Compl. ¶ 1. Plaintiffs allege that the relevant market is "the Closed-System E-Vapor market" in the United States. DPP Compl. ¶¶ 111, 127. *See also* IPP Compl. ¶ 124; IRP Compl. ¶ 121.

As alleged by Plaintiffs, JLI's product, "JUUL," is a small electronic device with "e-liquid" pods (also called "JUULpods") and a charger. DPP Compl. ¶ 50; IPP Compl. ¶ 5; IRP Compl. ¶ 5. JUULpods contain a proprietary fluid that includes nicotine, and that fluid is aerosolized by the device and inhaled by the user. DPP Compl. ¶¶ 51, 52.

Plaintiffs allege Altria entered the e-vapor market through its subsidiary Nu Mark LLC ("Nu Mark") in 2013. DPP Compl. ¶ 3; IPP Compl. ¶ 7; IRP Compl. ¶ 7. Unlike JUUL products, Nu Mark's "MarkTen was a cig-a-like product that was designed to look and feel like a traditional cigarette." DPP Compl. ¶ 48. Plaintiffs allege that by mid-2017, MarkTen "had achieved the second-highest market share in the Closed-System E-Vapor market." DPP Compl. ¶ 3. In late 2017, Altria acquired the rights to a pod-based product. DPP Compl. ¶ 58. Then, in February 2018, Altria introduced the "MarkTen Elite," "a pod-based product closely resembling JLI's product." DPP Compl. ¶ 6; IPP Compl. ¶ 61. *See also* IRP Compl. ¶ 58. On October 25, 2018, Altria externally announced it was withdrawing MarkTen Elite from the market. IPP Compl. ¶ 70; IRP Compl. ¶ 67.

Plaintiffs allege that, in 2017, Altria "identified [JLI] as the most promising target" for an acquisition. DPP Compl. ¶ 62. Altria attempted to negotiate with JLI to acquire an ownership

interest in JLI, but "JLI refused." DPP Compl. ¶ 7. Later, however, the parties reached agreements that are at the center of this case. The agreements provided that Altria would acquire a 35% non-voting stake in JLI for $12.8 billion. DPP Compl. ¶¶ 8, 93; IPP Compl. ¶¶ 16, 100, 108; IRP Compl. ¶¶ 16, 97, 105. Pursuant to a Services Agreement, Altria would provide services to support the JLI product, such as leasing retail shelf space to JLI, providing regulatory consulting services, distribution support, and marketing and sales service, and granting access to certain intellectual property of Altria. DPP Compl. ¶ 97; IPP Compl. ¶ 108; IRP Compl. ¶ 105. The Transaction also included a so-called "non-compete" provision that was ancillary to the agreement for services. DPP Compl. ¶ 95; IPP Compl. ¶ 103; IRP Compl. ¶ 100.

Plaintiffs allege that JLI had a 72% market share in the alleged Closed System E-Vapor market as of August 2018 and had "power to control prices and exclude competition," and that its share increased to "over 75 percent" by November 2018. DPP Compl. ¶¶ 135-37; IPP Compl. ¶ 152. Altria allegedly had an 8% market share as of August 2018, but its share fell to 4% and then zero over the next four months. DPP Compl. ¶ 136-37; IPP Compl. ¶¶ 151-53. These allegations indicate that the share attributable to other competitors must have expanded from 20% to 25% in this time. Plaintiffs' Complaints show that JLI's market share dropped further thereafter, reaching approx. 65% by the end of 2019, meaning that competitors must have expanded to 35%. IPP ¶ 48; IRP Compl. ¶ 45; *see also* Altria Br. at 15 n.5 (explaining that the Wells Fargo report cited in the Complaints comes from October 2019, not February 2019). By September 2020, Plaintiffs' own sources showed that JLI's market share had dropped further, to "58%." Kilaru Decl. [1], Ex. 13, Jennifer Maloney, *Juul Shelves Plan for Feature That Counts Puffs*, Wall St. J. (Sept. 4, 2020), https://www.wsj.com/articles/juul-shelves-plan-for-feature-that-counts-puffs-11599211801 [https://perma.cc/3LUB-XM6X] (hereinafter "*Juul Shelves Plan*") (cited at DPP Compl. ¶ 148). In addition, JLI's prices decreased 11.9% in the year following the transaction. Kilaru Decl., Ex. 12,

---

[1] "Kilaru Decl." refers to the Declaration of Rakesh Kilaru filed contemporaneously in support of Altria's Motion to Dismiss. JLI joins in Altria's separately-filed motion for judicial notice of the documents referenced in the Kilaru declaration.

