Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Katharine L. Malone (State Bar No. 290884)
Christopher K. Young (State Bar No. 318371)
Kyle P. Quackenbush (State Bar No. 322401)
Anupama K. Reddy (State Bar No. 324873)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            swilliams@saverilawfirm.com
            kmalone@saverilawfirm.com
            cyoung@saverilawfirm.com
            kquackenbush@saverilawfirm.com
            areddy@saverilawfirm.com

*Interim Lead Counsel for Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: JUUL LABS, INC. ANTITRUST LITIGATION**<br><br><br>**This Document Relates to:**<br><br>**All Direct Purchaser Actions** | Case No. 3:20-CV-02345-WHO<br><br>**DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANT JUUL LABS, INC.'S MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES** |

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ..................................................................................................1

II.    PLAINTIFFS' EXPERIENCE USING JLI'S WEBSITE ...................................1

    A.    Anthony Martinez .......................................................................... 2

        1.    August 26, 2018 Account Creation ........................................ 2

        2.    July 31, 2019 Purchase .......................................................... 3

        3.    February 27, 2020 and March 13, 2020 Purchases ................... 5

    B.    Mallory Flannery .......................................................................... 6

    C.    Jessica McGee .............................................................................. 8

    D.    JLI's Terms and Conditions........................................................10

    E.    JLI's forced arbitration and class action waiver provisions are not disclosed at the point of purchase ............................................................................... 11

III.    LEGAL STANDARD ................................................................................... 11

IV.    ARGUMENT.................................................................................................12

    A.    JLI is estopped from enforcing the arbitration and class action waiver provisions against Plaintiffs that created an account using the Login pages held unenforceable in *Colgate* ...........................................................................12

    B.    JLI has not met its burden to enforce the arbitration and class action waiver provisions against Plaintiff Martinez......................................................14

    C.    Plaintiffs that created an account after JLI changed its August 4, 2018 Login page are not bound by JLI's arbitration and class action waiver provisions..................15

        1.    Plaintiffs Flannery and McGee did not assent to the arbitration and class action waiver provisions ....................................................15

        2.    Plaintiffs are not bound by the arbitration and class action waiver provisions because the contract is unconscionable ...................19

        3.    Even if an arbitration agreement existed, it would be unenforceable as a prospective waiver of Plaintiffs' statutory rights and against public policy ........................................................................................21

    D.    Plaintiffs' claims against the Individual Defendants are not subject to the forced arbitration agreement or class action waiver provision ........................ 23

V.    CONCLUSION ........................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Daylight Transp., LLC,*
    59 Cal. App. 5th 462 (2020) ................................................................. 21

*In re Am. Express Merchants' Litig.,*
    634 F.3d 187 (2d Cir. 2011) .............................................................. 1, 2

*Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.,*
    456 U.S. 556 (1982) ........................................................................... 24

*Applebaum v. Lyft, Inc.,*
    263 F. Supp. 3d 454 (S.D.N.Y. 2017) ............................................. 17

*Appling v. State Farm Mut. Auto. Ins. Co.,*
    340 F.3d 769 (9th Cir. 2003) ............................................................ 13

*Armendariz v. Found. Health Psychcare Services, Inc.,*
    24 Cal. 4th 83 (Cal. 2000) .......................................................... 19, 21

*Baltazar v. Forever 21, Inc.,*
    62 Cal. 4th 1237 (2016) ................................................................... 20

*Brice v. Plain Green, LLC,*
    372 F. Supp. 3d 955 (N.D. Cal. 2019) ................................ 19, 22, 23

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,*
    622 F.3d 996 (9th Cir. 2010) ............................................................ 19

*Cabatit v. Sunnova Energy Corp.,*
    No. C089576, 2020 WL 8365909 (Cal. Ct. App. Dec. 31, 2020) ................ 19, 20

*Carbajal v. CWPSC, Inc.,*
    245 Cal. App. 4th 227 (2016) ..................................................... 20, 21

*Carnegie v. Household Int'l, Inc.,*
    376 F.3d 656 (7th Cir. 2004) .............................................................. 1

*Cave Consulting Grp., LLC v. OptumInsight, Inc.,*
    No. 5:11-CV-00469-EJD, 2015 WL 740379 (N.D. Cal. Feb. 20, 2015) ................ 4

*Colgate v. Juul Labs, Inc.,*
    402 F. Supp. 3d 728 (N.D. Cal. 2019) ....................................... *passim*

DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO JUUL LABS, INC'S MOTION TO COMPEL
ARBITRATION

*Collins v. D.R. Horton, Inc.*,
    505 F.3d 874 (9th Cir. 2007) ................................................................. 13

*Cordas v. Uber Techs., Inc.*,
    228 F.Supp.3d 985 (N.D. Cal. 2017) ......................................................11

*Cullinane v. Uber Techs., Inc.*,
    893 F.3d 53 (1st Cir. 2018) ....................................................................... 17

*DeSuza v. Andersack*,
    63 Cal.App.3d 694, 133 Cal.Rptr. 920 (1976) .....................................24

*Dillon v. BMO Harris Bank, N.A.*,
    856 F.3d 330 (4th Cir. 2017) ........................................................... 22, 23

*Earl of Chesterfield v. Janssen*
    [1750], 28 Eng. Rep. 82, 100 (Ch.) .......................................................20

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ....................................................................................11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ..................................................................................... 1

*Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*,
    No. 20-cv-00574-BLF, 2020 WL 3869186 (N.D. Cal Jul. 9, 2020).......................... 23

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ..................................................................11

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) .............................................................12, 15

*Kourtis v. Cameron*,
    419 F.3d 989 (9th Cir.2005) .................................................................... 12

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013)...........................................................23, 24

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
    363 F.3d 1010 (9th Cir. 2004) ..................................................................11

*Long v. Provide Commerce, Inc.*,
    245 Cal. App. 4th 855 (2016) .................................................................. 17

*McGill v. Citibank, N.A.*,
    2 Cal. 5th 945 (2017).................................................................................22

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc,*
    473 U.S. 614 (1985) ............................................................................................ 22

*Nguyen v. Barnes & Noble Inc.,*
    763 F.3d 1171 (9th Cir. 2014) ....................................................................... 16, 18

*Parklane Hosiery Co., Inc. v. Shore,*
    439 U.S. 322 (1979) ............................................................................................ 13

*Register.com, Inc. v. Verio, Inc.,*
    356 F.3d 393 (2d Cir. 2004) .............................................................................. 12

*Robi v. Five Platters, Inc.,*
    838 F.2d 318 (9th Cir.1988) .............................................................................. 13

*Sgouros v. TransUnion Corp.,*
    817 F.3d 1029 (7th Cir. 2016) ........................................................................... 18

*Snow v. Eventbrite, Inc.,*
    No. 3:20-CV-03698-WHO, 2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) ....................... 13, 14

*Starke v. SquareTrade, Inc.,*
    913 F.3d 279 (2d Cir. 2019) .............................................................................. 18

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.,*
    893 F. Supp. 2d 1058 (D. Nev. 2012) ................................................................ 20

**Statutes**

9 U.S.C. § 1 ............................................................................................................... 11

