Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Katharine L. Malone (State Bar No. 290884)
Christopher K.L. Young (State Bar No. 318371)
Kyle P. Quackenbush (State Bar No. 322401)
Anupama K. Reddy (State Bar No. 324873)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:  jsaveri@saverilawfirm.com
        swilliams@saverilawfirm.com
        kmalone@saverilawfirm.com
        cyoung@saverilawfirm.com
        kquackenbush@saverilawfirm.com
        areddy@saverilawfirm.com

*Interim Lead Counsel for Direct Purchaser Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC. ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL DIRECT PURCHASER ACTIONS | Case No. 3:20-cv-02345-WHO<br><br>**DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO JUUL LABS, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**<br><br>Date:       April 21, 2021<br>Time:       2:00 p.m.<br>Courtroom:  2<br>Judge:      Hon. William H. Orrick |

Case No. 3:20-cv-02345-WHO

DIRECT PURCHASER PLAINTIFFS' OPPOSITION
TO JUUL LABS, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 2

III. ARGUMENT ................................................................................................................... 2

    A. For the Reasons Set Forth in DPPs' Opposition to Defendant Altria's Motion to Dismiss, DPPs Have Stated Valid Sherman Act Section 1 Claims Against Defendant JLI ....................................................................................................................... 3

    B. Defendant JLI Is a Necessary Party to Effectuate Complete Relief From the Unlawful Acquisition Pursuant to Section 7 of the Clayton Act ...................................... 5

IV. CONCLUSION ................................................................................................................ 7

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Addamax Corp. v. Open Software Found., Inc.*, 888 F. Supp. 274 (D. Mass. 1995) ...................................... 6

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051 (9th Cir. 1999) ................................................ 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................................... 2

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ............................................................................................................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................................... 3

*In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................... 4

*Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286 (3d Cir. 2005) ........................................................... 4

*Dehoog v. Anheuser-Busch InBev, SA/NV*, No. 1:15-CV-02250-CL, 2016 WL 5853733 (D. Or. July 22, 2016) ............................................................................................................................... 5, 6

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............................................... 2

*Free Freehand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171 (N.D. Cal. 2012) ......................................... 4

*Fricke-Parks Press, Inc. v. Fang*, 149 F. Supp. 2d 1175 (N.D. Cal. 2001) ................................................... 5

*Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d. 838 (N.D. Cal. 2004) ....................................................... 5

*Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000 (9th Cir. 2003) ..................................................... 5

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) ...................................................... 3

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ........................................................................................................................ 2

*Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839 (9th Cir. 1996) ................................................................... 7

*Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46 (1990) ................................................................................ 3, 7

*Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024 (9th Cir. 2001) .................................................................. 4

*Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008) ................................................................... 3

*Steves & Sons, Inc. v. Jeld-Wen, Inc.*, No. 19-1397 (4th Cir. Feb. 18, 2021) ......................................... 2, 5, 6

*Tawfilis v. Allergan, Inc.*, 157 F. Supp. 3d 853 (C.D. Cal. 2015) .................................................................. 4

*United States v. Coca-Cola Bottling Co. of L.A.*, 575 F.2d 222 (9th Cir. 1978) ................................... 1, 6, 7

*United States v. Topco Assocs., Inc.*, 405 U.S. (1972) ............................................................................ 7

*Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ........................................................ 3

**Federal Statutes**

Clayton Act § 7 .................................................................................................................................*passim*

Clayton Act § 26 .............................................................................................................................. 2, 5, 6

Sherman Act § 1 .................................................................................................................................. 1, 3

Sherman Act § 2 ...................................................................................................................................... 1

# I. INTRODUCTION

Defendant Juul Labs, Inc.'s ("JLI") Notice of Motion and Motion to Dismiss Plaintiffs' Complaints (the "Mot.") attacks Direct Purchaser Plaintiffs' ("DPPs") Consolidated Class Action Complaint ("CAC") on two grounds: (1) that DPPs' claims under Section 1 of the Sherman Act fail for the reasons stated in Defendant Altria's motion to dismiss; and (2) that JLI did not "acquire" stocks or assets and is thus not liable under Section 7 of the Clayton Act.[1] JLI is wrong on both.

