David I. Gelfand (*pro hac vice*)
Jeremy J. Calsyn (State Bar No. 205062)
Nowell D. Bamberger (*pro hac vice*)
dgelfand@cgsh.com
jcalsyn@cgsh.com
nbamberger@cgsh.com
**Cleary Gottlieb Steen & Hamilton LLP**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999

Attorneys for Defendant
Juul Labs, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE JUUL LABS, INC. ANTITRUST LITIGATION**<br><br>This document relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | Case No. 3:20-cv-02345-WHO<br><br>**JUUL LABS, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY STRIKE CLASS ALLEGATIONS**<br><br>Date: April 21, 2021<br>Time: 2:00 P.M. PT<br>Courtroom: 2<br>Before: Hon. William H. Orrick |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................2

    A. Each Plaintiff Affirmatively Agreed To JLI's Terms And Conditions, Including The Arbitration Clause And Class Action Waiver Provisions. ...............................................................................................2

        1. Plaintiff Martinez Agreed To Arbitrate When He Accessed The JLI Website On August 26, 2018, July 31, 2019, February 27, 2019, And March 13, 2020. ..................................................................2

        2. Plaintiffs Flannery And McGee Agreed To Arbitrate When They Accessed The JLI Website On February 26, 2019 And July 19, 2019, Respectively. ............................................................11

        3. The JLI Website Sufficiently Advised Plaintiffs That By Clicking The Checkbox They Were Agreeing To The Terms and Conditions. ...........................................................................................5

    B. JLI's Arbitration Clause Is Not Unconscionable. ..................................9

        1. The Terms And Conditions Are Not Procedurally Unconscionable. .................................................................................9

        2. The Terms And Conditions Are Not Substantively Unconscionable. ...............................................................................11

    C. The Terms And Conditions Do Not Function As An Unenforceable Prospective Waiver Of Statutory Rights ...............................................13

    D. Plaintiffs Do Not Dispute That Their Class Allegations Should Be Struck ......................................................................................................14

    E. Plaintiffs' Claims Against Individual Directors Of JLI Are Subject To The Agreement To Arbitrate .................................................................14

III. CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Shutterfly, Inc.*,
   2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ................................................... 6

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*,
   622 F.Supp.2d 825 (N.D. Cal. 2007) ........................................................... 14

*Applebaum v. Lyft, Inc.*,
   263 F.Supp.3d 454 (S.D.N.Y. 2017) ........................................................... 6-7

*Armendariz v. Found. Health Psychcare Servs. Inc.*,
   24 Cal.4th 83 (2000) ............................................................................ 9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ....................................................................... 9, 11-12

*Baltazar v. Forever 21, Inc.*,
   62 Cal.4th 1237 (2016) ......................................................................... 11

*Brice v. Plain Green, LLC*,
   372 F.Supp.3d 955 (N.D. Cal. 2019) ............................................................. 13

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) ............................................................................ 12

*Colgate v. JUUL Labs, Inc.*,
   402 F.Supp.3d 728 (N.D. Cal. 2019) ...................................................... 1-2, 5, 7

*Cullinane v. Uber Techs., Inc.*,
   893 F.3d 53 (1st Cir. 2018) ..................................................................... 8

*DiCarlo v. MoneyLion, Inc.*,
   988 F.3d 1148 (9th Cir. 2021) ................................................................. 14

*Dillon v. BMO Harris Bank, N.A.*,
   856 F.3d 330 (4th Cir. 2017) .................................................................. 14

*Dohrmann v. Intuit, Inc.*,
 823 F.App'x 482 (9th Cir. 2020) .................................................................................6

*Ekin v. Amazon Servs., LLC*,
 84 F.Supp.3d 1172 (W.D. Wash. 2014) ......................................................................12

*Holl v. United Parcel Serv., Inc.*,
 2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) ............................................................5

*In re Rains*,
 428 F.3d 893 (9th Cir. 2005) ......................................................................................10

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*,
 893 F.Supp.2d 1058 (D. Nev. 2012) ...........................................................................12

*Kim v. Tinder, Inc.*,
 2018 WL 6694923 (C.D. Cal. July 12, 2018) ............................................................3-4

*Lee v. Ticketmaster LLC*,
 817 F.App'x 393 (9th Cir. 2020) ..................................................................................8

*Long v. Provide Commerce, Inc.*,
 245. Cal.App.4th 855 (2016) ........................................................................................8

*McGill v. Citibank, N.A.*,
 2 Cal.5th 945 (2017) ...................................................................................................14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
 473 U.S. 614 (1985) ....................................................................................................14

*Norcia v. Samsung Telecomms. Am., LLC*,
 845 F.3d 1279 (9th Cir. 2017) ..................................................................................5, 8