Bonnie Herzog & Patty Kanada, Wells Fargo Securities, *Nielsen: Tobacco All Channel Data Thru 10/5 – Cig Vol Declines Moderate* 12 (Oct. 15, 2019) (hereinafter "Wells Fargo Report") (showing a price decrease of 11.9% as compared to the previous twelve-month period) (cited at IPP Compl. ¶ 48; IRP Compl. ¶ 45).

Plaintiffs make the conclusory allegation that the Transaction "was anticompetitive" and that "prices for Closed-System E-Vapor were raised, fixed, maintained, and/or stabilized at supracompetitive levels" as a result. DPP Compl. ¶ 9. Plaintiffs allege that they "lost the benefit of current and future head-to-head competition between Altria and JLI, and between Altria and other competitors." DPP Compl. ¶ 9. Plaintiffs allege that they "were injured in their business or property" and that their "injury includes paying higher prices for Closed-System E-Vapor products than they would have paid" absent the alleged violations. DPP Compl. ¶¶ 167, 170, 181. *See also* IPP Compl. ¶¶ 26-32; IRP Compl. ¶¶ 23-30. However, they do not allege the prices they paid, whether those prices changed over time, or even whether they decreased or increased.

Beyond this, Plaintiffs allege that the Transaction "closed routes to other potential acquisitions or partnerships through which Altria might have continued to participate in the relevant market," though they do not indicate what partnerships or acquisitions those might have been, or why those potential partners or targets cannot compete on their own or with other partners. DPP Compl. ¶ 141.

## III. STATEMENT OF ISSUES (CIVIL L. R. 7-4(A)(3))

1. Whether Plaintiffs' claims against JLI should be dismissed for the reasons presented in Altria's motion to dismiss, which JLI joins.

2. Whether Plaintiffs' claim under Section 7 of the Clayton Antitrust Act should be dismissed as to JLI for failure to state a claim on which relief can be granted because Section 7 of the Clayton Act applies only to acquiring companies, not acquired companies.

3. Whether Plaintiffs' claims under Section 2 of the Sherman Antitrust Act should be dismissed for failure to state a claim on which relief can be granted because Plaintiffs have failed to allege that JLI has the power to control prices, that JLI has engaged in any exclusionary conduct,

that JLI had the specific intent to monopolize, or that JLI had a dangerous probability of achieving monopoly power.

## IV. ARGUMENT

### A. The Claims Against JLI Under Sections 1 And 2 Of The Sherman Act And State Law Should Be Dismissed For The Reasons Stated In Support Of Altria's Motion To Dismiss.

JLI joins and incorporates the arguments made by Altria in support of its contemporaneously-filed motion to dismiss. For substantially all of the reasons set out in support of Altria's motion, the claims against JLI should also be dismissed. Specifically:

- Plaintiffs fail to plausibly allege either Article III or Antitrust injury. *See* Altria Br. Argument § I.
- Plaintiffs fail to plausibly allege an illegal agreement between Altria and JLI in violation of Section 1 of the Sherman Act. *See* Altria Br. Argument § II.
- Plaintiffs fail to plead the existence of a conspiracy between Altria and JLI to monopolize the relevant market. *See* Altria Br. Argument § III.
- Plaintiffs fail to state a plausible claim under § 7 of the Clayton Act. *See* Altria Br. Argument § IV.
- Plaintiffs' state-law indirect purchaser claims fail on the basis of the same deficiencies in their federal claims, and – in the case of claims under California law – for additional reasons. *See* Altria Br. Argument § V.
- Plaintiffs fail to state a claim for unjust enrichment. *See* Altria Br. Argument § VI.
- The claims of Plaintiffs Larimore, Marschullat, and May should be dismissed for failure to serve. *See* Altria Br. Argument § VII.

### B. JLI Did Not "Acquire" Any Stock And Accordingly Cannot Have Liability Under Section 7 of the Clayton Act.

Plaintiffs' claims against JLI under Section 7 of the Clayton Act (DPP Counts Two and Three; IPP and IRP Count Five) should be dismissed because JLI did not "acquire" any stock. In relevant part, Section 7 provides:

> No person shall ***acquire*** . . . the stock . . . of one or more persons engaged in commerce . . . where . . . the effect of such acquisition . .