9 U.S.C. § 4 ............................................................................................................... 11

California Unfair Competition Law ...................................................................... 22

Del. Code tit. 6, § 2101 ........................................................................................... 22

Federal Arbitration Act .......................................................................................... 11

**Other Authorities**

Rule 16.2 .................................................................................................................... 21

DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO JUUL LABS, INC'S MOTION TO COMPEL
ARBITRATION

## I. INTRODUCTION

JLI's forced arbitration provision and class action waiver provision are unenforceable against Plaintiffs. *First*, JLI is estopped from enforcing these provisions against any Plaintiff or member of the proposed class who created an account using the Login page previously held unenforceable, including Plaintiff Martinez.[1] *Second*, JLI cannot bind Plaintiff Martinez to the provisions through his subsequent logins. *Third*, JLI cannot enforce these provisions against Plaintiffs Flannery and McGee because they did not assent to the provisions. *Fourth*, JLI cannot enforce these provisions against Plaintiffs because JLI's Terms and Conditions are unconscionable. *Fifth*, JLI cannot enforce these provisions against Plaintiffs because they act as a prospective waiver. Additionally, individuals associated with JLI cannot enforce the provisions against Plaintiffs because Plaintiffs did not enter an agreement of any type with the individual defendants.

If the Court holds that JLI's forced arbitration and class action waiver provisions are enforceable, JLI may well escape liability for violating federal antitrust law, "as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ( J. Posner); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 161 (1974); *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 194 (2d Cir. 2011) (subsequent history omitted).

Thus, Plaintiffs respectfully request that the Court deny JLI's motion in its entirety and allow this litigation to proceed.

## II. PLAINTIFFS' EXPERIENCE USING JLI'S WEBSITE

According to JLI's records, Plaintiffs Anthony Martinez, Mallory Flannery, and Jessica McGee created accounts and made purchases on JLI's website on the following dates:

| Plaintiff | Account Creation | Dates of Purchases |
|---|---|---|
| Anthony Martinez | August 26, 2018 | July 31, 2019<br>February 27, 2020<br>March 13, 2020 |
| Mallory Flannery | February 26, 2019 | February 26, 2019 |

---

[1] *See Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728, 766 (N.D. Cal. 2019).

| Plaintiff | Account Creation | Dates of Purchases |
|-----------|------------------|--------------------|
| Jessica McGee | July 19, 2019 | July 19, 2019 |

### A. Anthony Martinez

Plaintiff Anthony Martinez began using JLI's electronic nicotine delivery system (ENDS) products in 2016. Declaration of Plaintiff Anthony Martinez in Support of Direct Purchaser Plaintiffs' Opposition to Defendant JUUL, Labs, Inc.'s Motion to Compel Arbitration ("Martinez Decl."), ¶ 2. At first, he purchased JLI's ENDS products, including flavored JUULpods, exclusively from "brick and mortar" retailers such as convenience stores. *Id.* He does not remember seeing JLI's Terms and Conditions on any accompanying materials he received. *Id.* At the time he created his account and made his purchases using JLI's website, he was physically addicted to nicotine. *Id.* ¶ 3. Plaintiff Martinez was never provided an executed copy of JLI's Terms and Conditions nor a copy of JAMS's Optional Expedited Arbitration Procedure. *Id.* ¶ 10. Plaintiff Martinez has never read JLI's Terms and Conditions. *Id.* ¶ 8.[2]

### 1. August 26, 2018 Account Creation

Plaintiff Martinez created an account on JLI's website on August 26, 2018. *Id.* ¶ 4. There is a dispute over what JLI's Login page [3] looked like when Plaintiff Martinez created his account. JLI claims that in "August 2018," JLI's Login page appeared as displayed below in Figure 1. Jacobs Decl., ¶ 5, Ex. 4. JLI does not include an exact date. In *Colgate*, however, JLI asserted that the JLI Login page appeared as displayed below in Figure 2 at least as late as August 4, 2018. Declaration of Kyle P. Quackenbush in Support of DPP's Opposition to Defendant JUUL Labs, Inc.'s Motion to Compel Arbitration ("Quackenbush Decl."), ¶ 2, Ex. 1 (Declaration of Jake Honig in Support of Defendant JUUL Labs, Inc.'s Motion to Compel Arbitration, at ¶ 3, Ex. B). As seen in Figure 2, on August 4, 2018, below the "Sign Up" button, the page states, "By registering with JUUL Labs, Inc. you agree to our Terms and Conditions and Privacy Policy" and does not include a "clickbox."

---

[2] The provisions regarding arbitration and class action waiver are only contained in the Terms and Conditions. For purposes of this motion, they are treated together.

[3] Throughout their Brief, Plaintiffs refer to the page visitors to JLI's website used to sign up or login as the "Login page" unless they are quoting JLI's documents.

DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO JUUL LABS, INC'S MOTION TO COMPEL ARBITRATION

| Figure 1 | Figure 2 |
|---|---|



At some point after August 4, 2018, as seen in Figure 1, JLI added a clickbox to the left of the identical disclosure language—in the same font, color, and typeface—that appeared in Figure 2. *Compare* Figure 1 *with* Figure 2. The clickbox and the text referring to the Terms and Conditions are set forth in tiny text, in hard to see blue font on a blue background. By contrast, "Forgot Password?" is set forth more prominently in black, in bold text and underlined.

JLI has failed to substantiate the date on which it added a clickbox to its Login page. Therefore, it is not clear whether Plaintiff Martinez encountered the version with the clickbox (Figure 1) or the version without the clickbox (Figure 2) when he created his account. Plaintiff Martinez does not recall checking a clickbox while creating his account, particularly one next to the referenced Terms and Conditions. Martinez Decl., ¶ 4. Nor does he recall seeing any disclosures of JLI's Terms and Conditions when he created an account. *Id.* Even if he had seen a disclosure of JLI's Terms and Conditions, he does not believe he would have recognized them to contain hyperlinks, since the phrase "Terms and Conditions" is in small print and there is nothing to suggest the phrase is a hyperlink. *Id.*

### 2. July 31, 2019 Purchase

On July 31, 2019, Plaintiff Martinez logged back into his account on JLI's website and made a purchase. *Id.* ¶ 5. JLI also fails to substantiate the version of the Login page Plaintiff Martinez saw on

July 31, 2019. *See* Jacobs Decl., ¶ 7(b). It may have been a "Welcome Back" page depicted below as Figure 3. *Id.*, Ex. 7. Or it may have been a combined "SignUp/Log In" page depicted below as Figure 4. *Id.*, Ex. 8. Neither of the screenshots that JLI offer are date stamped (*see* Jacobs Decl., Exs. 7-8), and JLI does not explain from where it retrieved these screenshots (*see generally* Jacobs Decl.). Plaintiffs are unable to independently verify whether JLI's "Welcome Back" page or "SignUp/Log In" page was displayed to Plaintiff Martinez on July 31, 2019 because archived images are not available on the WayBack Machine[4] on that date. Quackenbush Decl., ¶¶ 4, 8-10, Exs. 4, 5. JLI offers no explanation for this failure of proof.