First, as shown in DPPs' Opposition to Defendant Altria's Motion to Dismiss (ECF No. 230) (incorporated by reference herein), Defendant Altria's motion to dismiss is without merit and should be denied in full. As DPPs explain in their opposition to Altria's Motion to Dismiss, DPPs have pleaded in more than requisite detail each element of a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, including the illegal anticompetitive agreement, causation, and damages. Likewise, Plaintiffs have pleaded in detail each element of a claim under Section 7 of the Clayton Act, 15 U.S.C. § 18, including a corporate combination the effect of which was to substantially lessen competition. Plaintiffs have also alleged facts constituting antitrust injury and injury-in-fact sufficient to establish Article III standing. *See* ECF No. 230, Part IV. JLI's motion to dismiss fails for the same reasons as Altria's, and both are liable for their role in the anticompetitive scheme.

Second, sellers of the stock or assets cannot escape a court's power in equity to provide relief, specifically to undo an unlawful acquisition violative of Section 7 of the Clayton Act. 15 U.S.C. § 26. Where, as here, plaintiffs seek to enjoin a transaction, courts have recognized that sellers involved in an acquisition of stocks and assets in violation of Section 7 are subject to the court's jurisdiction as necessary to fashion complete relief, i.e., the undoing of the anticompetitive transaction. *See United States v. Coca-Cola Bottling Co. of L.A.*, 575 F.2d 222, 227-28 (9th Cir. 1978). And as the Fourth Circuit

---

[1] Defendant JLI also joins Altria in moving to dismiss "state-law indirect purchaser claims," "a claim for unjust enrichment" and that the claims of certain individual plaintiffs should be dismissed for failure to serve. Mot. at 5. These claims are inapplicable to DPPs' CAC and DPPs do not address them here. DPPs also do not address Defendant JLI's joinder of Defendant Altria's argument that "Plaintiffs fail to plead the existence of a conspiracy between Altria and JLI to monopolize the relevant market." *Id*. DPPs do not claim a conspiracy to monopolize under Section 2 of the Sherman Act. Likewise, DPPs do not address Defendant JLI's argument that "Plaintiffs Are Not Entitled to Injunctive Relief Under Section 2 of the Sherman Act." *Id*. at 6-9.

held a mere two weeks ago, equitable relief is available under the Clayton Act even in private actions. *See Steves & Sons, Inc. v. Jeld-Wen, Inc.*, ___ F.3d ___, No. 19-1397, slip op. at 2 (4th Cir. Feb. 18, 2021) (in private action, "the court properly found that equitable relief available under the Clayton Act, 15 U.S.C. § 26").

The Transaction[2]—through which Altria received a substantial ownership stake in JLI on the condition that Altria withdraw its existing Closed-System E-Vapor[3] products from the market and avoid any future involvement in the market—substantially lessened competition in the market for Closed-System E-Vapor products in the United States. CAC ¶¶ 110, 142, 152, 186. DPPs allege that the Transaction resulted in increased market concentration in the already-concentrated relevant market. CAC ¶¶ 129-131. And they allege that they were harmed as a direct and proximate result of the Transaction, and that this harm is likely to continue unless injunctive relief is granted. Complete injunctive relief requires that both parties to the anticompetitive transaction—JLI and Altria—be held liable.

## II.   FACTUAL BACKGROUND

DPPs incorporate by reference the factual background set forth in DPPs' Opposition to Defendant Altria's Motion to Dismiss. ECF No. 230, Part II.

## III.   ARGUMENT

To withstand a motion to dismiss, all DPPs must do is allege "'enough facts to state a claim to relief that is plausible on its face.'" *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 309192, at *9 (N.D. Cal. Jan. 21, 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of

---

[2] JLI and Altria executed a series of agreements, including a Purchase Agreement, Relationship Agreement, Services Agreement, Intellectual Property License Agreement, and Voting Agreement (collectively, the "Transaction"). CAC ¶ 92.