*Peter v. DoorDash, Inc.*,
 445 F.Supp.3d 580 (N.D. Cal. 2020) ............................................................................6

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
 55 Cal.4th 223 (2012) ...................................................................................................9

*Serafin v. Balco Props. Ltd., LLC*,
 235 Cal.App.4th 165 (2015) .......................................................................................10

*Sgouros v. TransUnion Corp.*,
  817 F.3d 1029 (7th Cir. 2016) ................................................................. 6-7

*Snow v. Eventbrite Inc.*,
  2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) ..................................................... 4

*Swift v. Zynga Game Network, Inc.*,
  805 F.Supp.2d 904 (N.D. Cal. 2011) ............................................................. 7

*Tompkins v. 23andMe, Inc.*,
  2014 WL 2903752 (N.D. Cal. June 25, 2014) *aff'd* 840 F.3d 1016 (9th
  Cir. 2016) ..................................................................................... 7

**Federal Statutes**

9 U.S.C. § 3 ............................................................................... 1-2, 11-12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

In the Direct Purchaser Plaintiffs' Opposition To Defendant Juul Labs, Inc.'s Motion to Compel Arbitration or Alternatively Strike Class Allegations, ECF No. 229 ("Opposition" or "Opp."), Plaintiffs (a) do not contest that JLI's website was at all relevant times governed by Terms and Conditions that included an arbitration clause, (b) do not contest that the claims they assert in this case are within the scope of that arbitration agreement, and (c) do not respond at all to JLI's request that their class allegations be struck based on a valid class action waiver clause. Instead, Plaintiffs ask to be excused from arbitration by attempting to raise some doubt about whether they really agreed to the arbitration agreements in question and, failing that, by pointing to a well-trod litany of policy-based objections to being compelled to arbitrate consumer claims virtually all of which the Supreme Court and lower federal courts have outright rejected.

The record is clear that Plaintiffs agreed to arbitrate the claims at issue in this case. The arbitration clause was part of JLI's website terms and conditions throughout the relevant period, and as JLI has shown, Plaintiffs overtly manifested their intent to be bound by those terms by "clicking" a box and agreeing as much. Plaintiffs try to rely on this Court's decision in *Colgate v. JUUL Labs, Inc.*, 402 F.Supp.3d 728, 762 (N.D. Cal. 2019), finding aspects of JLI's *previous* website insufficient to evidence consent to arbitrate. But by the time *these* Plaintiffs logged in to use JLI's website, JLI had addressed the very issues that the Court highlighted in *Colgate*. Nor is it relevant whether Plaintiffs now recall having agreed to arbitrate their claims; Plaintiffs are bound by the terms they agreed to, not just those they now claim to remember.

Plaintiffs' policy arguments are equally infirm. The Supreme Court has squarely held that arbitration agreements in consumer contracts are to be enforced under the Federal Arbitration Act ("FAA"), and the obligation of courts to give effect to such agreements does not exist on a sliding scale based on the monetary value of their claims. Plaintiffs' attempt to nitpick provisions of JLI's Terms and Conditions unrelated to the arbitration provision, arguing that various terms are procedurally or substantively unconscionable, besides being wrong is also beside the point: the inquiry at this stage is whether Plaintiffs have agreed to arbitrate their claims; the substance of their

claims is, according to the agreement to arbitrate, to be decided by the arbitrator in the first instance.

Plaintiffs have identified no reason that their claims should not be referred to arbitration, and the Court accordingly should grant JLI's Motion pursuant to 9 U.S.C. § 3. Failing that, as Plaintiffs apparently do not contest, the Court should strike Plaintiffs' class allegations on the basis of their waiver agreement.

## II. ARGUMENT

### A. Each Plaintiff Affirmatively Agreed To JLI's Terms And Conditions, Including The Arbitration Clause And Class Action Waiver Provisions.

A principle line of Plaintiffs' argument is to seek to cast doubt on whether they, in fact, agreed to the arbitration provisions of JLI's Terms and Conditions. While they "throw the kitchen sink" at this exercise, their efforts fundamentally fail to rebut JLI's showing that Plaintiffs affirmatively agreed to arbitration and waived their right to file a class action.

1. <u>Plaintiff Martinez Agreed To Arbitrate When He Accessed The JLI Website On August 26, 2018, July 31, 2019, February 27, 2019, And March 13, 2020.</u>

The only Plaintiff who disputes JLI's showing that he was required to click a "checkbox" acknowledging the Terms and Conditions when he signed up for an account is Plaintiff Martinez. Martinez suggests that – perhaps – a checkbox was not in place when he created his account, and points to a declaration JLI submitted in the *Colgate* case annexing an August 4, 2018 version of JLI's website, and asserts that "he does not recall seeing or clicking a clickbox."