> . may be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C. § 18 (emphasis supplied).

The alleged basis for JLI's liability in this case, however, is the allegation that:

> The Transaction, as described above, in which ***Altria received a substantial ownership stake in JLI*** on the condition that Altria withdraw its existing Closed-System E-Vapor products from the market and halt its innovation on future products, substantially lessened competition in the market for Closed-System E-Vapor products in the United States.

DPP Compl. ¶ 169 (emphasis added). *See also* IPP Compl. ¶ 206; IRP Compl. ¶ 203.

The disconnect is clear: JLI, as the party whose stock was acquired by another, cannot be liable under Section 7 because it did not "acquire" stock in another company. That conclusion flows inexorably from the text of the statute itself, as the Ninth Circuit has recognized. *See*, *e.g.*, *United States v. Coca-Cola Bottling Co. of Los Angeles*, 575 F.2d 222, 227 (9th Cir. 1978) ("By its express terms § 7 proscribes only the act of acquiring, not selling, when the forbidden effects may occur."); *see also Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 852 (N.D. Cal. 2004) ("'by its express terms, [S]ection 7 of the Clayton Act is directed only against the acquiring corporation.'") (quoting *Tim W. Koerner & Assocs., Inc. v. Aspen Labs, Inc.*, 492 F. Supp. 294, 300 (S.D. Tex. 1980), *aff'd*, 638 F.2d 416 (5th Cir. 1982)); *Dailey v. Quality School Plan, Inc.*, 380 F.2d 484, 488 (5th Cir. 1967) (affirming dismissal of § 7 claim as to seller and explaining that "§ 7 by its terms proscribes only the acquiring corporation"). The Section 7 claims against JLI should be dismissed for this reason alone or, alternatively, for the reasons set out in support of Altria's motion to dismiss. *See* Altria Br. Argument § IV.

### C. Plaintiffs Are Not Entitled To Injunctive Relief Under Section 2 of the Sherman Act.

Section 2 of the Sherman Act makes it illegal to "[1] monopolize, or [2] attempt to monopolize, or [3] combine or conspire with any other person or persons, to monopolize trade or commerce." 15 U.S.C. § 2. Neither the DPPs nor the FTC have asserted claims against JLI for monopolization in violation of Section 2 of the Sherman Act, but IPPs and IRPs have brought such

claims seeking injunctive relief only (IPP and IRP Counts Two through Four). This is the only relief the IPPs and IRPs could conceivably seek because, as indirect purchasers, IPPs and IRPs are not entitled to bring a claim for damages under the Sherman Act. *See Somers v. Apple, Inc.*, 729 F.3d 953, 961 (9th Cir. 2013) (affirming dismissal of indirect purchasers' monopolization claim pursuant to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)). But Plaintiffs' Section 2 claims fail because their pleadings fail to allege that Plaintiffs would plausibly be entitled to injunctive relief.

The problem with Plaintiffs' claims for prospective relief is that their Complaints affirmatively plead that the Transaction resulted in decreasing market power and increasing competition. *See, e.g.*, IPP Compl. ¶ 48; IRP Compl. ¶ 45; *see also* Altria Br. at 15-16. Those pleadings fatally undermine any plausible allegation that an injunction is necessary to prevent monopolization by JLI in the future. "[A] claim for injunctive relief becomes moot once subsequent events have made clear the conduct alleged as the basis for the requested relief 'could not reasonably be expected to recur.'" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (quoting *Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998)).

To be entitled to injunctive relief in an antitrust case, a Plaintiff "must allege facts showing that the remedy she seeks is needed to prevent a threatened 'antitrust injury,' meaning an 'injury of the type the antitrust laws were intended to prevent'—*i.e.*, an injury to competition." *Somers*, 729 F.3d at 967 (affirming dismissal) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). To translate their allegations into a claim for such injunctive relief on the basis of actual or attempted monopolization, among other elements, Plaintiffs would have to show either that JLI (a) *presently* has "monopoly power in the relevant market," *Somers*, 729 F.3d at 963; or (b) that there is "a dangerous probability of achieving monopoly power," in the future. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). Moreover, the allegations must establish that the plaintiff is suffering "continuing, present adverse effects," otherwise the injunction will not benefit the plaintiff and the request for injunctive relief is moot. *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d at 864.