**Figure 3:**                 **Figure 4:**

     In Figure 3, the Terms and Conditions and Privacy Policy are not set forth or described. The text referring to them are set forth in tiny text, in hard to see dark gray text on a gray background. The text is not capitalized. In contrast, "Forgot Password?" is set forth prominently in black, against a white background, in bold, and in capitalized text that is underlined. The Terms and Conditions and Privacy Policy are below the interactive fields, including the email and password fields and the Sign In button, that Plaintiff Martinez would have needed to complete and press to log into his account, including the email and password boxes and the Sign In button. Once Plaintiff Martinez successfully logged in, he

---

[4] "Internet Archive Wayback Machine is a digital archive of the World Wide Web and other information on the Internet. It enables users to see archived versions of webpages across time" *Cave Consulting Grp., LLC v. OptumInsight, Inc.*, No. 5:11-CV-00469-EJD, 2015 WL 740379, at \*9 n.95 (N.D. Cal. Feb. 20, 2015).

would have been taken to another page where JLI promoted and sold its products. There is no reason Plaintiff Martinez would have read below the interactive fields that he would have needed to log in.

In Figure 4, the page is split into two sections: returning customers use the "Log In" section, and new customers use the "Sign Up" section. This page suffers from the same flaws as Figure 3. The Terms and Conditions and Privacy Policy are not set forth or described. The text referring to them are set forth in tiny text, in hard to see dark gray font on a gray background below the "Sign Up" section. As an existing user, Plaintiff Martinez would not have needed to look below the "Log In" portion of the page—his interaction with the page ended after he input his email and password and clicked the "Log In" button. Plaintiff Martinez did not need to click the box at the bottom of the page to log into his account.

Plaintiff Martinez does not recall seeing any disclosures of JLI's Terms and Conditions when he logged into his account and made a purchase on July 31, 2019. *Id.* ¶ 5. He believes he would not have noticed the disclosures because they are in light black text on a gray background at the bottom of the page below where he would have interacted with the website to log in. *Id.* Even if he had seen a disclosure of JLI's Terms and Conditions, he would not have recognized that they applied to him, since he was not "registering with JUUL Labs, Inc.," but was logging into his account to use JLI's website. *Id.*

### 3. February 27, 2020 and March 13, 2020 Purchases

On February 27, 2020 and March 13, 2020, Plaintiff Martinez logged back into his account on JLI's website and made a purchase. *Id.* ¶ 6. JLI claims that on each date, Plaintiff Martinez saw the "Welcome Back" page depicted below in Figure 5. Jacobs Decl., ¶ 7(c), Ex. 9. The screenshot that JLI provides is not date stamped (*see* Jacobs Decl., Exs. 7-8) and JLI does not explain where it retrieved this screenshot (*see generally* Jacobs Decl.). Plaintiffs are unable to independently verify that JLI's "Welcome Back" page was displayed to Plaintiff Martinez on February 27, 2020 and March 13, 2020 because archived images are not available on the WayBack Machine on that date. Quackenbush Decl., ¶¶ 4, 11-13, Exs. 6, 7 (screenshots of archived images on dates closes to purchases).

## Figure 5



In Figure 5, "Welcome Back" is prominently displayed in large, bold, capitalized text at the top of the page. Below this are two interactive fields and an interactive button: the email and password fields and the Sign In button. Plaintiff Martinez, as an existing user, would have needed to complete those fields and press that button to log back into his account. Above the Sign In button, "FORGOT YOUR PASSWORD?" is prominently displayed in capitalized and underlined text. Once a user clicks the Sign In button, they log back into their account. Below all this information, in the smallest text on the page, is the sentence, "By proceeding, you agree to our Terms and Conditions and Privacy Policy." "Terms and Conditions" and "Privacy Policy" are in blue text and underlined. Existing users were not required to click a box next to this sentence, or otherwise affirmatively assent, since there is no clickbox.

Plaintiff Martinez does not recall seeing any disclosures of JLI's Terms and Conditions when he logged into his account on February 27, 2020, or March 13, 2020. Martinez Decl., ¶ 6. The Terms and Conditions are below the area where he would have input his email address and password, and he does not believe there would have been any reason for him to continue reading below the "Sign In" button. *Id.* Even if he had seen a disclosure of JLI's Terms and Conditions, he would not have recognized that they applied to his purchase, since the phrase "By proceeding" does not appear to apply to purchasing a product. *Id.*

### B. Mallory Flannery

Plaintiff Mallory Flannery began using JLI's products in 2018. Declaration of Plaintiff Mallory Flannery in Support of Direct Purchaser Plaintiffs' Opposition to Defendant JUUL, Labs, Inc.'s Motion to Compel Arbitration ("Flannery Decl."), ¶ 2. She made weekly purchases of JLI's products,

exclusively from "brick and mortar" retailers such as convenience stores until the date of her online purchase. *Id.* She does not remember seeing JLI's Terms and Conditions on any materials she received associated with these purchases. *Id.* She began using JLI's website to purchase JLI's products only after a ban was imposed on flavored tobacco, including JUULpods. *Id.* ¶ 3. The only place she could purchase flavored JUULpods was JLI's website. *Id.* At the time she created her account and made her purchase using JLI's website, she was physically addicted to nicotine. *Id.*

On February 26, 2019, Plaintiff Flannery created an account on JLI's website and made a purchase using her iPhone X. *Id.* ¶ 4. The "Sign Up/ Log In" page accessible on JLI's website in February 2019 is depicted below at Figure 6. Jacobs Decl., ¶ 6, Ex. 5. Again, JLI does not provide an exact date that this version of the "Sign Up/ Log In" page was implemented on its website. Nor does it describe where this screenshot came from. An archived version of JLI's "Sign Up/ Log In" is unavailable on the Wayback Machine for February 26, 2019. Quackenbush Decl., ¶ 4, 14-17; Exs. 8, 9 (screenshots of archived images on dates closes to purchase). Therefore, Plaintiffs have no way to verify that the "Sign Up/ Log In" page depicted in Figure 6 was available on the date Plaintiff Flannery created her account and made her purchase.

<u>Figure 6</u>



In Figure 6, the page is split into two sections: returning customers use the "Log In" section, and new customers use the "Sign Up" section. The Terms and Conditions and Privacy Policy are not set forth or described. The text referring to them are set forth in tiny text, in hard to see dark gray font

on a light gray background at the bottom of the page. The words "Terms and Conditions" are in the same color and font as other text on the page and are not displayed in a color generally associated with hyperlinks. Plaintiff Flannery attests that she would not have understood that Terms and Conditions was a hyperlink. Flannery Decl., ¶ 4. Plaintiff Flannery does not recall seeing any disclosure about JLI's Terms and Conditions. *Id.* Nor does she recall whether the disclosure was hidden under her keyboard as she typed her email address and password using her iPhone. *Id.* She is unable to test whether the disclosure was visible above her phone's keyboard because an archived version of JLI's Terms and Conditions is unavailable on the date she created her account. *Id.*; Quackenbush Decl., ¶ 4. Plaintiff Flannery was never provided an executed copy of JLI's Terms and Conditions nor a copy of JAMS's Optional Expedited Arbitration Procedure. Flannery Decl., ¶ 8. Plaintiff Flannery has never read JLI's Terms and Conditions. *Id.* ¶ 6. But she would not expect that terms and conditions on a website could prevent her from bringing her claims in federal court or on a class basis. *Id.* ¶ 10. She would have expected JLI's Terms and Conditions to be limited to information about age restrictions for purchasing nicotine products and the dangers of using nicotine. *Id.* ¶ 10.