[3] *See* CAC ¶ 2 (describing Closed System E-Vapor products as "electronic devices that deliver nicotine to a user by vaporizing a liquid nicotine solution. In a closed system, the liquid is contained in a pre-filled, sealed cartridge, pod, or tank.")

what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (internal quotation marks omitted) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); *see also Twombly*, 550 U.S. at 555 (same). When determining the sufficiency of the allegations in a complaint, a court must accept all non-conclusory allegations in a complaint as true and construe them in the light most favorable to the plaintiff. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008). The court must consider the complaint as alleged, and defendants may not ignore or recast plaintiffs' allegations. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989-90 (9th Cir. 2000).

This same standard applies to allegations of standing. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("we must assume that the Union can prove the facts alleged in its amended complaint"); *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (at the pleading stage, a plaintiff "need only show that the facts alleged, if proved, would confer standing upon him"); *Knevelbaard Dairies*, 232 F.3d at 989-90 (same).

### A.  For the Reasons Set Forth in DPPs' Opposition to Defendant Altria's Motion to Dismiss, DPPs Have Stated Valid Sherman Act Section 1 Claims Against Defendant JLI

Defendant JLI joins Altria in claiming DPPs have not pleaded facts plausibly alleging a claim under Section 1 of the Sherman Act, a claim under Section 7 of the Clayton Act, antitrust injury, Article III standing, and a plausible claim under Section 7 of the Clayton Act.[4] Mot. at 5. For the reasons set forth in DPPs' Opposition to Defendant Altria's Motion to Dismiss, ECF No. 230, and which DPPs incorporate as if fully set forth herein, the arguments against DPPs by Defendant Altria in its Motion to Dismiss are without merit.

Briefly summarized, DPPs pleaded that Defendants entered into an anticompetitive agreement to restrain trade in the Closed-System E-Vapor market in violation of Section 1. DPPs allege a unlawful market allocation agreement[5] between horizontal competitors pursuant to which Altria withdrew its Closed-System E-Vapor products from the market, ceased competing with JLI, and executed a formal

---

[4] DPPs do not address arguments inapplicable to DPPs' CAC. *See* note 1, *supra*.

[5] A market allocation agreement is "unlawful on its face." *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49–50 (1990).

written Transaction with JLI containing a non-compete provision. CAC ¶¶ 61-108. All of this conduct was part of, and consistent with, Altria and Juul's overarching anticompetitive agreement. The CAC is replete with both direct and circumstantial evidence of Altria and JLI's anticompetitive agreements. DPPs' allegations, viewed as a whole, more than plausibly suggest that a meeting of the minds occurred and that Altria and JLI entered into an anticompetitive agreement. *Id.*, ¶¶ 61-108. DPPs plead that, as a result of the agreement, they paid supracompetitive prices, classic antitrust injury and exactly the type of injury the antitrust laws were designed to address. *Id.*, ¶¶ 9, 139, 160.

DPPs also adequately pleaded standing under Article III and the antitrust laws. With regards to Article III standing, Defendants' argument that DPPs have failed to allege injury-in-fact fails. It is well established that the harms DPPs assert—including overcharge damages—establish standing under the antitrust laws, as well as under Article III, which "imposes a lower bar." *Tawfilis v. Allergan, Inc.*, 157 F. Supp. 3d 853, 863 (C.D. Cal. 2015); *see also In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1071 (N.D. Cal. 2015) (allegation that plaintiffs "purchased electrolytic and/or film capacitors" and "paid supracompetitive prices for them" was "sufficient to establish injury in fact fairly attributable to the defendants for Article III standing purposes"); *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005) ("Monetary harm is a classic form of injury-in-fact. Indeed, it is often assumed without discussion.") (internal citations and quotations omitted). DPPs have also adequately alleged standing to sue for injunctive relief as DPPs have alleged they paid supracompetitive prices for Juul products and that "the offense is likely to continue unless injunctive relief is granted." CAC ¶¶ 35, 171.