Martinez's attempt to rely on the earlier August 4, 2018 version of the website, and his lengthy argument that JLI is collaterally estopped from denying the declaration submitted in the *Colgate* litigation, is irrelevant. Opp. at 12-14. JLI does not dispute that its website was changed on August 9, 2018 to include the checkbox requirement. But Martinez signed up for his account on August 26, 2018, and he cannot deny having clicked the checkbox. Motion to Compel Arbitration or Alternatively Strike Class Allegations ("Motion" or "Mot."), ECF No. 210 at 2.

There is no question – as Martinez suggests – as to what he saw on the JLI website when he created an account on August 26. JLI's software engineers use an industry-standard product called GitHub, which maintains historical records of the JLI website, including changes to the website's html code. As JLI's Senior Director of Product, Identity Verification, & Ecommerce,

Eadon Jacobs, explains in his Second Declaration, changes to the website's html code require the creation of a Pull Request explaining the changes that were made. Mr. Jacobs has annexed a printout of the Pull Request from August 9, 2018, titled "Sign Up checkbox requirement," which confirms that the html code of the JLI website was modified on August 9, 2018 to require users signing up from the United States to click a checkbox agreeing to the Terms and Conditions. *See* Declaration of Eadon Jacobs in Support of Reply in Support of Motion to Compel Arbitration ("Second Jacobs Declaration") at 2-3. There is no question that, after August 9, 2018, users could not create an account on JLI's website without clicking the checkbox. *Id.*

All Plaintiffs, including Martinez, suggest that they somehow cannot be bound by the arbitration agreement because they have been unable to find archived versions of those screens as they existed on the exact days plaintiffs accessed JLI's website on a third party website, the "Wayback Machine." *See, e.g.*, Opp. at 8. But that is not the standard. Where possible, JLI's Motion relied on versions of the JLI website sourced from public sources in the interests of transparency, and precisely because that would make it easier for Plaintiffs to verify the accuracy of JLI's descriptions of its website. But the fact that a third party happened not to capture JLI's website on the precise days Plaintiffs accessed it is not controlling of what they agreed to. JLI has submitted competent, sworn evidence based on a review of business records kept in the ordinary course of business as well as the Wayback Machine archives. Particularly in the absence of any contrary evidence from Plaintiffs, or any instance in which Plaintiffs can show that the evidence submitted by JLI is inaccurate, that is more than sufficient to carry JLI's burden of showing that Plaintiffs agreed to arbitrate. *See, e.g.*, *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (enforcing arbitration agreement where "Tinder provided a declaration with documentary exhibits establishing that . . . Plaintiff logged in to her Tinder account through a login screen on her phone which stated that tapping the Log In button would constitute consent to the TOU (and thus the TOU's arbitration agreement.)"). Indeed, Plaintiffs themselves point to multiple iterations of the website that post-date August 9, 2018; they all confirm that a checkbox was required to create an account on the website. *See* Declaration of Kyle P. Quackenbush, ECF No. 229-1, at ¶¶ 7 (Sept. 3, 2018), 16 (Dec. 23, 2018), 17 (May 2, 2019), 19 (July 4, 2019).

Plaintiffs' citation to this Court's decision in *Snow v. Eventbrite Inc.*, 2020 WL 6135990 (N.D. Cal. Oct. 19, 2020), only further illustrates the sufficiency of the evidence submitted by JLI. In *Eventbrite*, the Court observed that the defendant relied on "exemplary" images of its website and "does not state the date when the website first adopted its present appearance," "does not say … which of the two [website] images (if either) each plaintiff would have encountered," and "does not simply show the sign-in wrap agreements as they existed on the dates of the plaintiffs' sign ups and purchases." *Id.* at *5-6. JLI has done all of those things. JLI's Motion is supported by a detailed recitation of exactly what its website looked like on each of the dates when Plaintiffs (including Martinez) signed up for their accounts and subsequently accessed it. Mot. at 3-6. The Motion acknowledges an instance when it is possible Plaintiff Martinez might have seen one of two different versions of the website, and presents both of them. *Id*. at 5-6. There is no ambiguity about what Plaintiffs agreed to, and JLI is not asking the Court to rely on "exemplars."

Martinez does not dispute the evidence JLI submitted regarding the appearance of its website on the subsequent dates that he logged in to access it, July 31, 2019, February 27, 2019, and March 13, 2020, including the presentation of the Terms and Conditions on the website on those days. In any event, Martinez had already expressly agreed to arbitrate his claims on August 26, 2018.