Plaintiffs plead none of these elements, offering no well-pled allegations that plausibly establish that there is *now* or is likely to be in the future a dangerous prospect that JLI will

monopolize the market for Closed-System E-Vapor. Instead, Plaintiffs' allegations paint a picture of a market that is increasingly competitive, as to which JLI's influence is waning, and in which JLI enjoys no pricing or exclusionary power. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) at 569 n.14 ("[T]he complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible."); *Ritchie v. Sempra Energy*, No. 2011 WL 13152469, at *3 (S.D. Cal. Sept. 19, 2011) ("In evaluating whether the complaint states a plausible claim for relief, the Court should consider the allegations of the complaint as a whole.") (granting motion to dismiss).

Here, Plaintiffs' own allegations and the documents they rely on establish that there are at least six market participants, including major competitors like British American Tobacco's "VUSE," Njoy Inc.'s "Njoy," and Imperial Tobacco's "BLU." IPP Compl. ¶ 48; IRP Compl. ¶ 45. Plaintiffs further allege facts showing that what followed from the Transaction was not monopolization, or even increased market power, but rather an 11.9% *drop* in JLI's pricing and persistent drops in JLI's market share – from 75% to 65% and then 58%. Kilaru Decl., Ex. 12, Wells Fargo Report at 12 (cited at IPP Compl. ¶ 48; IRP Compl. ¶ 45); Kilaru Decl., Ex. 13, *Juul Shelves Plan* (cited at DPP Compl. ¶ 148).

Against these acknowledged facts, Plaintiffs premise their claims on allegations of the bare elements of a Section 2 claim. IPP Compl. ¶¶ 187-204. But their "labels and conclusions" are entitled to no weight. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Nor are they even consistent with facts they plead in their Complaints that undermine the plausibility of their claim for an injunction. "[A] plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. City of Los Angeles*, 119 F.3 778, 783 n.1 (9th Cir. 1997) (affirming dismissal).

Rather than relying on the facts today, and the real history that followed from the Transaction, Plaintiffs attempt to rely on market share data from "October 2018" when, they allege, JLI's market share was "75%." IPP Compl. ¶ 5; IRP Compl. ¶ 5. But if that is true, it serves only to underscore the implausibility of their monopolization claim: A company with a *falling* market share, which is facing increased competition and lowering prices, is not a company that is plausibly

on track to monopolize the market, even taking Plaintiffs' pleadings at face value. These facts also preclude Plaintiffs from asserting "any continuing, present adverse effects," from the Transaction. *O'Neal v. City of Seattle*, 66 F.3d 1064, 1066 (9th Cir. 1995) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). In a suit claiming injunctive relief – and in which Plaintiffs are not entitled to seek damages – "past exposure to illegal conduct," even if it could be alleged and proven, "does not in itself show a present case or controversy regarding injunctive relief." *Id.* at 95; *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 956 (N.D. Ill. 2016) (granting motion to dismiss); *see also, e.g., Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 987 (N.D. Cal. 2015) (dismissing claim for injunctive relief for lack of well-pled allegations of future injury).

In the absence of well-pled allegations that an injunction is necessary to prevent future monopolization, Plaintiffs' claims merely ask the Court to opine on whether the Transaction might have been expected to result in monopolization at the time it was conceived. But Federal courts lack jurisdiction to adjudicate such academic questions when they do not implicate a live controversy between the parties. *See Ruiz*, 160 F.3d at 548-49 ("Article III of the Constitution limits federal courts to adjudicating actual, ongoing controversies between litigants . . . Claims for injunctive relief become moot when the challenged activity ceases if 'subsequent events have made it clear that the alleged violations could not reasonably be expected to recur.'") (quoting *Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1009 (9th Cir. 1978)).

Because Plaintiffs fail to allege that an injunction is necessary to prevent future monopolization of the e-vapor market, their allegations fail to establish an entitlement to proceed with respect to their Section 2 claim for injunctive relief on any theory.

## V. CONCLUSION

For the foregoing reasons, JLI respectfully requests that the Court dismiss Plaintiffs' complaints in their entirety, and in particular with respect to the claims brought under Section 2 of the Sherman Act and Section 7 of the Clayton Act. Because no amendment could cure the defects noted above, dismissal with prejudice is appropriate. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility.").

Dated: January 15, 2021

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ David I. Gelfand*
DAVID I. GELFAND

Attorneys for Defendant
Juul Labs, Inc.