### C. Jessica McGee

Plaintiff Jessica McGee started using nicotine many years ago and thought that using JLI's products would help her quit smoking. Declaration of Plaintiff Jessica McGee in Support of Direct Purchaser Plaintiffs' Opposition to Defendant JUUL Labs, Inc.'s Motion to Compel Arbitration ("McGee Decl."), ¶¶ 2, 3. By the time she made her first purchase on JLI's website, she was addicted to nicotine. *Id.*, ¶ 3.

On July 19, 2019, Plaintiff McGee created an account on JLI's website and made a purchase using her iPhone X. *Id.* ¶ 4. Depicted below in Figure 7 is the "Create Your Account" page JLI claims was accessible on JLI's website the day Plaintiff McGee made her purchase. Jacobs Decl., ¶ 7(a), Ex. 6. JLI does not describe where this screenshot came from or how it knows this screenshot accurately depicts the page Plaintiff McGee accessed on the date she created her account. JLI's "Create Your Account" page is not available on the Wayback Machine for July 19, 2019. Quackenbush Decl., ¶ 4. Therefore, Plaintiffs have no way to verify that the "Create Your Account" page depicted in Figure 7 was available on the date Plaintiff McGee created her account and made her purchase.

<u>Figure 7</u>



In Figure 7, the Terms and Conditions and Privacy Policy are not set forth or described. The text referring to them are set forth in tiny text, in hard to see dark gray text on a white background. "Terms and Conditions" is not displayed in a color generally associated with hyperlinks, and Plaintiff McGee attests that she would not have understood that "Terms and Conditions" was a hyperlink. McGee Decl., ¶ 4. Plaintiff McGee does not recall seeing any disclosure about JLI's Terms and Conditions. *Id*. ¶¶ 4, 5. Nor does she recall whether the disclosure was hidden under her keyboard as she typed her email address and password using her iPhone X to create her account. *Id*. ¶ 4. She is unable to test whether the disclosure was visible above her phone's keyboard because an archived version of JLI's Terms and Conditions is unavailable on the date she created her account. *Id*.; Quackenbush Decl., ¶ 4. Plaintiff McGee was never provided an executed copy of JLI's Terms and Conditions that she purportedly agreed to, nor did she ever receive a copy of JAMS's Optional Expedited Arbitration Procedure. McGee Decl., ¶¶ 8, 9. She has never read JLI's Terms and Conditions and would not expect that terms and conditions on a website could prevent her from bringing her claims in federal court or on a class basis. *Id*. ¶¶ 7, 10. She would have expected JLI's Terms and Conditions to be limited to information about the dangers of using nicotine products. *Id*. ¶ 11.

DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO JUUL LABS, INC'S MOTION TO COMPEL ARBITRATION

## D. JLI's Terms and Conditions

JLI states that its "Terms and Conditions were modified slightly during the period relevant to plaintiffs' use of the JLI website." Jacobs Decl., ¶ 8. JLI claims that "Exhibit 10 is a copy of the JLI Website Terms and Conditions as they existed on JLI's website between June 29, 2017 and July 17, 2019." *Id.* JLI claims "Exhibit 11 is a copy of the JLI Website Terms and Conditions as they existed on JLI's website between July 17, 2019 and November 26, 2019." *Id.* And JLI claims that "Exhibit 12 is a copy of the current JLI Website Terms and Conditions, which have existed in this form on JLI's website since January 13, 2020." *Id.* According to JLI, Plaintiffs purportedly are bound by JLI's iterations of the Terms and Conditions as follows:

| Plaintiff | Date of Website Interaction | Applicable Terms and Conditions |
|---|---|---|
| Anthony Martinez | August 26, 2018 | Exhibit 10 |
| | July 31, 2019 | Exhibit 11 |
| | February 27, 2020 | Exhibit 12 |
| | March 13, 2020 | Exhibit 12 |
| Mallory Flannery | February 26, 2019 | Exhibit 10 |
| Jessica McGee | July 19, 2019 | Exhibit 11 |

However, JLI has failed to properly authenticate the screenshots of the Terms and Conditions. Exhibit 10 is a screenshot of an archived version of JLI's Terms and Conditions available on the Wayback Machine on December 23, 2018. Jacobs Decl., Ex. 10. None of the Plaintiffs logged into their account or made a purchase on that date. Exhibit 11 is a screenshot of an archived version of JLI's Terms and Conditions available on the Wayback Machine on August 28, 2019. Jacobs Decl., Ex. 11. None of the Plaintiffs logged into their account or made a purchase on that date. Exhibit 12 is a print-to-pdf version of JLI's Terms and Conditions dated April 28, 2020. Jacobs Decl., Ex. 12. None of the Plaintiffs logged into their account or made a purchase on that date. Archived versions of JLI Terms and Conditions are unavailable on the dates Plaintiffs created accounts and/or made purchases. *See* Quackenbush Decl., ¶ 4. This means Plaintiffs are unable to verify which of JLI's Terms and Conditions were available when they created their account and/or made their purchases.

One difference between JLI's iterations of the Terms is that Exhibit 10 and 11 are governed by California law, while Exhibit 12 is governed by Delaware Law. *Compare* Jacobs Decl., Exs. 10 and 11 *with* Ex. 12.

### E. JLI's forced arbitration and class action waiver provisions are not disclosed at the point of purchase

After Plaintiffs created an account or logged into their account, JLI's Terms and Conditions were not disclosed, including at the point of purchase. Martinez Decl., ¶ 7; Flannery Decl., ¶ 5; McGee Decl., ¶¶ 5, 9. It is not possible to log in or otherwise proceed past JLI's login page on archived versions of the site. Quackenbush Decl., ¶ 3. However, based on Plaintiffs' Counsel's review of JLI's website on February 13, 2021, JLI's Terms and Conditions are not disclosed to customers at the point of purchase on JLI's website. *See* Quackenbush Decl., ¶¶ 21-31, Ex. 10.

## III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq.* Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The Federal Arbitration Act ("FAA") "does not require parties to arbitrate when they have not agreed to do so . . . . It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293–94 (2002). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

But "'[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.'" *Cordas v. Uber Techs., Inc.*, 228 F.Supp.3d 985,

988 (N.D. Cal. 2017) (quoting *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)). "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). JLI, "as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).[5]

## IV. ARGUMENT

### A. JLI is estopped from enforcing the arbitration and class action waiver provisions against Plaintiffs that created an account using the Login pages held unenforceable in *Colgate*

In the MDL Proceedings, this Court denied JLI's motion to compel arbitration based on the same internet logins and other interactions. *See Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728, 766 (N.D. Cal. 2019). This Court found that two versions of JLI's Login page were unenforceable because they did not "serve[] to put a reasonable user of the internet on inquiry notice of the arbitration provision." *Id.* at 765. The Court based its finding that the hyperlinks were not conspicuous enough to put plaintiffs on inquiry notice. *Id.* at 764-65. The later version of JLI's Login Page that the Court found unenforceable was available on JLI's website at least until August 4, 2018. *See supra* § II.A.1. Therefore, any individual who created an account on or before August 4, 2018 or that used the Login page available on August 4, 2018 is not bound by the arbitration and class action waiver provisions under the doctrine of collateral estoppel.