Defendants' arguments that DPPs did not allege antitrust injury are similarly unavailing. DPPs allege that as a direct and proximate result of the Transaction—which caused Altria's complete departure from the market for Closed-System E-Vapor products—DPPs suffered a range of antitrust injuries, including (1) supracompetitive prices (CAC ¶¶ 9, 139, 160(b), 179), (2) reduced output (CAC ¶ 139), (3) reduced innovation (CAC ¶¶ 102, 139), and (4) elimination of consumer choice (CAC ¶139). These alleged injuries are of the kind the antitrust laws "were intended to prevent," *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999), and "commonly satisfy the antitrust standing requirement." *Free Freehand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1185 (N.D. Cal. 2012)

(plaintiff alleged supracompetitive prices and decreased innovation in the market for professional vector graphics software); *see Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001) ("[T]he antitrust laws are only concerned with acts that harm 'allocative efficiency and raise[ ] the price of goods above their competitive level or diminish[ ] their quality.'"); *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1011 (9th Cir. 2003) ("One form of antitrust injury is coercive activity that prevents its victims from making free choices between market alternatives.") (citation omitted).

Defendant Altria's motion to dismiss falls far short of the mark. Defendant JLI's motion fails for all the same reasons.

**B.     Defendant JLI Is a Necessary Party to Effectuate Complete Relief from the Unlawful Acquisition Pursuant to Section 7 of the Clayton Act**

Defendant JLI argues it cannot be held liable under Section 7 of the Clayton Act "because JLI did not 'acquire' any stock." Mot. at 5. This is wrong. JLI ignores the fact that DPPs seek *injunctive* relief to undo the anticompetitive transaction. Courts have long held that sellers of stock and assets are subject to their equitable reach in order to undo anticompetitive transactions that violate Section 7.[6] *See, e.g.*, *Fricke-Parks Press, Inc. v. Fang*, 149 F. Supp. 2d 1175, 1185 (N.D. Cal. 2001) ("the Ninth Circuit has recognized that sellers may be joined in a Section 7 action against a purchaser when the plaintiff seeks rescission or divestiture and the court needs jurisdiction over both the buying and selling company to fashion such equitable relief") (citing *Coca-Cola Bottling Co.*, 575 F.2d at 230-31). Indeed, the Fourth Circuit recently upheld the equitable divestiture of an anticompetitive merger in a private action under the Clayton Act, 15 U.S.C. § 26. *See generally Steves & Sons*, ___ F.3d ___, No. 19-1397, slip op.

These holdings are in keeping with text and the purpose of the Clayton Act itself. Section 7 of the Clayton Act, 15 U.S.C. § 18, "prohibits the acquisition of stocks or assets if the effect of such acquisition 'may be substantially to less competition, or to tend to create a monopoly.' 15 U.S.C. § 18." *Dehoog v. Anheuser-Busch InBev, SA/NV*, No. 1:15-CV-02250-CL, 2016 WL 5853733 at *2 (D. Or. July

---

[6] DPPs concede that Section 7 money damages claims may only run against the acquiror. *See Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d. 838, 852 (N.D. Cal. 2004) ("'a Section 7 claim for monetary damages, as a matter of law, does not exist against the person or entity selling the assets but rather must be brought against the acquiring person or entity.'").

Case No. 3:20-cv-02345-WHO                              5
DIRECT PURCHASER PLAINTIFFS' OPPOSITION
TO JUUL LABS, INC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

22, 2016). "While Section 7 applies only to acquirers, courts do make an exception and join sellers 'when the plaintiff, . . . seeks rescission or divestiture and the Court needs jurisdiction over both the buying and selling company in order to fashion such equitable relief pursuant to 15 U.S.C. § 25.'" *Id.* at *6 (quoting *Arbitron Co. v. Tropicana Prod. Sales, Inc.*, No 91 Civ. 3697 (PKL), 1993 WL 138965, at *7 (S.D.N.Y. Apr. 28, 1993)); *see also Coca-Cola Bottling Co.*, 575 F.2d at 228 ("Congress recognized that on occasion third parties whose conduct is not specifically addressed by the Clayton Act would be so related to the anti-competitive effects at which the act was directed that their presence would be necessary in order to fashion complete relief."); *Addamax Corp. v. Open Software Found., Inc.*, 888 F. Supp. 274, 285 (D. Mass. 1995) (While "[i]t is true that the Clayton Act, by its own terms, applies only where there has been an acquisition of assets, stock, or other share capital," "courts have generally adopted a flexible approach in measuring the scope of this language" "[i]n keeping with the broad mandate of the antitrust laws.") (citations omitted). Section 7 applies not only to the whole acquisition of stocks or assets, but also to partial acquisitions. 15 U.S.C. § 18. Enforcement of Section 7 is not limited to governmental agencies, private parties can also enforce Section 7. 15 U.S.C. § 26; *Steves & Sons*, __ F.3d __, No. 19-1397, slip op. at 2.