    2.    <u>Plaintiffs Flannery And McGee Agreed To Arbitrate When They Accessed The JLI Website On February 26, 2019 And July 19, 2019, Respectively.</u>

Plaintiffs Flannery and McGee do not dispute that, to create their accounts on the JLI website, they were to click a checkbox next to the statement "By registering with JUUL Labs, Inc., you agree to our <u>Terms and Conditions</u> and <u>Privacy Policy</u>." Opp. at 15-18. Printouts of the screens they accessed were submitted with JLI's Motion. Mot. at 2-5. Plaintiffs fail to offer any basis for doubting that the images JLI submitted supported by a sworn declaration from a responsible employee are inaccurate. *See Kim*, 2018 WL 6694923, at *2. Even more confirmation is provided here, where Plaintiffs are able to verify from the WayBack Machine archive that the "checkbox" requirement was in place throughout the entire relevant period. *See* Supra at 3. Mr. Jacobs's Second Declaration further explains that Mr. Jacobs reviewed JLI's archived html code, which confirms

that critical requirement – which evidences Plaintiffs' manifestation of intent to be bound to the Terms and Conditions – has been present at all times since August 9, 2018, including on the specific days Plaintiffs Flannery and McGee created their accounts. Second Jacobs Declaration at 3; *id.* at Exhibits 14 and 15.

### 3. The JLI Website Sufficiently Advised Plaintiffs That By Clicking The Checkbox They Were Agreeing To The Terms and Conditions.

Plaintiffs' next argument is to simply reject the weight of authority finding that a plaintiff who must "click" to agree to internet terms and conditions, and who does so, is bound by the terms of such "clickwrap" agreements. Clicking a checkbox to acknowledge agreement to terms, accompanied with hyperlinks to the text of terms, constitutes legal acceptance of those terms. *See* Mot. at 10-14 (citing numerous cases). This is so because the user is required to take an affirmative step (clicking the checkbox) that has no purpose whatsoever besides manifesting acceptance of the contractual terms. *See* Mot. at 10-11; *see also Holl v. United Parcel Serv., Inc.*, 2017 WL 11520143, at *5 (N.D. Cal. Sept. 18, 2017) (compelling arbitration where enrollment "requires clicking a checkbox" to assent to terms including an arbitration agreement). As this Court recognized in *Colgate*, the "controlling question" in assessing whether a party has accepted the terms of an offer is "the outward manifestation or expression of assent." *Colgate*, 402 F.Supp.3d at 762–63. As with any issue of contract acceptance, the relevant question is not one of whether or not the offeree knew each individual term of the contract, but rather whether "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." *Id.*; *see also Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (similar).

Eager to avoid this reality, Plaintiffs skip right past the fact that they affirmatively clicked a checkbox and argue instead about whether or not the *notice* of JLI's website Terms and Conditions was sufficiently conspicuous to place them on notice. Opp. at 14-18. But their argument largely misses the point. In "browsewrap" cases or those involving a multi-purpose button (e.g., "by signing in you agree"), the sufficiency of notice is important because the court must *infer* the plaintiffs' agreement by the fact that a reference to the contractual terms was present on the website.

If JLI were relying merely on notice of its Terms and Conditions on its website, the post-*Colgate* version of the website at issue here would be sufficient, as established in scores of cases cited in JLI' Motion. Mot. at 12-14; *see also Dohrmann v. Intuit, Inc.*, 823 F.App'x 482, 484 (9th Cir. 2020) (finding sufficient – even in the absence of a checkbox – a statement "By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement" where the operative terms were "hyperlinks."); *Peter v. DoorDash, Inc.*, 445 F.Supp.3d 580, 587 (N.D. Cal. 2020) (similar); *Allen v. Shutterfly, Inc.*, 2020 WL 5517172, at *1–2 (N.D. Cal. Sept. 14, 2020) (similar).

But JLI is not relying on mere notice, and there is no need for the court to infer anything: Plaintiffs' attention was specifically drawn to the notice by the requirement that they "click" the checkbox to manifest agreement to those terms. Mot. at 12. The checkbox was next to language that in clear, unambiguous terms, explained what its single purpose was: "By registering with JUUL Labs, Inc., you agree to our Terms and Conditions and Privacy Policy." When Plaintiffs clicked the box, they manifested their intent to agree to those terms, and they are bound by them.