"The doctrine of collateral estoppel (or issue preclusion) 'prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding.'" *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir.2005) (quoting *Shaw v. Hahn*, 56 F.3d 1128, 1131 (9th Cir.1995)), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). Collateral estoppel comes in two forms when a prior judgment does not bind both parties, i.e., where it is "non-mutual": (1)

---

[5] The Court should apply California law to each of Plaintiffs' purchases. *Shultz v. TTAC* Publ'g, *LLC*, No. 20-CV-04375-HSG, 2020 WL 6937818, at *3 n.1 (N.D. Cal. Oct. 26, 2020) (applying California law where terms and conditions contained a Tennessee choice-of-law provision because the parties did not indicate that it materially differs from California law under a California's choice-of-law analysis). JLI does not assert that Delaware law is materially different from California law in its motion—in fact, it argues the law is similar. Mtn. to Compel., § III.

defensive use of collateral estoppel—where a plaintiff is estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant; and (2) offensive use of collateral estoppel—where a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 329 (1979). "Offensive non-mutual collateral estoppel applies where (1) the issue sought to be litigated is sufficiently similar to the issue presented in an earlier proceeding and sufficiently material in both actions to justify invoking the doctrine, (2) the issue was actually litigated in the first case, and (3) the issue was necessarily decided in the first case." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003). District courts possess broad discretion to determine when to apply offensive non-mutual collateral estoppel. *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 880 (9th Cir. 2007). JLI filed the previous motion to compel, so it had a full and fair opportunity to litigate the issue. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir.1988) (The doctrine of issue preclusion prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding.)

Here, JLI is estopped from arguing that Plaintiffs that created an account using the Login page available on JLI's website on August 4, 2018 are bound by the arbitration and class action waiver provisions under the doctrine of non-mutual offensive collateral estoppel. *First*, the issues are the same. In *Colgate*, JLI sought to compel plaintiffs to arbitrate their claims after plaintiffs created an account on JLI's website using a version of JLI's Login page available on August 4, 2018. 402 F. Supp. at 762. Here, JLI attempts to do the same thing. JLI seeks to compel arbitration against Plaintiff Martinez, who arguably created his account using the same Login page the *Colgate* plaintiffs used. [6] *Second*, this issue was actually litigated. JLI filed a motion to compel arbitration, the *Colgate* plaintiffs opposed, and JLI replied. *See*, *e.g.*, *Colgate*, No. 18-cv-02499, ECF Nos. 98, 109, 113. *Third*, the issue was necessarily

---

[6] As discussed below, JLI has also failed to come forward with evidence that Plaintiff Martinez did not use the August 4, 2018 version of the Login page when he created his account. Given this evidence should be in the hands of JLI, this failure of proof defeats the motion to compel. *Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2020 WL 6135990, at *8 (N.D. Cal. Oct. 19, 2020) (defendant that offered improperly authenticated screenshots with a "dating problem," failed to meet its burden of showing plaintiffs assented to the terms).

decided in *Colgate*. This Court denied JLI's motion to compel arbitration, finding that plaintiffs did not

assent to the arbitration and class action waiver provisions because they did not have actual notice or

inquiry notice of the provisions using JLI's Login Page available on August 4, 2018. *See Colgate*, F. Supp.

at 766. JLI did not appeal or seek review of that decision.

Therefore, under this Court's broad discretion and to conserve judicial resources, JLI should be

estopped from arguing that Plaintiffs that used the version of JLI's Login page available on August 4,

2018 are bound by the arbitration and class action waiver provisions.

### B. JLI has not met its burden to enforce the arbitration and class action waiver provisions against Plaintiff Martinez

JLI claims that "[s]ince at least August 2018 . . . creating an account required users to first

acknowledge their agreement to JLI's website Terms and Conditions by "clicking" a checkbox, and then

asking them to enter an email address and password." Jacobs Dec., ¶ 4. JLI includes a screenshot of a

Log In page for juul.com "as it existed in August 2018." *See* Jacobs Dec., ¶ 5, Ex. 4. However, JLI has

failed to prove by a preponderance of the evidence that Plaintiff Martinez used this version of the Login

page.

In *Colgate*, JLI averred that the Login page available on JLI's website on August 4, 2018 did not

have a checkbox. *See supra* § II.A.1. Although JLI remarkably fails to offer any proof on this point,

archived versions of JLI's website available on the Wayback Machine show that the clickbox was added

sometime between August 4, 2018 and September 3, 2018. Quackenbush Decl., ¶¶ 5-7, Exs. 2, 3.

Plaintiff Martinez created his account on August 26, 2018, and he does not recall seeing or clicking a

clickbox. Martinez Decl., ¶ 4. Despite the centrality of this fact, "[p]uzzlingly, [ JLI] does not state the

date when the website first adopted" the clickbox. *See Snow*, No. 3:20-CV-03698-WHO, 2020 WL

6135990, at *5. "It is strange (at best) that [ JLI] does not simply show the sign-in [] agreements as they

existed on the date[]" Plaintiff Martinez created his account and made his purchase. *See id.* Since JLI

has not demonstrated the content of JLI's Login page when Plaintiff Martinez created his account, it has

failed to carry its burden to compel arbitration. *Id.*, at *6.

Plaintiff Martinez's return to JLI's Login page as a customer did not manifest an intent to

choose arbitration or put him on inquiry notice. When Plaintiff Martinez logged back into his account,

he purportedly used two of three iterations of JLI's Login page ( JLI is not sure). *See supra* § II.A.2–3. All these iterations are "sign-in wrap" agreements.[7] *See Colgate*, 402 F. Supp. at 763. In each of these iterations, the Terms and Conditions disclosure was at the bottom of the page, in small text, below the interactive fields and buttons that Plaintiff Martinez was required to complete to Sign In. None of those iterations required Plaintiff Martinez to click a box next to the disclosure. Plaintiff Martinez does not recall clicking a box, seeing a disclosure, or reviewing JLI's Terms and Conditions. Martinez Decl., ¶¶ 4-6. Since he was logging back into his already established account, there is no reason he would have focused his attention on information below the interactive boxes. Indeed, that Login page appears to be set up to expedite arrival at the part of the website where products are promoted and where commerce occurs.

## C. Plaintiffs that created an account after JLI changed its August 4, 2018 Login page are not bound by JLI's arbitration and class action waiver provisions

Relevant here, a contract does not bind a party under three circumstances. First, a party cannot be bound by a contract it did not assent to or without consideration. Second, a party cannot be bound by a contract that is unconscionable. Third, a party cannot be bound by a contract that prospectively waives the party's right to pursue statutory remedies.