DPPs allege in detail that the transaction between JLI and Altria substantially lessens competition. *See, e.g.*, ECF No. 230, Part IV.A.[7] JLI and Altria are horizontal competitors. Altria at first spent significant resources to acquire e-vapor products to augment its portfolio. CAC ¶ 49. Altria also developed a product, the MarkTen Elite, to directly compete with JLI's e-vapor product. *Id.*, ¶ 58. The growth of this product was a substantial goal of Altria, which sought to lead the e-vapor market sector. *Id.*, ¶ 60. JLI was a competitive rival and threatened to supplant or eclipse Altria. For a time, the companies competed. Then, instead of competing, JLI and Altria agreed to allocate the e-vapor market through a complex commercial transaction. In December 2018, JLI and Altria formally closed the Transaction, under which Altria purchased a 35% non-voting stake in JLI for $12.8 billion in cash. *Id.*, ¶ 92. The Transaction includes the Purchase Agreement, Relationship Agreement, Services

---

[7] The allegations of the complaint are discussed in detail in the DPPs' Opposition to Defendant Altria's Motion to Dismiss, incorporated herein by reference.

Agreement, Intellectual Property License Agreement, and Voting Agreement, all of which were executed in connection with the closing. *Id.* As part of the anticompetive scheme, Altria wound down its existing e-vapor business including withdrawing the MarkTen from the market and Altria agreed not to compete with JLI. *Id.*, ¶ 89. An agreement between horizontal competitors where one withdraws from the market is a classic horizontal market division agreement, a type of agreement that so restrains competition as to be considered a *per se* affront to the antitrust laws. *See United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972); *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990); *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 844 (9th Cir. 1996). By entering into the unlawful agreement, JLI removed Altria, one of its largest horizontal competitors from the e-vapor market. By any measure, the transaction substantially lessened competition in the e-vapor market.

The anticompetitive Transaction has already been consummated. "Section 7 of the Clayton Act was intended to arrest anticompetitive acquisitions before they work their evil, which may be at or any time after the acquisition." *Coca-Cola Bottling Co.*, 575 F.2d at 231. DPPs seek to enjoin the transaction to undo the anticompetitive effects that have resulted from and continue to flow from the transaction. In order to do so, Defendant JLI—a party to the anticompetitive transaction—must be present for the Court to fashion complete relief, i.e., the undoing of the unlawful transaction. *See id.* at 227 ("our review of the statutory scheme provided by § 7 and § 15 of the Clayton Act, the history of equity jurisdiction in the federal courts, and the treatment of similar claims in the lower courts convinces us that in appropriate cases rescission can be ordered"). Indeed, the absence of JLI would undercut and frustrate the operation of Section 7 of the Clayton Act and undermine the strong public policy upon which it is based.

## IV.   CONCLUSION

For the foregoing reasons, DPPs respectfully request that the Court deny Defendant JLI's motion to dismiss.

| | |
|---|---|
| Dated: March 5, 2021 | By:     /s/ *Joseph R. Saveri* <br> Joseph R. Saveri |

                                      Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Katharine L. Malone (State Bar No. 290884)
Christopher K.L. Young (State Bar No. 318371)
Kyle P. Quackenbush (State Bar No. 322401)
Anupama K. Reddy (State Bar No. 324873)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:   jsaveri@saverilawfirm.com
            swilliams@saverilawfirm.com
            kmalone@saverilawfirm.com
            cyoung@saverilawfirm.com
            kquackenbush@saverilawfirm.com
            areddy@saverilawfirm.com

*Interim Lead Counsel for Direct Purchaser Plaintiffs and the Proposed Class*