JLI's Motion cites numerous cases from this Circuit and around the country in which similar login screens have been held to give rise to an enforceable contract. Mot. at 10-14. Plaintiffs effectively ignore these cases. Opp. at 14-18. Instead, they cite to a small number of cases involving different website configurations that are very different from JLI's. Plaintiffs' best case is *Applebaum v. Lyft, Inc.*, 263 F.Supp.3d 454 (S.D.N.Y. 2017). But *Lyft* is very different from this case. There, the plaintiff was confronted with a box adjacent to the words "I agree to Lyft's Terms of Service," but that box was presented part-way through the sign-up process on a mobile device screen that was labeled in bold "**Add Phone Number**." *Id.* at 467. Based on a review of the screen in that case, the Court held that it "was misleading," because "[t]he entire screen was structured as part of a process to verify a phone number," and "[a] reasonable consumer would have thought that the consumer had agreed to be contacted by Lyft[.]" *Id.*

Plaintiffs' only other case involving a "click"-style agreement, *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1032 (7th Cir. 2016), Opp. at 18, stands for the same proposition. In that case, the problem was not the use of a click-acknowledgement, but rather the text that accompanied

it – which the court held "actively misleads the customer." *Id.* at 1035. Specifically, on TransUnion's website "[t]he block of bold text below the scroll box told the user that clicking on the box constituted his authorization for TransUnion to obtain his personal information. It says nothing about contractual terms. No reasonable person would think that hidden within that disclosure was also the message that the same click constituted acceptance of the Service Agreement." *Id.*

JLI's Sign Up screens are very different from those in *Lyft* and *Sgouros*. Agreement to the Terms and Conditions and Privacy Policy is a stand-alone requirement to even access the sign-up process, and it is the only such requirement. Nothing on the Sign Up screens of the JLI website suggests that the checkbox has any ulterior purpose besides being an acknowledgment of the Terms and Conditions on which JLI does business. And there is no heading or other misleading information presented that might lead a consumer to believe that anything other than JLI's Terms and Conditions are being agreed to. *See* Mot. at 3-5. The checkbox has one clear and unambiguous purpose, and that is to acknowledge agreement to the "Terms and Conditions and Privacy Policy," the former of which is at issue here.

Plaintiffs next argue that they did not *in fact* read the Terms and Conditions and that JLI's website did not "require" them to "click on the Terms and Conditions, scroll through the Terms and Conditions, review the Terms and Conditions, or check a box at the end of the Terms and Conditions before creating an account." Opp. at 16-17. But this is legally irrelevant; basic contract principles – equally applicable to internet contracts – establish that a party is bound to a contract whether he or she reads the contract or not. *Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904, 912 (N.D. Cal. 2011) (acknowledging "recent caselaw holding that clickwrap presentations providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient."); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014) ("The fact that the TOS were hyperlinked and not presented on the same screen does not mean that customers lacked adequate notice.") *aff'd* 840 F.3d 1016 (9th Cir. 2016); *Colgate*, 402 F.Supp.3d at 762-63 (an offeree "knowing that an offer has been made to him but not knowing all the terms,

may be held to have accepted … whatever terms the offer contains"); *see also Norcia*, 845 F.3d at 1284  ("A party who is bound by a contract is bound by all its terms, whether or not the party was aware of them."); *Lee v. Ticketmaster LLC*, 817 F.App'x 393, 394 (9th Cir. 2020) (a party "'cannot avoid the terms of [the] contract on the ground that he ... failed to read it before signing,'"). Plaintiffs were unambiguously alerted that by checking the box on the JLI Sign Up page they were agreeing to terms, and those terms were literally a click away if they wanted to review them.

Plaintiffs' arguments that the text was the wrong color, the hyperlink was the wrong font, or that other text on the website was larger or bolder are irrelevant given that, again, Plaintiffs were required to acknowledge and expressly agree to the Terms and Conditions in order to use JLI's website. Plaintiffs' cases concern pure-notice or "browsewrap" agreements, where the user is <u>not</u> required to manifest agreement through any sort of affirmative act, and where the website owner is accordingly entirely relying on an inference that the user happened to notice the terms. For example, in *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62 (1st Cir. 2018), *see* Opp. at 16, the First Circuit "note[d] at the outset that Uber chose not to use a common method of conspicuously informing users of the existence and location of terms and conditions: requiring users to click a box stating that they agree to a set of terms, often provided by hyperlink, before continuing to the next screen." Similarly, in *Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855, 862 (2016), also cited on page 16 of the Opposition, the court evaluated a browsewrap agreement with terms hyperlinked on the bottom of a page and noted that "unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly . . . [a] party instead gives his assent simply by using the Web site." In both cases, the implication is clear: if the plaintiffs had manifested assent to terms by clicking a checkbox next to a sentence saying they agreed to terms, the court would have enforced the terms.

Finally, Plaintiffs make a series of bare assertions that they should not be bound by the Terms and Conditions because, among other things, they "do[] not recall seeing any disclosure about JLI's Terms and Conditions," would "not have understood" that highlighted text on a webpage is a hyperlink, or that the disclosure may have been "hidden under [Plaintiff's] keyboard as she typed her email address and password." Opp. at 16-17. These arguments are specious at best.