### 1. Plaintiffs Flannery and McGee did not assent to the arbitration and class action waiver provisions

"It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565. Assent to an electronic arbitration agreement can be demonstrated by showing either that: (i) the consumer had actual knowledge of the arbitration provision when a transaction was consummated, or (ii) a conspicuous notice that would have put a reasonably prudent

---

[7] There are two main types of contracts formed on the internet: (1) "clickwrap" agreements and (2) "browsewrap" agreements. *Colgate*, 402 F. Supp. 3d at 763. "'Clickwrap' agreements require website users to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Id.* "'Browsewrap' agreements exist where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen. *Id.* There is also a hybrid category, known as "sign-in-wrap" agreements. *Id.* "'Sign-in-wrap' agreements are those in which a user signs up to use an internet product or service, and the signup screen states that acceptance of a separate agreement is required before the user can access the service." *Id.* As this Court has previously found, JLI utilized a sign-in wrap agreement, at least until August 4, 2018. *Id.* at 763.

DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO JUUL LABS, INC'S MOTION TO COMPEL ARBITRATION

user on inquiry notice of the terms of the contract. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

Neither Plaintiff Flannery nor McGee had actual notice of the arbitration or class action waiver provisions when they created an account using JLI's Login page. Flannery Decl., ¶ 4; McGee Decl., ¶ 4. Plaintiffs Flannery and McGee were not required to affirmatively acknowledge that they agreed to the Terms and Conditions at the point of purchase. Quackenbush Decl., ¶¶ 21-31; *see generally, Nguyen* at 1176. Instead, they were simply required to acknowledge the existence of the Terms and Conditions at the time they signed up for an account with JLI. Flannery Decl., ¶ 4; McGee Decl., ¶ 4.

JLI's modifications to the Login page were insufficient to put the Plaintiffs on inquiry notice. *First*, the provision purportedly selecting arbitration is not set forth on the Login page or other pages with which purchasers can be reasonably expected to interact. Plaintiffs were not required to click on the Terms and Conditions, scroll through the Terms and Conditions, review the Terms and Conditions, or check a box at the end of the Terms and Conditions before creating an account. Nor were Plaintiffs provided executed copies of the Terms and Conditions. *See* Martinez Decl., ¶ 10; Flannery Decl., ¶ 8; McGee Decl., ¶ 9. In fact, none of the Plaintiffs have ever read JLI's Terms and Conditions. Martinez Decl., ¶ 8; Flannery Decl., ¶ 6; McGee Decl., ¶ 7.

*Second*, the font size, color, bolding, and capitalization of the relevant language do not draw one's attention to JLI's Terms and Conditions. The single sentence disclosing the Terms and Conditions is in black font—not red, or green, or any color that would contrast with a dull gray background—is not underlined, in bold, or capitalized. *See* Figure 6 *supra*; Figure 7 *supra*. It is not as if JLI did not know how to make those changes to make the Terms and Conditions more visible. In fact, the other language on the page (*e.g.*, "CREATE YOUR ACCOUNT" (Figure 7 *supra*), or "NEW TO JUUL? SIGN UP" (Figure 6 *supra*)) is in black, larger type and bolded. This language is more prominent, thus minimizing any claim that the text was not noticeable.

Plaintiff Flannery attests that she would not have understood that "Terms and Conditions" was a hyperlink. Flannery Decl., ¶ 4. Plaintiff Flannery does not recall seeing any disclosure about JLI's Terms and Conditions. *Id*. ¶¶ 4, 5. Nor does she recall whether the disclosure was hidden under her keyboard as she typed her email address and password using her iPhone. *Id*. ¶ 4. Similarly, Plaintiff

McGee, who also used her mobile phone, attests that she would not have understood that "Terms and Conditions" was a hyperlink. McGee Decl., ¶ 4. Plaintiff McGee does not recall seeing any disclosure about JLI's Terms and Conditions. *Id*. Nor does she recall whether the disclosure was hidden under her keyboard as she typed her email address and password using her iPhone X to create her account. *Id*. JLI minimized and hid the agreement to arbitrate and other waivers of rights in its hyperlinked Terms and Conditions.

Courts have found more conspicuous hyperlinks to be insufficient. *See Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62-63 (1st Cir. 2018) (gray rectangular box with the language "Terms of Service & Privacy Policy" displayed in a larger font, in bold, contrasting in color, and highlighted by the box around it was not reasonably conspicuous); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 466-67 (S.D.N.Y. 2017) (hyperlink in smallest font on the screen but colored in light blue on a white background insufficient to provide notice).

*Third*, the language is generalized, nondescriptive and opaque. It does not refer to any terms of the agreement, including in particular "arbitration," "class action," "waiver," or the like. In particular, there is no indication that by clicking on the box, the user is assenting to an agreement to arbitrate or manifest agreement to any specific terms.

*Fourth*, the page is small, and the layout is cluttered. The relevant language directing the user to the full Terms and Conditions is not conspicuously placed on the Login page. Both the "Sign Up/Log In" (Figure 6 *supra*) and "Create Your Account" pages (Figure 7 *supra*) are small and cluttered. The "Terms and Conditions" language is buried on the page, camouflaged with other words on the page and it is not distinguished by formatting or design.

*Fifth*, the relevant language directing the user to the full agreement is not conspicuously placed on the webpage. The webpage also contains numerous other links. Moreover, the use of hyperlinks is generally insufficient to put a consumer on inquiry notice. *See Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 867 (2016) ("The problem with merely displaying a hyperlink in a prominent or conspicuous place is that, without notifying consumers that the linked page contains binding contractual terms, the phrase 'terms of use' may have no meaning or a different meaning to a large segment of the Internet-using public. In other words, a conspicuous 'terms of use' hyperlink may not be enough to alert

DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO JUUL LABS, INC'S MOTION TO COMPEL ARBITRATION

a reasonably prudent Internet consumer to click the hyperlink.")

*Sixth*, JLI's forced arbitration and class action waiver provision were not provided to Plaintiffs at the point of purchase. Quackenbush Decl., ¶¶ 21-31; Ex. 10; *see also Starke v. SquareTrade, Inc.*, 913 F.3d 279, 294 (2d Cir. 2019) (finding plaintiff lacked inquiry notice because "the 'Terms & Conditions' hyperlink was spatially decoupled from the transaction because it was not provided near the portion of the Amazon purchase page actually requiring Starke's attention (that is, the 'Add to Cart' button)").

Recognizing the weakness of its position, JLI attempts to distinguish the facts applicable here from those the Court adjudicated in *Colgate*. JLI mischaracterizes its agreement as a "click-wrap" agreement. Mtn. to Compel at 10. A click-wrap agreement is one where "users click on an "I agree" box after being presented with a list of terms and conditions of use."[8] *Colgate*, 402. F. Supp. 2d at 763; *Nguyen*, 763 F.3d at 1175-76. In fact, as before, JLI used a "sign-in-wrap" agreement. *See Colgate*, 402 F. Supp. 2d at 763 (discussing JLI's sign-in wrap agreement). Plaintiffs were not required to, and in fact did not, "visit[] the page hosting the [arbitration] agreement" when they signed up. *Colgate*, 402 F. Supp. 3d at 763 (citing *Nguyen*, 763 F.3d at 1176). In fact, Plaintiffs only were required to check a box stating they agree to the "Terms and Conditions" and "Privacy Policy." The Terms and Conditions and Privacy Policy are not displayed, described, or explained. *See* Jacobs Decl., Exs. 4-9.