First, the reference to the Terms and Conditions is on the same line as the checkbox acknowledging it; to view and click the checkbox, one had to also view the text describing it. ECF No. 210 at 3-5. Second, Plaintiffs managed to access JLI's website, navigate to the Log In page, click through the page and subsequent screens, and complete an e-commerce transaction that required Plaintiffs to navigate an extensive age-verification process. They clearly can be charged with understanding what an internet hyperlink is. Finally, their subjective recollection or lack of recollection of the JLI website or its terms is irrelevant given the objective evidence JLI has submitted proving that Plaintiffs did, in fact, agree to the Terms and Conditions.

### B. JLI's Arbitration Clause Is Not Unconscionable.

Arbitration agreements in consumer contracts are routinely enforced. Nonetheless, Plaintiffs stage an elaborate exposition that the run-of-the-mill arbitration agreement in JLI's Terms and Conditions is somehow unconscionable. Their effort fails. In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338-39 (2011), the U.S. Supreme Court rejected the argument that a consumer arbitration agreement "was unconscionable [under California law] because AT&T had not shown that bilateral arbitration adequately substituted for the deterrent effects of class actions," holding instead that arbitration should be held "on equal footing with other contracts and enforce[d] … according to their terms." Plaintiffs' arguments fly in the face of controlling precedent.

"[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability," *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 247 (2012), and to do so under California law "[b]oth procedural and substantive unconscionability must be shown." *Armendariz v. Found. Health Psychcare Servs. Inc.*, 24 Cal.4th 83, 114, (2000).

    1. <u>The Terms And Conditions Are Not Procedurally Unconscionable.</u>

Plaintiffs cite six reasons to argue that the agreement was procedurally unconscionable. Opp. at 19-20. None are sufficient, alone or in combination, to support a finding of procedural accountability by itself.

*"Plaintiffs were addicted to nicotine . . . and are locked-in to JLI's ENDS products."* Opp. at 19. Plaintiffs cite no authority for their sweeping argument that being "addicted to nicotine" can

interfere with an individuals' legal ability to contract. It would be an unprecedented rule of law to hold that smokers or vapers are, as a matter of law, unable to sign legally-enforceable contracts, and that is not the law. *See In re Rains*, 428 F.3d 893, 901 (9th Cir. 2005) (finding valid agreement where party claiming incapacity "understood the nature, purpose and effect of his actions"). Moreover, Plaintiffs say nothing about their respective mental states at the time that they accessed the JLI website, and therefore offer no evidence that their respective mental conditions were compromised such that they were unable to contract. Indeed, when they shopped on the JLI website Plaintiffs were ordering product to be delivered days later; there is no reason to believe they were afflicted by fits of withdrawal-induced hysteria.

*"Plaintiffs had no ability or opportunity to bargain over the Terms and Conditions."* Opp. at 19. Courts applying California law routinely enforce arbitration agreements that are presented as take-it-or-leave-it terms of a contract. *See, e.g.*, *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 179 (2015) ("Courts have consistently held that the requirement to enter into an arbitration agreement is not a bar to its enforcement"). The case against enforcement in this context is especially weak because if Plaintiffs did not want to accept the terms on JLI's website they had a readily available alternative – purchasing JLI products, or a competitor's products, from a "brick and mortar" store. *See, e.g.,* Declaration of Anthony Martinez, ECF No. 229-15, at ¶ 2. Moreover, Plaintiffs' claim that they "had no ability" to bargain over the Terms and Conditions appears to be nothing more than an assumption – they do not claim to have attempted to contact JLI about negotiating the terms.

*"Plaintiffs were not required to read the Terms and Conditions in general."* Opp. at 20. This argument merely rehashes Plaintiffs' objections to the formatting of the JLI website, and it fails for the reasons discussed above. Supra at 2-9.

*"Plaintiffs were not provided an executed copy of the Terms and Conditions."* Opp. at 20. This argument, too, is both counterfactual and defeated by the cases cited above – none of which Plaintiffs' arguments address. Plaintiffs *were* provided the Terms and Conditions; they were on the website, clearly hyperlinked next to a checkbox that Plaintiffs checked, and Plaintiffs who returned to the website were reminded of the Terms and Conditions each time they returned. *See* ECF No.

210 at 2, 6. Plaintiffs do not challenge that the Terms and Conditions submitted by JLI, which they can independently verify from a public source and which were substantively identical in their requirement of arbitration throughout the relevant period, are the terms to which they assented. *See* Opp. at 10. Out of all of the cases enforcing internet terms and conditions, Plaintiffs cite to no case – and JLI is aware of none – in which a court has held that failure to provide the plaintiff with a copy of the "executed" terms prevents those terms from being effective.