With respect to disclosure or notice, there is no substantive difference between the Plaintiffs here and that of the plaintiffs in *Colgate. See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1032 (7th Cir. 2016) (holding arbitration and class action waiver provision unenforceable where the terms were available on the page in a scroll window and visitors to the website had to click an "I Accept" button below the Terms). The addition of a clickbox, without more, is insufficient to put plaintiffs on inquiry notice. Plaintiffs were not required to view the Terms and Conditions before they signed in. They did not agree to be bound. They were not on notice that JLI sought to bind them to arbitration through the Terms and Conditions or that they agreed to be bound when they purchased JLI's products.

---

[8] "Click wrap" agreements and "browse wrap" are described above. *See* footnote 4, *supra*.

**2. Plaintiffs are not bound by the arbitration and class action waiver provisions because the contract is unconscionable**

Under California law, a contract is void as unconscionable where the contract was formed in the "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Brice*, 372 F. Supp. 3d at 965. Courts considering whether a contract is unconscionable take a two-prong approach, examining the contract for procedural or substantive unconscionability. *Id.* While courts require proof of both types of unconscionability, "both need not be present to the same degree." *Id.* Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000).

"Procedural unconscionability occurs where a contract or clause involves oppression, consisting of a lack of negotiation and meaningful choice, or surprise, such as where the term at issue is hidden within a wordy document." *Brice*, 372 F. Supp. at 965. "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). "Substantive unconscionability occurs where the provision at issue reallocates risks in an objectively unreasonable or unexpected manner. Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Brice*, 372 F. Supp. at 965 (internal citations omitted).

The alleged arbitration contract is procedurally unconscionable. *First*, Plaintiffs were addicted to nicotine when they created their accounts and made their purchases, and are locked-in to JLI's ENDS products.[9] Martinez Decl., ¶ 3; Flannery Decl., ¶ 3; McGee Decl., ¶ 3. In order to satisfy their nicotine addiction, they must purchase JLI's ENDS products which contain nicotine. *Second*, Plaintiffs had no ability or opportunity to bargain over the Terms and Conditions. *Cabatit v. Sunnova Energy Corp.*, No.

---

[9] "Consumers purchase the primary Closed-System E-Vapor device and are thereafter constrained to use of compatible cartridges, pods or tanks or must purchase a new device." DPP Consolidated Complaint (the "CAC"), ECF No. 135 (the "CAC"), ¶ 118.

C089576, 2020 WL 8365909, at *3 (Cal. Ct. App. Dec. 31, 2020). *Third*, Plaintiffs were not required to read the Terms and Conditions in general—or the arbitration and class action waiver provisions in particular—prior to manifesting assent. Likewise, JLI did not provide any explanation, description, or disclosure. JLI failed to do so before accessing the login, as a prerequisite for clicking the box, logging in or performing any other function on the webpage. *Id. Fourth*, Plaintiffs were not provided an executed copy of the Terms and Conditions. *Id.*; *see also* Martinez Decl., ¶ 10; Flannery Decl., ¶ 8; McGee Decl., ¶ 9. Fifth, Plaintiffs were not provided a copy of JAMS's Optional Expedited Arbitration Procedure, which JLI sought to enforce on Plaintiffs. *See Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 244 (2016) (collecting cases requiring that arbitration procedures be provided);[10] Martinez Decl., ¶¶ 9, 10; Flannery Decl., ¶¶ 7, 8; McGee Decl., ¶¶ 8, 9.

JLI's Terms and Conditions are also substantively unconscionable for several reasons. *See Earl of Chesterfield v. Janssen* [1750], 28 Eng. Rep. 82, 100 (Ch.) (unconscionability "may be apparent from the intrinsic nature and subject of the bargain itself; such as no man in his senses and not under a delusion would make on the one hand, and as no honest man would accept on the other; which are unequitable and unconscientious bargains, and of such even the common law take notice."). *First*, JLI's Terms and Conditions are unfair—and illusory—because JLI retained the unilateral, unrestricted right to "modify, limit, change, discontinue, or replace" the Terms and Conditions, without notifying Plaintiffs. *See e.g.*, Jacobs Decl., Ex. 10. Such unilateral one-way power to modify the agreement without consideration is fundamentally unfair and violates hornbook rules of contract law.; *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012) (holding that *Zappos* Terms of Use were unenforceable where it gave *Zappos* the right to change its terms of use, including the arbitration clause, at any time without notice to the consumer, and collecting cases holding similarly).

*Second*, consumers throughout the United States are forced to bring their claims in San Francisco, California, or (today) Wilmington, Delaware, meaning they must personally bear the costs

_____

[10] The holding in *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1246 (2016) is distinguishable. There, the California Supreme Court held that failure to provide a copy of AAA's procedures, standing alone, was not unconscionable where there were no allegations that AAA's procedures were substantively unconscionable. *Id.* Here, as described below, JAMS's Optional Expedited Arbitration Procedure are substantively unconscionable.

DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO JUUL LABS, INC'S MOTION TO COMPEL ARBITRATION

associated with travel and lodging during any arbitration, unless JLI deigns to agree to an alternative location. *See e.g.*, Jacobs Decl., Exs. 10-12, at § 16.

*Third*, Plaintiffs are forced to arbitrate "any claim, dispute or controversy," while JLI retains the unilateral right to seek "injunctive or equitable relief from the courts as necessary to prevent the actual or threatened infringement, misappropriation, or violation of [its] data security, Intellectual Property Rights or other proprietary rights." *E.g.*, Jacobs Decl., Ex. 10, at § 16; *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 118, 6 P.3d 669, 692 (2000) ("If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration."); *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 248 (2016) ("courts repeatedly have found an employer-imposed arbitration agreement to be substantively unconscionable when it requires the employee to arbitrate the claims he or she is most likely to bring, but allows the employer to go to court to pursue the claims it is most likely to bring.").

*Fourth*, JLI purports to shorten Plaintiffs' statutory limitations period from four years to one. *Ali v. Daylight Transp., LLC*, 59 Cal. App. 5th 462 (2020) ("California courts have held that, in the context of statutory claims such as the wage-and-hour claims brought by [respondents], a provision in an arbitration agreement shortening the statutory limitations period is substantively unconscionable.").

*Finally*, JAMS's Optional Expedited Arbitration Procedure are substantively unconscionable because they limit discovery or shift the cost of discovery in cases "[w]here the costs and burdens of e-discovery are disproportionate to the nature of the dispute or to the amount in controversy, or to the relevance of the materials requested." Quackenbush Decl., ¶ 34, Ex. 13 (JAMS's Optional Expedited Arbitration Procedure, Rule 16.2 (c)(iv)). Plaintiffs will need extensive discovery to prove their antitrust case, including large amounts of transactional data, emails, PowerPoints, and excel files. Antitrust cases can cost hundreds of thousands of dollars, yet individual claims can be de minimis. Furthermore, JAMS's Optional Expedited Arbitration Procedure limits Plaintiffs to one discovery deposition, which is unreasonable in an antitrust case. *Id.* at 16.2(d). Taken together, JLI's Terms and Conditions are unconscionable, and therefore, the contract should be void against Plaintiffs and the Class.