*"Plaintiffs were not provided a copy of JAMS's Optional Expedited Arbitration Procedure."* Opp. at 20. This argument is defeated by controlling law; it is not procedurally unconscionable to omit a copy of an arbitrator's procedures so long as the procedures themselves are not substantively unconscionable. *Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1246 (2016). Plaintiffs acknowledge as much, but argue – without substantiation – that the JAMS Optional Expedited Arbitration Procedures are unconscionable. It is their burden to explain how, and they fail to do so. It is not unreasonable for a party to agree to resolve a dispute through procedures that afford limited discovery; indeed, that is entirely consistent with reasonable goals of arbitration to reduce cost and provide an expedited means for resolving a dispute. *See Concepcion*, 563 U.S. at 343-344 (observing that rules requiring judicially monitored discovery conflict with, and thus are preempted by, the FAA). In any event, the JAMS Procedures are widely used and Plaintiffs cite no authority for the proposition that they are unconscionable.

### 2. The Terms And Conditions Are Not Substantively Unconscionable.

Plaintiffs' arguments that JLI's Terms and Conditions are substantively unconscionable are equally unavailing, and essentially amount to discredited broad-brush attacks on arbitration agreements generally. Plaintiffs' reliance on an 18th century English decision as their principal authority, Opp'n at 20, is undercut by more recent authority from the U.S. Supreme Court enforcing arbitration agreements in consumer cases, even when the value of the claims is small.

Plaintiffs protest that the Court's enforcement of the arbitration clause could lead to JLI escaping "liability for violating federal antitrust law, 'as only a lunatic or a fanatic sues for $30.'" Opp. at 1 (citation omitted). But that is precisely the argument made by the dissent in *Concepcion*. *See* 563 U.S. at 365 (Breyer, J., dissenting). The holding of *Concepcion* expressly rejects that

argument, finding that agreements to arbitrate consumer claims must be enforced. 563 U.S. at 351 ("The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. … But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.").

Plaintiffs also raise a variety of arguments about terms or features of the JLI Terms and Conditions separate and apart from the arbitration clause, and argue that those make the contract unconscionable. Opp. at 20-21. Under controlling law, an arbitration agreement is "severable from the remainder of the contract" and unaffected by other contractual terms. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) ("[B]ecause respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract."). Thus, even if the other terms of the JLI Terms and Conditions were unenforceable, that would not render the arbitration clause void; rather, the enforceability of the balance of the contract "should be considered by an arbitrator, not a court." *Id.*

In any event, Plaintiffs' attack on the substance of the JLI Terms and Conditions is meritless. Plaintiffs argue that the agreement was illusory because *"*JLI retained the unilateral, unrestricted right to 'modify, limit, change, discontinue, or replace' the Terms and Conditions, without notifying Plaintiffs." Opp. at 20. But that reservation merely allowed JLI to change its website terms in the future, it did not purport to bind Plaintiffs to terms they had not yet seen. *See* ECF No. 210-11 at 1. Plaintiffs' reliance on *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F.Supp.2d 1058, 1066 (D. Nev. 2012), is misplaced. In *Zappos* the defendant reserved the right to change the governing terms retroactively *after* the user had agreed to them. *Id.* at 1066 ("the Terms of Use binds consumers to arbitration while leaving Zappos free to litigate or arbitrate wherever it sees fit."). JLI is not now claiming a right to retroactively change the terms applicable to an earlier e-commerce transaction; to the contrary, it seeks to hold itself and Plaintiffs to the terms that existed at the time they accessed and used the website. Moreover, Plaintiffs were both informed of the Terms and Conditions when they logged in, and subsequently when they accessed the website again in the future. *Cf. Ekin v. Amazon Servs., LLC*, 84 F.Supp.3d 1172, 1175 n.6, 1176 (W.D. Wash. 2014) (enforcing similar arbitration agreement despite unilateral reservation of right

to change the contract terms and distinguishing *Zappos*, "which required absolutely no affirmative action on the part of the consumers.").

Plaintiffs otherwise argue that it was unconscionable to specify a place for arbitration, Opp'n at 20, but it is not unconscionable to specify a location for an arbitration, particularly where that location is the one (San Francisco) in which Plaintiffs have commenced this very litigation. Nor is it unconscionable to include in an arbitration provision a term that interim remedies – like certain injunctive relief – can be sought from a court, while the dispute itself must be submitted to an arbitrator. Opp'n at 21. That is, again, a common (even routine) term in an arbitration agreement. *See* Mari Tomunen, *Injunctive Relief Pending Arbitration*, Disp. Resol. J., 2017 ("A typical carve-out [from an arbitration agreement] is the right to seek injunctive relief from a court even when arbitration is pending.")