### 3. Even if an arbitration agreement existed, it would be unenforceable as a prospective waiver of Plaintiffs' statutory rights and against public policy

An arbitration agreement is unenforceable if it is a "prospective waiver of a party's right to pursue statutory remedies" *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 965 (N.D. Cal. 2019) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*, 473 U.S. 614, 666 n. 19 (1985)). This includes contractual provisions which operate as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations. *Mitsubishi*, 473 U.S. at 666 n. 19; *see also Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) ("courts will not enforce an arbitration agreement if doing so would prevent a litigant from vindicating federal substantive statutory rights.").

Even if the Court were to find Plaintiffs assented to the Terms and Conditions, and the Terms and Conditions were not unconscionable, they operated as a prospective waiver of Plaintiffs' statutory rights under the Sherman and Clayton Acts. JLI's Terms and Conditions are governed by either California or Delaware law. *See* Jacobs Decl., Ex. 10 ("These Terms shall be governed by the internal substantive laws of the State of California."); Jacobs Decl., Ex. 11 (same); Jacobs Decl., Ex. 12 ("**These Terms and Conditions will be governed by and interpreted under the laws of the State of Delaware, USA**"). The Terms and Conditions apply to consumers' purchase of any JLI product. *See id.* Therefore, if Plaintiffs are required to arbitrate their claims against JLI, they will have to forego their federal antitrust claims.

JLI may argue that prospective waiver is inapplicable because applying California or Delaware law only limits Plaintiffs' rights to pursue statutory remedies. *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 965 (N.D. Cal. 2019). They would be wrong. Under Delaware Law, there is no private cause of action for antitrust violations. *See* Del. Code tit. 6, § 2101, *et seq*. Therefore, Plaintiffs forced to forgo their statutory rights under federal law in favor of Delaware law will be left without a cause of action. Even if California law were to apply, Plaintiffs are not permitted to seek public injunctive relief under the federal Sherman and Clayton Acts, or its California equivalent, the California Unfair Competition Law. *See e.g.*, Jacobs Decl., Ex. 10, § 16 (carving out JLI's unilateral right to seek injunctive and other equitable relief); JAMS's Optional Expedited Arbitration Procedure, §§ 16.2-3 (failing to include an arbitrator's right to award injunctive and other equitable relief). "Agreements to arbitrate claims for public injunctive relief under the . . . UCL . . . are not enforceable in California." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 956 (2017) (citing *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 307 (2003)).

Plaintiffs seek public injunctive and other equitable relief. CAC, ¶ 189. Therefore, JLI's Terms and Conditions are unenforceable as they serve as a prospective waiver of Plaintiffs' statutory rights.

If the Court were to find that JLI's choice-of-law provision acts as a prospective waiver of Plaintiffs' statutory rights and remedies under the Sherman and Clayton Acts, it should not rewrite JLI's Terms and Conditions to exclude its choice-of-law provision because the provision goes "to the core of the arbitration agreement." *Brice*, 372 F. Supp. 3d at 968 (citing *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 676 (4th Cir. 2016)). Furthermore, "when a party uses its superior bargaining power to extract a promise that offends public policy, courts generally opt not to redraft an agreement to enforce another promise in that contract." *Dillon*, 856 F.3d at 337. [11]

### D. Plaintiffs' claims against the Individual Defendants are not subject to the forced arbitration agreement or class action waiver provision

JLI does not dispute that Defendants Riaz Valani and Nick Pritzker are non-signatories to the arbitration agreement with Plaintiffs. Nor does JLI dispute that there is no contractual privity between Plaintiffs and either Pritzker or Valani. "Generally, the contractual right to compel arbitration 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir.1993)).

To overcome this general prohibition, JLI argues that its arbitration and class action waiver provisions should be enforced between Plaintiffs and Pritzker and Valani under the agency principle. *See* Mtn. to Compel, § IV.E. To extend the contract to others, JLI must show that (1) "the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents," and (2) "the claims against the agents . . . relate to the contract containing the arbitration clause." *Esguerra-Aguilar*, No. 20-cv-00574-BLF, 2020 WL 3869186, at *6 (quoting *Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007)). The arbitration agreement and class action waiver provision should be construed narrowly because "[t]he strong public policy in favor of arbitration does

---

[11] If the Court finds that Plaintiffs entered enforceable contracts with JLI, Plaintiffs concede that the arbitration agreements applies to their claims and the class action waiver provision is enforceable.

not extend to those who are not parties to an arbitration agreement." *Kramer*, 705 F.3d at 1126 (citation omitted).

JLI has failed to establish that Pritzker and Valani were its agents. The "essential element which must be factually present in order to establish the existence of agency" is the "right of the alleged principal to control the behavior of the alleged agent." *See DeSuza v. Andersack*, 63 Cal.App.3d 694, 699, 133 Cal.Rptr. 920 (1976). Here, neither Pritzker nor Valani have contended that JLI controlled their behavior. In fact, Pritzker and Valani expressly disclaim such control, referring to themselves as Non-Management Defendants. *See* Non-Management Directors' Mtn. to Dismiss, ECF No. 209. Moreover, Pritzker and Valani are the largest shareholders of JLI and sit on the JLI Board of Directors. CAC, ¶¶ 19–20. Indeed, it appears Pritzker and Valani control the behavior of JLI, not the other way around.

In any event, they have also failed to show that they were acting with the authority or under the apparent authority of JLI. Instead, Pritzker and Valani appear to want to have it both ways—that they are agents of JLI for purposes of the motion to compel (ECF No. 210, at 20), but not agents for purposes of their motion to dismiss (ECF No. 209, at 2-3 (downplaying Pritzker and Valani's active role in the *per se* antitrust violation). Perhaps they make this incongruous argument to protect JLI from vicarious liability. *See Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 577 (1982) (holding principal liable for agents' anticompetitive conduct). Whatever the reason may be, this disconnect and confusion argues against finding a principal/agent relationship exists and that Pritzker and Valani can enforce the arbitration and class action waiver provisions on Plaintiffs.

## V.     CONCLUSION

For the foregoing reasons, Direct Purchaser Plaintiffs respectfully request that the Court deny JLI's Motion to Compel Arbitration or Alternatively Strike Class Allegations.

Dated: March 5, 2021

Respectfully Submitted,

By:      /s/ Joseph R. Saveri
              Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Katharine L. Malone (State Bar No. 290884)
Christopher K. Young (State Bar No. 318371)
Kyle P. Quackenbush (State Bar No. 322401)
Anupama K. Reddy (State Bar No. 324873)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:     jsaveri@saverilawfirm.com
              swilliams@saverilawfirm.com
              kmalone@saverilawfirm.com
              cyoung@saverilawfirm.com
              kquackenbush@saverilawfirm.com
              areddy@saverilawfirm.com

*Interim Lead Counsel for Direct Purchaser Plaintiffs*