### C. The Terms And Conditions Do Not Function As An Unenforceable Prospective Waiver Of Statutory Rights

Plaintiffs also argue that the selection of California or Delaware governing law for the Terms and Conditions makes the entire contract, including the arbitration provision, unenforceable because it is "a prospective waiver of a party's right to pursue statutory remedies." Opp. at 22 (quoting *Brice v. Plain Green, LLC*, 372 F.Supp.3d 955, 965 (N.D. Cal. 2019)). Their argument appears to be that by selecting California or Delaware substantive law, JLI was forcing Plaintiffs to disclaim rights under the federal Sherman and Clayton acts, and they argue that is unenforceable.

Their argument misreads the Terms and Conditions and misunderstands how a choice of law provision works. Nothing in the Terms and Conditions disclaims federal statutory rights. Rather, the agreement – like virtually every other contract ever signed – merely selects state law to govern the contract itself. Nothing in that involves a forfeiture of claims under federal law; federal antitrust law applies, to the extent it is relevant, regardless of the state's law that is selected. The governing law of California and Delaware merely controls how the contract is interpreted and applied, it does not supplant federal rights. Federal law *is* the internal law in California and Delaware. In contrast, Plaintiffs cite cases involving provisions that disclaim the application of federal or state law in favor of either foreign law or the law of sovereign Indian tribes. *See Brice*,

372 F.Supp.3d at 966 (involving loan agreement "governed by tribal law"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 617 (1985) (involving agreement to settle disputes "by arbitration in Japan in accordance with the rules and regulations of the Japan Commercial Arbitration Association"); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 332 (4th Cir. 2017) ("choice of law provisions required the application of Otoe-Missouria tribal law and disclaimed the application of state or federal law").

Finally, Plaintiffs argue that the arbitration agreement is unenforceable because they are seeking "public injunctive relief" which is unavailable in arbitration, citing *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 956 (2017). Were it ever viable, that argument is defeated by the Ninth Circuit's recent holding in *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1158 (9th Cir. 2021), that "public injunctive relief is available [] in arbitration."

### D. Plaintiffs Do Not Dispute That Their Class Allegations Should Be Struck

In addition to moving to compel arbitration, JLI also moved – alternatively – to strike Plaintiffs' class action allegations on the basis of their agreement to waive the right to bring class action claims in the Terms and Conditions. Mot. at 18-19. Plaintiffs do not respond to that aspect of JLI's Motion at all, and therefore concede the point. Were the Court to decline to refer this case to arbitration, it should nonetheless strike Plaintiffs' class allegations for the reasons set out in JLI's Motion. Mot. at 18-19.

### E. Plaintiffs' Claims Against Individual Directors Of JLI Are Subject To The Agreement To Arbitrate

Plaintiffs' argument that the arbitration agreement cannot be enforced under the agency principle as to Defendants Riaz Valani and Nick Pritzker relies entirely on the novel theory that because Valani and Pritzker are JLI shareholders and members of its board of directors, they cannot be considered "agents" of JLI when acting in their capacity as directors. Plaintiffs cite not a single case ever holding as much, and indeed, courts in this District have held exactly the opposite. *See, e.g., Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F.Supp.2d 825, 828, 839 (N.D. Cal. 2007) (enforcing arbitration clause as to individual directors "under agency principles"). The claims against Valani and Pritzker are baseless, but even if they were not, the claims could only

conceivably stem from actions Valani and Pritzker took as agents of JLI, such as attending meetings with Altria on behalf of JLI. *See* Mot. at 20.

### III. CONCLUSION

For the reasons set forth here and in JLI's Motion, the Court should grant the Motion to compel arbitration, or in the alternative, strike Plaintiffs' class action allegations.

DATED: March 31, 2021

                        Respectfully Submitted,

| CLEARY GOTTLIEB STEEN & HAMILTON LLP | KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C. |
|---|---|
| By:    */s/ David I. Gelfand*<br>         David I. Gelfand | By:    */s/ Michael J. Guzman*<br>         Michael J. Guzman |
| David I. Gelfand (admitted *pro hac vice*)<br>Jeremy Calsyn (State Bar No. 205062)<br>Nowell D. Bamberger (admitted *pro hac vice*)<br>2112 Pennsylvania Avenue, NW<br>Washington, D.C. 20037<br>Telephone: (202) 974-1500<br>Email: dgelfand@cgsh.com<br>        jcalsyn@cgsh.com<br>        nbamberger@cgsh.com | Mark C. Hansen (admitted *pro hac vice*)<br>Michael J. Guzman (admitted *pro hac vice*)<br>David L. Schwarz (CA Bar No. 206257)<br>1615 M Street, N.W. Suite 400<br>Washington, D.C. 20036<br>Telephone: (202) 326-7900<br>Email: mhansen@kellogghansen.com<br>        mguzman@kellogghansen.com<br>        dschwarz@kellogghansen.com |
| *Counsel for Defendants Juul Labs, Inc.* | *Counsel for Nicholas Pritzker and Riaz Valani* |