David I. Gelfand (*pro hac vice*)
Jeremy J. Calsyn (State Bar No. 205062)
Nowell D. Bamberger (*pro hac vice*)
dgelfand@cgsh.com
jcalsyn@cgsh.com
nbamberger@cgsh.com
**Cleary Gottlieb Steen & Hamilton LLP**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999

*Attorneys for Defendant*
*Juul Labs, Inc.*

Mark C. Hansen (admitted *pro hac vice*)
Michael J. Guzman (admitted *pro hac vice*)
David L. Schwarz (CA Bar No. 206257)
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com
**Kellogg Hansen Todd Figel & Frederick P.L.L.C.**
1615 M Street, N.W. Suite 400
Washington, D.C. 20036
Telephone:  (202) 326-7900

*Counsel for Nicholas Pritzker and Riaz Valani*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC. ANTITRUST LITIGATION | Case No. 3:20-CV-02345-WHO |
| | **Defendant Juul Labs, Inc.'s Notice of Motion and Motion to Compel Arbitration and Stay Litigation Or Alternatively Strike Class Allegations; Memorandum of Points and Authorities; [Proposed] Order** |
| This Document Relates to: **ALL DIRECT PURCHASER ACTIONS** | |
| | Judge:    Hon. William H. Orrick |
| | Date:      December 8, 2021 |
| | Time:      2:00 P.M. PT |
| | Ctrm.:    2 |

## <u>NOTICE OF MOTION AND MOTION</u>

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................. 3

    A.    The Court's Order In *In re JUUL* Establishes That Plaintiffs' Claims Are Subject To Arbitration If They Assented To JLI's Website Terms and Conditions ......................................................................................... 3

    B.    Burgher and Lana Accessed and Purchased Products From JLI's Website Between 2017 and 2021 ............................................................................. 4

    C.    Plaintiffs Agreed To The JLI Website Terms When They Made Purchases From JLI's Website In 2017 ...................................................................... 4

    D.    Lana Reaffirmed His Agreement To Arbitrate In March 2018 ............................... 5

    E.    Lana and Burgher Reaffirmed Their Agreements To Arbitrate In 2019 ................. 6

    F.    Burgher Reaffirmed His Agreement To Arbitrate In 2020 ..................................... 7

    G.    Lana and Burgher Reaffirmed Their Agreements To Arbitrate In 2021, Including *After* This Court's Decision Compelling Arbitration ............................. 8

    H.    The Arbitration Agreement Agreed To By Plaintiffs Was Materially Identical To The One The Court Has Already Enforced. ......................................... 9

III.   LEGAL STANDARD ...................................................................................... 12

IV.    ARGUMENT ................................................................................................... 12

    A.    Plaintiffs Agreed To Resolve This Dispute By Arbitration .................................. 12

    B.    Plaintiffs' Claims Are Within The Scope Of The Agreement To Arbitrate .......... 18

    C.    If The Court Declines To Compel Arbitration, Plaintiffs' Class Action Allegations Should Be Struck. ............................................................................. 22

    D.    Plaintiffs' Claims Against The Individual Defendants Should Be Compelled To Arbitration, As In *In re JUUL* ...................................................................... 23

V.     CONCLUSION ................................................................................................ 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Allen v. Shutterfly, Inc.*,
   No. 20 Civ. 02448, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020)............................ 15-16, 22

4

5

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ................................................................................................. 19

6

7

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
   No. CV 15–00153, 2015 WL 1266787 (C.D. Cal. Mar. 18, 2015) ........................................ 22

8

9

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
   622 F. Supp. 2d 825 (N.D. Cal. 2007) ................................................................. 23

10

11

*ASUS Comput. Int'l. v. InterDigital, Inc.*,
   No. 15 Civ. 01716, 2015 WL 5186462 (N.D. Cal. Sept. 4, 2015) ........................................ 21

12

13

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ................................................................. 19

14

15

*Bosinger v. Phillips Plastics Corp.*,
   57 F. Supp. 2d 986 (S.D. Cal. 1999) ..................................................................... 19

16

*Brown v. Madison Reed, Inc.*,
   No. 21 Civ. 01233, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ........................................ 15

17

18

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ............................................................................. 17

19

20

*Colgate v. JUUL Labs, Inc.*,
   402 F. Supp. 3d 728 (N.D. Cal. 2019) ................................................................. 2-3, 5, 13

21

22

*Davis v. Einstein Noah Rest. Grp., Inc.*,
   No. 19 Civ. 00771-JSW, 2019 WL 6835717 (N.D. Cal. Oct. 23, 2019) ................................ 21

23

24

*Dohrmann v. Intuit, Inc.*,
   823 F. App'x 482 (9th Cir. 2020) ......................................................................... 14

25

26

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012)................................................................... 17

27

*Greenberg v. Flynn*,
   No. CV 09-05273, 2010 WL 11596156 (C.D. Cal. Apr. 14, 2010)....................................... 18

28

*Gutierrez v. Jolt Delivery, LLC*,
    No. LACV 17-8380, 2018 WL 6118581 (C.D. Cal. Aug. 7, 2018)......................................22

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ...........................................................................................................20-21

*Holl v. United Parcel Serv., Inc.*,
    No. 16-CV-05856, 2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) ....................................13

*In re Am. Express Merchs.' Litig.*,
    667 F.3d 204, 209 (2d Cir. 2012)........................................................................................19

*In re Apple & AT & TM Antitrust Litig.*,
    826 F. Supp. 2d 1168 (N.D. Cal. 2011) ..............................................................................12

*In re Apple & AT & TM Antitrust Litig.*,
    826 F. Supp. 2d at 1174–79.................................................................................................19

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003).................................................................................19

*In re Evanston Nw. Corp. Antitrust Litig.*,
    No. 07-cv-04446, 2015 WL 13735423 (N.D. Ill. Sept. 4, 2015)..........................................19

*In re Facebook Biometric Info. Priv. Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..............................................................................13

*In re JUUL Labs Inc.*,
    No. 20-cv-02345-WHO, 2021 WL 3675208 (N.D.Cal. Aug. 19, 2021) ........................ passim

*In re Ring LLC Priv. Litig.*,
    No. 19 Civ. 10899, 2021 WL 2621197 (C.D. Cal. June 24, 2021).......................................14

*In re TFT-FLC (Flat Panel) Antitrust Litig.*,
    Nos. M 07–1827, C 10–5458, 2011 WL 5325589 (N.D. Cal. Sept. 19, 2011) .....................19

*Johnmohammadi v. Bloomingdale's, Inc.*,
    755 F.3d 1072 (9th Cir. 2014) ............................................................................................12

*KKE Architects, Inc. v. Diamond Ridge Dev. LLC*,
    No. CV 07-06866, 2008 WL 637603 (C.D. Cal. Mar. 3, 2008)...........................................18

*La Force v. GoSmith, Inc.*,
    No. 17-cv-05101, 2017 WL 9938681 (N.D. Cal. Dec. 12, 2017) ........................................13

*Lee v. Ticketmaster L.L.C.*,
  817 F. App'x 393 (9th Cir. 2020) ................................................................. 14-15, 17

*Letizia v. Prudential Bache Securities, Inc.*,
  802 F.2d 1185 (9th Cir. 1986) ................................................................................. 23

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
  363 F.3d 1010 (9th Cir. 2004) ................................................................................. 12

*Manning v. Boston Med. Ctr. Corp.*,
  725 F.3d 34 (1st Cir. 2013) ..................................................................................... 22

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
  89 Cal. App. 4th 1042, 107 Cal. Rptr. 2d 645 (2001)............................................. 17

*Mohamed v. Uber Tech., Inc.*,
  109 F. Supp. 3d 1185 (N.D. Cal. June 9, 2015).................................................... 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..................................................................................................... 12

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ........................................................................... 12, 14

*Norcia v. Samsung Telecomms. Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) ................................................................................. 17

*Oberstein, et al. v. Live Nation Ent., Inc., et al.*,
  No. Civ. 20-3888, 2021 WL 4772885, at *6 (C.D.Cal. Sept. 20, 2021)................... 16

*Peter v. DoorDash, Inc.*,
  445 F. Supp. 3d 580 (N.D. Cal. 2020) .................................................................... 16

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
  862 F.3d 981 (9th Cir. 2017) ................................................................................... 21

*Regan v. Pinger, Inc.*,
  No. 20 Civ. 02221, 2021 WL 706465 (N.D.Cal. Feb. 23, 2021) ........................... 16

*Romero v. Securus Techs., Inc.*,
  216 F. Supp. 3d 1078 (S.D. Cal. 2016) ................................................................... 22

*Sanders v. Apple, Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................... 22

*Simula Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ...................................................................... 18

*Snow v. Eventbrite, Inc.*,
   No. Civ. 03698, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) ........................... 15

*Syverson v. Int'l Bus. Mach. Corp.*,
   472 F.3d 1072 (9th Cir. 2007) ...................................................................... 13

*Tompkins v. 23andMe, Inc.*,
   2014 WL 2903752 (N.D. Cal. June 25, 2014) .................................................. 12

*Uber Techs., Inc.*,
   868 F.3d 66, 75 (2d Cir. 2017) ...................................................................... 17

**Statutes**

9 U.S.C. § 1 ........................................................................................... 12, 20

9 U.S.C. § 3 ............................................................................................. 1, 12

1

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on December 8, 2021, at 2:00 P.M., or as soon thereafter as this matter may be heard, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendants Juul Labs, Inc. ("JLI"), Nicholas Pritzker, and Riaz Valani will and hereby do move the Court for an order (a) compelling arbitration and dismissing or staying the litigation of claims brought by the Direct-Purchaser Plaintiffs in the Consolidated Class Action Complaint or, alternatively, (b) striking Plaintiffs' class action allegations.  JLI does not waive other Rule 12(b)(6) defenses to these or any related actions by not asserting such defenses in this Motion.

## ISSUE TO BE DECIDED

Whether the Direct Purchaser claims in the Amended Consolidated Class Action Complaint filed by plaintiffs Jonathan Burgher and Anthony Lana (ECF No. 276) must be submitted to arbitration and, alternatively, whether their class action allegations should be struck pursuant to provisions contained in Terms and Conditions on Juul Labs, Inc.'s website to which each plaintiff agreed.

## REQUEST FOR RELIEF

Juul Labs Inc. ("JLI"), Nicholas Pritzker, and Riaz Valani request that the Court compel Plaintiffs Jonathan Burgher and Anthony Lana to arbitrate their claims pursuant to 9 U.S.C. § 3.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants request that the Court compel arbitration of the amended complaint filed on September 20, 2021 by two new Direct Purchaser Plaintiffs, Jonathan Burgher and Anthony Lana ("Plaintiffs"), for largely the same reasons the Court previously compelled three earlier named plaintiffs to arbitrate their claims against JLI in this antitrust putative class action.  In an August 2021 decision, the Court found that three prior plaintiffs had manifested a clear agreement to arbitrate their claims when they checked a "click box" affirmatively assenting to JLI's terms and conditions while creating the accounts on JLI's website used to purchase the products at issue.  *See In re JUUL Labs Inc.*, No. 20-cv-02345-WHO, 2021 WL 3675208 (N.D.Cal. Aug. 19, 2021) ("*In*

*re JUUL"*).  The "clickbox"—added by JLI on August 9, 2018—cured what the Court had determined in an earlier case to be a deficiency in a prior (pre-August 2018) version of JLI's website, that is, a lack of a clear manifestation of agreement to arbitrate.  *See Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019).

In their amended complaint, Plaintiffs Burgher and Lana contend that they created their accounts on JLI's website prior to August 9, 2018 when JLI added the "clickbox" to its account creation page, and therefore, they are not subject to the Court's August 19, 2021 order.  But that does not mean they did not manifest a clear agreement to arbitrate their claims against JLI.  In fact, Burgher and Lana *did* affirmatively agree to arbitrate their claims—indeed, they did so multiple times.  In particular, both Plaintiffs first created their accounts on the JLI website and made purchases on various days in 2017.  At that time, the notice of JLI's website terms and conditions did not appear at all on the login page (as was the case in *Colgate*), but instead was presented on the website checkout page.  And when presented on that page, the website required a "clickbox" be affirmatively checked to manifest agreement, which this Court held in *In re JUUL* was an enforceable agreement to arbitrate.

But that is not all.  In addition to agreeing to arbitrate in 2017, Plaintiffs each re-affirmed that agreement in subsequent years—up to and including just weeks ago in 2021.  When Plaintiffs logged in to the JLI website in 2021, they were confronted with a clear and unambiguous notice that "By proceeding, you agree to our Terms and Conditions."  Reference to the terms and conditions was presented in a grey box, in contrasting-colored text clearly indicating that they were hyperlinks—precisely the sort of notice that the Court held was lacking in *Colgate* and that it recognized had been added in *In re JUUL*.  Each time Plaintiffs logged in during 2020 and 2021, both affirmatively clicked the login button and therefore clearly manifested their agreement to be bound by the terms.  The Ninth Circuit and virtually every district court to consider the issue has found agreements to arbitrate based on such "sign-in wrap" agreements to be enforceable.

Once the Court concludes that Lana and Burgher agreed to JLI's website terms and conditions, there is nothing left to decide.  *In re JUUL* already established that the arbitration agreement at issue encompass the claims asserted in this case (including those brought against the

-2-

Individual Defendants, JLI directors Nicholas Pritzker and Riaz Valani).   The Court likewise rejected arguments that the arbitration agreement was procedurally or substantively unconscionable, or an unenforceable prospective waiver of rights (among other arguments).   Those conclusions hold equally true for Lana and Burgher, whose allegations are identical and who are subject to materially identical website terms and conditions.

## II. STATEMENT OF FACTS

### A. The Court's Order In *In re JUUL* Establishes That Plaintiffs' Claims Are Subject To Arbitration If They Assented To JLI's Website Terms and Conditions

This is the third time this Court has been asked to construe whether claims by those who purchased products from JLI's website were required to be submitted to arbitration.   Most recently, the Court's decision in this case in August 2021 compelled three Direct Purchase Plaintiffs— Anthony Martinez, Jessica McGee and Mallory Flannery—to submit their claims to arbitration.   *In re JUUL,* 2021 WL 3675208 at *26.   The Court held that all three had agreed to arbitrate their claims when they signed up for accounts on JLI's website between August 2018 and July 2019, and were required to "affirmatively check a box ('clickbox') on each version of the 'Log In/Sign Up' page they were presented, establishing their assent to the hyperlinked Terms and Conditions that governed the terms of plaintiffs' access to and use of the site *and* their agreement to arbitrate claims and waive a right to pursue a class action."   *Id.* at *4; *see also id.* at *26 (granting motion).

The Court's decision in *In re JUUL* distinguished its decision in *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019), which construed an earlier version of JLI's website—one that was in place for a period prior to August 2018.   The Court found in *Colgate* that the version of the website considered there did not include any "clickbox" or other affirmative manifestation of assent, and that the format of JLI's website in place at the time was insufficient to give notice to the plaintiffs in that case that merely by using the website they were agreeing to the website terms and conditions.   *Id* at 762-66.   In *In re JUUL*, the Court found that "the addition of the affirmative assent clickbox, drawing attention to the text immediately following that contains the somewhat highlighted hyperlinked Terms and Conditions links, does change the analysis."   *In re JUUL*, 2021 WL 3675208 at *9.   The Court also considered that the version of JLI's website in place after August

2018 "also support[ed] a finding of constructive assent" in that it "was relatively clear and uncluttered" and that "after August 9, 2018, the Terms and Conditions and Privacy Policy hyperlinks *were* in a different shade of text and in a different font-style. And by 2019, the hyperlinks following the clickbox were underlined and for part of that period also italicized." *Id.* at *10.

In granting JLI's motion to compel arbitration with respect to the claims against Martinez, McGee and Flannery, the Court rejected a range of arguments made by them, including that the arbitration agreement was procedurally or substantively unconscionable, *id.* at *11-14, and that it was an unenforceable prospective waiver of rights, *id.* at *14. The Court also compelled the plaintiffs to arbitrate their claims against two JLI directors, Nicholas Pritzker and Riaz Valani. *Id.* at *15. The Court did, however, grant leave for the complaint to be amended to "substitute a named direct purchaser plaintiff who purchased directly from JLI prior to August 9, 2018 or who otherwise is not subject to JLI's Terms and Conditions for direct purchases on or after August 9, 2018." *Id.* at *26.

**B.**    **Burgher and Lana Accessed and Purchased Products From JLI's Website Between 2017 and 2021**

Jonathan Burgher and Anthony Lana are the substitute plaintiffs added to represent the direct purchaser class in the amended complaint filed on September 20, 2021. Both purchased products directly from JLI's website. Amended Consolidated Class Action Complaint ("Am. Compl."), ECF No. 276, ¶¶ 16-17. To do so, each accessed the JLI website, created an account, and signed into that account to verify their age and make their purchases. Declaration of Eadon Jacobs ("Jacobs Decl.") ¶ 3. The full transaction and history of each plaintiff is set out in the Jacobs Declaration. *Id.* Exs. 1-2.

**C.**    **Plaintiffs Agreed To The JLI Website Terms When They Made Purchases From JLI's Website In 2017**

JLI's e-commerce records confirm that Plaintiff Burgher and Plaintiff Lana created their JLI website accounts on www.juulvapor.com in 2017 and made purchases that same year. Specifically:

- Jonathan Burgher made purchases on November 21 and December 18, 2017, Jacobs Decl., Ex. 1;

- Anthony Lana made purchases on August 4, August 18, and September 19, 2017, *id.* Ex. 2.

-4-

Each of these purchases were made from the JLI website in operation at that time, www.juulvapor.com. *Id.* ¶¶ 5-6. That website featured a different format than JLI's current website or the website considered in *Colgate.* *Id.* Specifically, rather than requiring users to agree to the website terms and conditions at account creation or on the login screen, the 2017 "juulvapor" website referred to the website terms and conditions on the checkout screen. *Id.* ¶ 5. To complete a purchase transaction, users were required to check a box to affirm that they agreed to the terms and conditions. *Id.*

Burgher and Lana each agreed to those terms and conditions when they completed their purchases in 2017. And the terms and conditions in effect at the time included express and unambiguous language establishing their agreement to arbitrate "any claim, dispute, or controversy arising out of or in connection with or relating to these Terms, the breach or alleged breach thereof." *Id.*, Exs. 8-10. The terms and conditions were also clear that they governed not only the specific transaction then being concluded, but rather the user's "rights and obligations when using the Website and/or when purchasing any JUUL Labs products or goods," that "[i]f you do not agree to these Terms of Service you may not use the Website or purchase our Products from the websites," and that JLI may modify the terms and conditions and that "your continued use thereafter constitutes your agreement to such modification, limitation, change, or replacement." *Id.*

In other words, when they used the JLI Website in 2017 to make purchases, both Burgher and Lana agreed that those purchases and their ongoing use of the JLI website would be subject to the same agreement to arbitrate that this Court has already found covers the claims at issue in this case. And they affirmed that agreement using the same mechanism—a check-box agreement—that the Court has already held enforceable.

### D. Lana Reaffirmed His Agreement To Arbitrate In March 2018

Following JLI's transition to its new website in early 2018, both plaintiffs signed in several times between 2018 and 2021, and in so doing they affirmed their prior agreement to arbitrate. Plaintiff Lana logged in and made purchases on the JLI website, www.juul.com, in March 2018, and he did so by signing in using the account creation and sign-in page shown in **Figure 1**, below:

1
2
3
4
5
6
7
8
9
10
11



**Figure 1**

12    While Lana was not required to check the box to log back into the website on this date, he

13  was reminded by the login page of the existence of the terms and conditions to which he had already

14  agreed back in 2017.  He was also reminded that his use of the website—"by registering with JUUL

15  Labs, Inc."—was governed by those terms.  And he was provided with a link to access and review

16  the terms and conditions again—displayed as a clear hyperlink, highlighted in a contrasting color of

17  blue.

18    **E.    Lana and Burgher Reaffirmed Their Agreements To Arbitrate In 2019**

19    Lana and Burgher both logged in to the JLI website in 2019, as well.  On May 17, 2019,

20  Burgher logged in, and set up a recurring monthly order that resulted in purchases being completed

21  on June 17 and August 17, 2019.  Jacobs Decl., Ex. 1.  Lana logged in to the website (but does not

22  appear to have made a purchase) on May 26, 2019.  *Id.*, Ex. 2.  When each logged in, they did so

23  using the screen showed in **Figure 2**, below.

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14



**Figure 2**

15   Like the screen that existed in 2018, the 2019 version of the login screen reminded both Lana

16  and Burgher of the terms and conditions, that those terms and conditions applied to their use of the

17  website, and provided a clear and unambiguous hyperlink to access them.  By this time, both

18  Plaintiffs had already manifestly agreed to arbitration—by their 2017 transactions—but the 2019

19  logins provided them with additional notice that their use of the website remained subject to the

20  terms to which they had already agreed.

21   **F.**    **Burgher Reaffirmed His Agreement To Arbitrate In 2020**

22   In July 2019, the JLI Website login page was updated to a "split screen" format, in which

23  different screens were used to create new accounts and log in to existing accounts.  Plaintiff Burgher

24  logged in using that screen on April 24, 2020, and **Figure 3**, below, is a screenshot of the "Welcome

25  Back" screen as it existed on that date:

26
27
28

**Figure 3**

As **Figure 3** depicts, the new format of the screen that was put in place in 2020 tied notice of the terms and conditions directly to the "sign in" button that Burgher was required to click.  The text notified him expressly that "By proceeding, you agree to our Terms and Conditions," and the words "Terms and Conditions" are offset in blue.  Burgher affirmed his agreement to the terms, including the arbitration provision, when he logged in at that time.

### G.     Lana and Burgher Reaffirmed Their Agreements To Arbitrate In 2021, Including *After* This Court's Decision Compelling Arbitration

Finally, both Burgher and Lana continued to log in to the JLI Website in 2021.  Plaintiff Burgher logged in on May 3, May 12, May 13, and May 14, 2021.  Jacobs Decl., Ex. 1.  Plaintiff Lana logged in exclusively in September 2021—on September 1, September 6, and September 7, 2021—*after* this Court's decision compelling arbitration in this case.  *Id.* Ex. 2.

**Figure 4** below is a screenshot of JLI's current "Log In" screen implemented on April 12, 2021 and that was in place on each of the dates Plaintiffs logged in after that:



**Figure 4**

The login page is clear:  "By proceeding" each of the Plaintiffs "agree[d] to our Terms and Conditions."  Each of the Plaintiffs clicked the "Log Into My Account" button immediately *below* that text, and thereby unambiguously affirmed their agreement to JLI's terms and conditions.  While this was merely a re-affirmation of an agreement each had entered into some years earlier, it was also a clear and manifest one—and in the case of Lana, a series of logins and agreements that occurred after this Court had already held that the claims in this case were indeed subject to arbitration under JLI's website terms and conditions.

**H.      The Arbitration Agreement Agreed To By Plaintiffs Was Materially Identical To The One The Court Has Already Enforced**

The Court has already construed the arbitration agreement language at issue here.  Although minor revisions were made over time, the relevant arbitration and class action waiver terms of the JLI website terms and conditions in place in 2017, 2018, 2019, 2020 and 2021 were materially identical to the terms that the Court enforced in *In re Juul*.  The agreement to arbitrate and class action waiver were prominently presented, clearly explained and unambiguous:

-9-

**GOVERNING LAW, VENUE, AND CLASS ACTION /JURY TRIAL WAIVER**

[*      *      *]

Arbitration.  Read this section carefully because it requires the parties to arbitrate their disputes and limits the manner in which you can seek relief from JUUL Labs. For any dispute with JUUL Labs, you agree to first contact us via email and attempt to resolve the dispute with us informally.  In the unlikely event that JUUL Labs has not been able to resolve a dispute it has with you after sixty (60) days, **we each agree to resolve any claim, dispute, or controversy (excluding any claims for injunctive or other equitable relief as provided below) arising out of or in connection with or relating to these Terms, or the breach or alleged breach thereof (collectively, "Claims"), by binding arbitration by JAMS, under the Optional Expedited Arbitration Procedures then in effect for JAMS . . . .** Nothing in this Section shall be deemed as preventing JUUL Labs from seeking injunctive or other equitable relief from the courts as necessary to prevent the actual or threatened infringement, misappropriation, or violation of our data security, Intellectual Property Rights or other proprietary rights.

**Class Action/Jury Trial Waiver.**  With respect to all persons and entities, regardless of whether they have obtained or used the Website or JUUL Labs Products or services for personal, commercial or other purposes, all claims must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class action, collective action, private attorney general action or other representative proceeding.  This waiver applies to class arbitration, and, unless we agree otherwise, the arbitrator may not consolidate more than one person's claims. You agree that, by entering into this agreement, you and JUUL Labs are each waiving the right to a trial by jury or to participate in a class action, collective action, private attorney general action, or other representative proceeding of any kind.

*Id.*, Ex. 8; *see also id.*, Exs. 9-10 (identical in relevant part) (emphasis added).  The Terms and Conditions in place when plaintiffs created their accounts were governed by California law.  *Id.*

When Plaintiffs subsequently accessed their JLI accounts several times in May and September 2021, they agreed to be bound by a subsequent version of the agreement that, in addition to this language, stated that the agreement to arbitrate included claims arising or related to his "purchase or use of JUUL Products."  Jacobs Decl., Ex. 10.  These Terms and Conditions included a Delaware choice of law and venue provision.  *Id.*

In all relevant versions of the JLI website Terms and Conditions, the arbitration agreement and class action waiver provisions were called out in a notice at the top of the page:

**GENERAL STATEMENT / WEBSITE TERM OF USE**:

JUUL Labs has adopted these Terms of Service to inform you of your rights and

obligations when using the Website and/or when purchasing any JUUL Labs products or goods . . . .  Your use of this Website, and/or your purchase of any Products constitutes your agreement to the following Terms of Service.  If you do not agree to these Terms of Service you may not use the Website or purchase our Products from the websites.

JUUL Labs may, and reserves the right, to from time to time modify, limit, change, discontinue, or replace the website and these Terms of Service at any time.  In the event JUUL Labs modifies, limits, changes, or replaces the website or these Terms of Service, your continued use thereafter constitutes your agreement to such modification, limitation, change, or replacement.

It is your responsibility to review these Terms of Service on a regular basis to keep yourself informed of any modifications, limitations, changes, or replacements.

\* \* \*

Please read these Terms of Service carefully to ensure that you understand each provision.  **These Terms contain a mandatory individual arbitration and class action/jury trial waiver provision that requires the use of arbitration on an individual basis to resolve disputes, rather than jury trials or class actions**.

*Id.*, Ex. 8 (emphases added); *see also id.*, Exs. 9-10 (identical in relevant part) (emphases added).

In briefing that led to the Court's decision in *In re JUUL*, the plaintiffs did not dispute that their claims in this case fall within the scope of this agreement to arbitrate, and with good reason. Plaintiffs' claims in this case are predicated on their purchases of JUUL products from JLI in transactions conducted pursuant and subject to the terms of agreement described above.  Their allegations of antitrust injury arise directly from and relate to those transactions.

Here, both Plaintiffs purchased products from JLI's website and allege that they were "injured in connection with its purchases … as a result of Defendants' anticompetitive and unlawful agreements alleged herein."  *Id.*  Plaintiffs contend that allegedly illegal agreements between JLI and Altria "had the purpose and effect of raising[,] fixing, maintaining and/or stabilizing prices, reducing innovation and eliminating consumer choice."  Am. Compl. ¶ 141.  Plaintiffs assert that "[p]rice competition among Defendants in the sale, marketing and distribution of Closed-System E-Vapor products … has been restrained," and that "Prices for Closed-System E-Vapor products sold by Defendants … have been raised, fixed, maintained, and/or stabilized at artificial and non-competitive levels."  *Id.* ¶ 162.  Plaintiffs also allege that they were "injured in their business or

property," *Id.* ¶¶ 169, 172, 183, and that "[t]heir injury includes paying higher prices for Closed-System E-Vapor products than they would have paid in the absence of those violations." *Id.* ¶ 183.

## III.   LEGAL STANDARD

As the Court has recognized, "'The FAA, 9 U.S.C. § 1 et seq., requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. [] The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue.'" *In re JUUL*, at 11 (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)).  On a motion to compel arbitration, "[t]he district court's 'role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1173 (N.D. Cal. 2011) (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)).  After determining that arbitration should be compelled, a district court "may either stay the action or dismiss it outright." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014); *see also, e.g.*, *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *18 (N.D. Cal. June 25, 2014) ("When arbitration is mandatory, courts have discretion to stay the case under 9 U.S.C. § 3 or dismiss the litigation entirely.").  The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  In accordance with that pro-arbitration policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25.

## IV.   ARGUMENT

### A.   Plaintiffs Agreed To Resolve This Dispute By Arbitration

In light of the Court's prior decision in *In re JUUL*, the only pertinent question before the Court is whether Plaintiffs Lana and Burgher agreed to the JLI website terms and conditions.  The clear answer to that question is that they did:

- They agreed to arbitrate when they made purchases and checked the box acknowledging their agreement on the checkout screen in 2017.

- They re-affirmed their agreement to arbitrate when they subsequently logged into the JLI website using a login page that included clear hyperlinks to the JLI terms and conditions, and which made clear that their use of the website was subject to those terms.

- And, finally, both re-affirmed their agreement to arbitrate in 2021 when they logged into the JLI website and clicked the "Log Into My Account" button *immediately below* a clear notice indicating that by doing so they were agreeing to the terms and conditions, which included the arbitration and class action waiver provisions.

*In re JUUL* established the sufficiency of the "checkbox" immediately next to a notice that by checking the box the plaintiffs were agreeing to the website terms and conditions.[1]  As the Court explained, although it had disapproved of a notice-based form of JLI's website in *Colgate*, "the addition of the affirmative assent clickbox, drawing attention to the text *immediately* following that contains the somewhat highlighted Terms and Conditions links" was sufficient to establish their assent to the arbitration agreement and class action waiver.  *In re JUUL*, 2021 WL 3675208, at *9-*11.  The Court's decision was entirely consistent with the consensus view that an affirmative manifestation of assent in the form of a "checkbox" is sufficient to establish a website user's agreement to arbitrate.  *See La Force v. GoSmith, Inc.*, No. 17-cv-05101, 2017 WL 9938681, at *3 (N.D. Cal. Dec. 12, 2017) ("Courts enforce clickwrap-type agreements where the user indicates actual notice of the terms of use, or where the user was required to acknowledge the terms of use before proceeding with further use of the site.");  *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016) (enforcing "clickwrap" agreement to terms, observing "our Circuit has recognized that the closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable.");  *Holl v. United Parcel Serv., Inc.*, No. 16-CV-05856, 2017 WL 11520143, at *5 (N.D. Cal. Sept. 18, 2017) (compelling arbitration

---

[1] Because the screens encountered by the plaintiffs materially differ from those contemplated in *Colgate*, JLI is not estopped from relying on them to enforce its Terms and Conditions against these plaintiffs.  *See In re JUUL*, at 13; *see also Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1080-81 (9th Cir. 2007) (holding non-mutual offensive issue preclusion did not apply where issue in second case was not "sufficiently similar" to that decided in the first case).

1    where enrollment "requires clicking a checkbox" to assent to terms including an arbitration

2    agreement).

3         This Court expressly did not consider in *In re JUUL* whether the plaintiffs logins on the

4    "Welcome Back" screens of JLI's website manifested an agreement to arbitrate.  *See In re JUUL,*

5    2021 WL 3675208, at *10 n.9.  The Ninth Circuit, however, has held that plaintiffs agreed to

6    arbitration clauses by continuing through login screens that were materially indistinguishable from

7    JLI's website – as depicted in **Figures 3** and **4**, above.  Specifically, in *Lee v. Ticketmaster L.L.C.*,

8    817 F. App'x 393, 394 (9th Cir. 2020), the court enforced a consumer arbitration agreement with

9    Ticketmaster because "each time he clicked the 'Sign In' button when signing into his Ticketmaster

10   account, where three lines below the button, the website displayed the phrase, 'By continuing past

11   this page, you agree to our Terms of Use.'"  The Court observed that "it is easier to find mutual

12   assent in cases dealing with clickwrap agreements," and "[w]e are 'more willing to find the requisite

13   notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—

14   that is, where the user is required to affirmatively acknowledge the agreement before proceeding

15   with the use of the website.'"  *Id.* at 394 (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171,

16   1176 (9th Cir. 2014)).

17        Likewise in *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020), the Ninth Circuit

18   recently found "sufficient notice to a reasonably prudent internet user of [TurboTax's] Terms of

19   Use, which includ[ed] an arbitration clause" where the user was "required to click a 'Sign In' button,

20   directly under which the following language appeared: '*By clicking Sign In, you agree to the Turbo*

21   *Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement.*'"

22   823 F. App'x at 484.  "Turbo Terms of Use," "TurboTax Terms of Use," and "Privacy Statement"

23   were each highlighted in "hyperlinks which, if clicked, directed the user to a new webpage."  *Id.*

24   Based on this display, the Ninth Circuit concluded that "TurboTax's website . . . required users to

25   'affirmatively acknowledge' the agreement before proceeding, and the website contained 'explicit

26   textual notice that continued use will act as a manifestation of the user's intent to be bound.'"  *Id.*

27        Courts in this Circuit have followed the same approach, and enforced arbitration agreements

28   based on similar consents.  *See In re Ring LLC Priv. Litig.*, No. 19 Civ. 10899, 2021 WL 2621197,

at *5 (C.D. Cal. June 24, 2021) ("[T]he majority of California district courts take the *Dohrmann* and *Lee* approach").  This Court is among them, and has enforced agreements to arbitrate based on screens very similar to JLI's 2020 and 2021 "Welcome Back" screens in recent months, as shown in **Figures 5** and **6**:



**Figure 5**

*See Snow v. Eventbrite, Inc.*, No. Civ. 03698, 2021 WL 3931995, at *4 (N.D. Cal. Sept. 2, 2021)

**Figure 6**

*See Brown v. Madison Reed, Inc.*, No. 21 Civ. 01233, 2021 WL 3861457, at *5-6 (N.D. Cal. Aug. 30, 2021:

Other judges in this District have done the same.  In *Allen v. Shutterfly, Inc.*, No. 20 Civ. 02448, 2020 WL 5517172, at *1–2 (N.D. Cal. Sept. 14, 2020), for example, Judge Freeman compelled arbitration based on the plaintiffs' having clicked through the screen shown in **Figure 7**:

**Figure 7**

*Id.* This screen is substantially the same as JLI's "Welcome Back" screens, presented above. In *Allen*, the court reasoning that "when Lifetouch customers 'Submit Payment' for their purchase on Lifetouch website, they are presented with a statement that 'by clicking "Submit Payment" I agree to the Privacy Statement and Terms of Service' with a blue hyperlink to those Terms" and that "Courts in this Circuit routinely uphold the validity of internet contracts like Lifetouch's 2018 TOS." *Id.* Judge Koh reached a similar conclusion in *Regan v. Pinger, Inc.*, No. 20 Civ. 02221, 2021 WL 706465, at *6 (N.D.Cal. Feb. 23, 2021), holding that the plaintiff was "sufficiently informed" that the plaintiff was agreeing to the terms of service "by clicking the 'Create Account,' 'For Professional Use,' 'For Personal Use,' or 'Login' button" in the screen shown in **Figure 8**:



**Figure 8**

*Id.*[2] Similarly in *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020), Judge Tigar found that DoorDash's Terms and Conditions, placed directly below the "Sign Up" button, with a statement that read "By tapping Sign Up, . . . you agree to our Terms and Conditions and Privacy Statement" with the words "Terms and Conditions" hyperlinked to the DoorDash's Terms and Conditions in effect at the time was sufficient to bind the plaintiffs to an arbitration provision in the

---

[2] The court also recognized that the user in *Pinger* "was also repeatedly reminded that he agreed to the TOS by creating an account when [he] clicked the "Login" button upon returning to use the Sideline app." *Id.*

Terms and Conditions.  *Id.*; *see also Oberstein, et al. v. Live Nation Entertainment, Inc., et al.*, No. Civ. 20-3888, 2021 WL 4772885, at *6 (C.D. Cal. Sept. 20, 2021) (finding plaintiff had agreed to terms of use where the links to the terms of use were "placed conspicuously close to the buttons that the users are required to press to sign up, sign in, or complete a purchase.");  *Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing choice of forum clause in Facebook's terms of service based on agreement to terms hyperlinked under "Sign Up" button where "[t]he phrase 'Terms of Service' is underlined, an indication that the phrase is a hyperlink[.]").  All of these cases confirm that Plaintiffs here had sufficient notice that they were agreeing to the Terms and Conditions, including the arbitration provision, when they completed transactions or logged into JLI's website.

As the Court recognized in *In re JUUL*, the question is not whether Plaintiffs' had "actual knowledge" that by using the JLI website they were agreeing to arbitrate their claims with JLI.  *In re JUUL*, at 14-15. Rather,  "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017); *Lee*, 817 F. App'x at 394 (a party "'cannot avoid the terms of [the] contract on the ground that he ... failed to read it before signing,' *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049, 107 Cal. Rptr. 2d 645 (2001), especially when he 'had a legitimate *opportunity* to review it,' *Mohamed v. Uber Tech., Inc.*, 109 F. Supp. 3d 1185, 1198 (N.D. Cal. June 9, 2015)").

For these reasons, Lana and Burgher cannot avoid their agreements to arbitrate and class action waiver that they assented to and that this Court found to be enforceable in *In re JUUL*.  For the same reasons that the Court compelled arbitration in its earlier decision, it should do so here as well:  both Lana and Burgher expressly agreed to arbitrate their claims, and each re-affirmed their agreement—including as recently as a few weeks ago.

1    **B.    <u>Plaintiffs' Claims Are Within The Scope Of The Agreement To Arbitrate</u>**

2    The Court has already compelled arbitration of identical claims, on an identical complaint,

3    by three other plaintiffs who agreed to arbitrate under JLI website terms and conditions that are

4    materially identical to those at issue here.  *See In re JUUL*, 2021 WL 3675208 at *9-15.  The same

5    outcome should follow here.

6    *First*, the Terms and Conditions that Plaintiffs agreed to are "broad and far reaching."

7    *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); *see also, e.g.*,

8    *Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("Every court that has construed the

9    phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly.").

10   Specifically, Plaintiffs agreed to arbitrate "any claim, dispute, or controversy . . . arising out of or in

11   connection with or relating to these Terms, or the breach or alleged breach thereof," Eadon Decl.,

12   Exs. 8-10, and subsequently re-affirmed that this agreement to arbitrate included claims related to

13   any "purchase or use of JUUL Products."  *Id.*  These are such claims:  Plaintiffs' allegations are

14   premised on allegations arising from their purchase of products from JLI, and allege that they were

15   injured by the prices paid in those transactions.  *See, e.g.*, Am. Compl. ¶ 9,  ("As a direct and

16   proximate result of Defendants' anticompetitive conduct, prices for Closed-System E-Vapor were

17   raised, fixed, maintained, and/or stabilized at supracompetitive levels."); *see also id.* ¶ 183

18   (plaintiffs' "injury includes paying higher prices for Closed-System E-Vapor products than they

19   would have paid in the absence of those violations.").  The transactions at issue were governed by

20   the Terms and Conditions on the JLI website, to which Plaintiffs expressly agreed.  Accordingly,

21   their claims against JLI are claims "arising out of or in connection with," or "relate[d]" to those

22   terms.  *Simula, Inc.*, 175 F.3d at 721 ("the language 'arising in connection with' reaches every

23   dispute between the parties having a significant relationship to the contract and all disputes having

24   their origin or genesis in the contract.").

25   Courts in this Circuit recognize the language "related to" and "connected to" in the

26   arbitration clause of a contract to be broad and presumptively inclusive of disputes arising from the

27   relationship created by the contract.  *See, e.g.*, *KKE Architects, Inc. v. Diamond Ridge Dev. LLC*,

28   No. CV 07-06866, 2008 WL 637603, at *6 (C.D. Cal. Mar. 3, 2008) ("Here, the arbitration clause

-18-

to which the parties agreed is broad.  It applies to 'any claim, dispute, or other matter in question arising out of or related to' the contract. Courts have held that use of similar phrases connotes an expansive arbitration provision.").[3]

Courts have also construed similar language in terms of sale to compel arbitration where antitrust claims arise out of and relate to the purchase made pursuant to agreed terms of sale.  *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 231–39 (2013) (plaintiff merchants' class-action antitrust suit subject to arbitration on individual basis when arbitration clause covered "any assertion of a right, dispute or controversy between you and us arising from or relating to this Agreement and/or the relationship resulting from this Agreement." *In re Am. Express Merchs.' Litig.*, 667 F.3d 204, 209 (2d Cir. 2012)); *In re TFT-FLC (Flat Panel) Antitrust Litig.*, Nos. M 07–1827, C 10–5458, 2011 WL 5325589, at *3–4 (N.D. Cal. Sept. 19, 2011) (antitrust claims subject to arbitration  because they were "'relating to' or 'arising in connection with' the agreements").[4] Indeed, the application of the terms and conditions to the claims in this case is *so* clear that the

_____

[3] *See also Greenberg v. Flynn*, No. CV 09-05273, 2010 WL 11596156, at *4 (C.D. Cal. Apr. 14, 2010) ("The Agreements' arbitration provisions require arbitration of not only disputes 'arising' out of them, but of disputes 'relating' to them, as well. . . . Consequently, it is clear from the plain language of the Agreements' arbitration provisions, namely the 'related to' language, that they are intended to cover a wide range of disputes between Plaintiff and KPMG, as well as disputes between Plaintiff and KPMG employees, agents, and third party beneficiaries, such as Defendant Collins, and which Plaintiff concedes, as he has admitted that the other three related claims against Defendant Collins should be arbitrated."); *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986, 993 (S.D. Cal. 1999) ("The Court first notes the breadth of the arbitration clause at issue. In comparison to an arbitration clause utilizing the language 'arising out of,' which is construed to apply only to a narrow range of disputes specifically relating to the interpretation and performance of the contract at issue, courts interpret an arbitration provision containing the language 'arising out of and or relating to' as a 'broad arbitration clause.'").

[4] *See also Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1106 (C.D. Cal. 2002) (compelling arbitration of antitrust claims where arbitration provision encompassed "any legal claim relating to this Agreement . . . or your Service"); *In re Evanston Nw. Corp. Antitrust Litig.*, No. 07-cv-04446, 2015 WL 13735423, at *6–7 (N.D. Ill. Sept. 4, 2015) (compelling arbitration where "the antitrust claims [were]—in essence—claims to recover alleged overpayments made pursuant to the contracts containing the [arbitration] clauses."); *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d at 1174–79 (granting defendants' motions to compel arbitration of Sherman Act claims under mobile phone terms of service); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 405–06 (S.D.N.Y. 2003) (antitrust claims arbitrable under arbitration provision encompassing "any claim 'arising from or relating in any way to . . . [the] Account,' and 'arising out of or relating to . . . [the] Account.'").

plaintiffs challenging arbitration in the *In re JUUL* decision conceded that these claims fall within the scope of the agreement to arbitrate, notwithstanding raising virtually every other possible argument in opposition to arbitration. Direct Purchaser Pltfs. Opp. to Juul Labs, Inc's Mot. to Comp. Arb., ECF No. 229 at 23 n.11.

*Second*, the agreement to arbitrate that Plaintiffs unambiguously entered into in 2017 and re-affirmed as recently as this year applied to *all* claims arising from *any* purchase that they made on the JLI website, necessarily including purchases made on dates other than the days on which they agreed to the arbitration clause  By its terms, the agreement that Plaintiffs made in 2017 was that the terms and conditions applied "when using the Website and/or when purchasing any JUUL Labs products or goods." Jacobs Decl., Ex. 8. When Plaintiffs returned to the website on later dates to make additional purchases, they had already agreed to arbitrate claims arising from their use of the website and those purchases, and the terms and conditions in place on those later dates were not materially different from those that they subscribed to expressly. *Id.* Likewise, when Plaintiffs chose to affirmatively log into the website in 2021—including after this Court's decision in *In re JUUL*—they affirmatively manifested intent to be bound by the terms and conditions of the website. If there was any ambiguity about whether they had agreed by that time to arbitrate claims arising from their prior purchases on the JLI website (and there should not have been) it was resolved by their affirmative re-affirmation of the terms and conditions in 2021.

*Third*, and finally, if there were any question as to whether Plaintiffs' claims fall within the scope of the agreement to arbitrate, that is a question that is for the arbitrators themselves to resolve. The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). In *Schein,* the Supreme Court held that an arbitration agreement referring to the arbitration rules of the American Arbitration Association ("AAA"), and which was otherwise silent on the question of arbitrability, reflected an agreement to arbitrate that threshold question because "[t]he rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions." *Id.* at 528. On that basis, the Court affirmed a district court order compelling arbitration of antitrust claims pursuant an

arbitration clause in a sales agreement very similar to the one at issue in this case.

Similarly here, the relevant arbitration provision refers to arbitration by JAMS under its Optional Expedited Arbitration Procedures:

> "[W]e each agree to resolve any claim, dispute, or controversy (excluding any claims for injunctive or other equitable relief as provided below) arising out of or in connection with or relating to these Terms, or the breach or alleged breach thereof (collectively, "Claims"), by binding arbitration by JAMS, under the Optional Expedited Arbitration Procedures then in effect for JAMS, except as provided herein."

*See* Jacobs Decl., Exs. 8-10.

Just like the AAA rules at issue in *Schein*, those rules provide that questions of arbitrability— *e.g.*, whether the claims asserted fall within the scope of the agreement to arbitrate—is to be decided by the arbitrator:

### Rule 11.  Interpretation of Rules and Jurisdictional Challenges

> [*          *          *]

> (b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*JAMS Comprehensive Arb. Rules & Procs.*, *Rule 11,* JAMS (July 1, 2014), https://www.jamsadr. com/rules-comprehensive-arbitration/#Rule-11; *see also Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) ("when the parties have incorporated by reference the rules of the American Arbitration Association ('AAA'), which state in relevant part that the 'arbitrator shall have the power to rule on his or her own jurisdiction . . . ,'" they have "clearly and unmistakably" delegated questions issues of arbitrability to the arbitrator); *ASUS Comput. Int'l v. InterDigital, Inc.*, No. 15 Civ. 01716, 2015 WL 5186462, at *4 (N.D. Cal. Sept. 4, 2015) ("[T]he parties agreed to arbitration under the ICDR rules, . . . and these rules allow an arbitrator to decide arbitrability. . . . Several courts have held that even when an arbitration clause uses permissive language, the clause still gives rise to mandatory arbitration.").

1        This is true whether the question is one of scope, generally, or is whether Plaintiffs'

2   agreements to arbitrate made in 2021 apply to claims that already existed at that time (e.g., with

3   respect to purchases made in earlier years).  "When [plaintiff] maintains she did not consent to

4   arbitrate claims that had accrued before the Arbitration Agreement was signed, she is arguing about

5   the reach or scope of the Agreement, not whether she agreed to arbitrate."  *Davis v. Einstein Noah*

6   *Rest. Grp., Inc.*, No. 19 Civ. 00771-JSW, 2019 WL 6835717, at *2 (N.D. Cal. Oct. 23, 2019).  Thus,

7   for example, Judge Freeman's ruling in *Allen* compelled arbitration of the question of whether

8   Lifetouch's terms of service required arbitration of claims related to "purchases made before July

9   2018" where the "Terms of Service that was in effect before July 2018 did not include an arbitration

10   clause."  *Allen*, 2020 WL 5517172, at *9.  The court concluded that "the question of retroactive

11   application of the Arbitration Agreement to Plaintiff's purchases prior to July 2018 is in the

12   arbitrator's purview."  Were there any ambiguity about whether Lama and Burgher agreed to

13   arbitrate the claims in this case, the same outcome should obtain here as well:  Both unambiguously

14   agreed to arbitrate claims in both 2017 and 2021.  Any dispute about whether the claims arising

15   from purchases on other dates fall squarely within the scope of an agreement that refers such

16   questions to the arbitrators.  It should be enforced on its terms.

17       **C.**    **If The Court Declines To Compel Arbitration, Plaintiffs' Class Action**
          **Allegations Should Be Struck**

18

19        In *In re JUUL*, the Court did not reach the question of whether Plaintiffs' class action

20   allegations should be struck because it concluded that their claims should be referred to arbitration.

21   It did, however, conclude that the plaintiffs' "assent to the … class action waiver has been

22   demonstrated."  *In re JUUL*, at 19.  The same is true here, for the reasons discussed above.  And

23   while Lana and Burgher should likewise be required to arbitrate their claims, if the Court were to

24   decline to order that, it should still strike plaintiffs' class allegations.  "Rule 12(f) … grants courts

25   the authority to strike class allegations that 'cannot possibly move forward on a classwide basis.'"

26   *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, No. CV 15–00153, 2015 WL 1266787, at *3 (C.D.

27   Cal. Mar. 18, 2015) (*quoting Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013));

28   *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989-90 (N.D. Cal. 2009) ("Where the complaint

1   demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move

2   to strike class allegations prior to discovery."); *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d

3   1078, 1095 (S.D. Cal. 2016) ("A court may grant a motion to strike class allegations if it is clear

4   from the complaint that the class claims cannot be maintained."); *see also Gutierrez v. Jolt Delivery,*

5   *LLC*, No. LACV 17-8380, 2018 WL 6118581, at *5 (C.D. Cal. Aug. 7, 2018) (dismissing class

6   claims and compelling individual claims to arbitration).

   **D.      Plaintiffs' Claims Against The Individual Defendants Should Be Compelled To
7           Arbitration, As In *In re JUUL***

8           In *In re JUUL*, the Court held that the plaintiffs' claims against the Individual Defendants,

9   Riaz Valani, and Nicholas Pritzker, were covered by the agreement to arbitrate in JLI's website

10  terms and conditions, and compelled the plaintiffs to arbitrate those claims.  *In re JUUL*, 2021 WL

11  3675208, at *14-15.  Lana and Burgher's claims are indistinguishable in this regard, and should be

12  compelled to arbitration for the same reasons.  Indeed, the allegations in their complaint are identical

13  to the allegations that this Court considered in *In re JUUL* when it held that "Pritzker and Valani

14  should be covered by the arbitration agreements because they were acting as agents of JLI – even if

15  they had their own ulterior motives – when conducting negotiations with Altria."  *Id.* at *15.  Ninth

16  Circuit law establishes that "nonsignatories of arbitration agreements may be bound by the

17  agreement under ordinary contract and agency principles."  *Id.*  (quoting *Letizia v. Prudential Bache*

18  *Securitie, Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)); *see also Amisil Holdings Ltd. v. Clarium*

19  *Capital Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007) ("[A]gents of a signatory can compel the

20  other signatory to arbitrate so long as …(2) the claims against the agents arise out of or relate to the

21  contract containing the arbitration clause.").  Just as in *In re JUUL*, "the antitrust claims against the

22  Director Defendants arise out of or relate to the Terms and Conditions that governed the terms of

23  sale to each DPP who necessarily purchased product through JLI's website."  *In re JUUL*, 2021 WL

24  3675208, at *15.   The Individual Defendants accordingly request that Lana and Burgher be

25  compelled to arbitrate.

26

27

28

1

## V.    <u>CONCLUSION</u>

2

For the foregoing reasons, JLI and the individual defendants respectfully ask that the Court

3

grant their motion to compel arbitration and dismiss this litigation or stay it pending completion of

4

arbitration, or in the alternative, strike plaintiffs' class action allegations.

5

6

DATED:  October 22, 2021

7

Respectfully submitted,

8

**CLEARY GOTTLIEB STEEN &**            **KELLOGG HANSEN TODD FIGEL**
9
**HAMILTON LLP**                        **& FREDERICK, P.L.L.C.**

10

By:    ___/s/ David I. Gelfand____      By:    ___/s/ Michael J. Guzman___
           David I. Gelfand                        Michael J. Guzman

11

David I. Gelfand (admitted *pro hac vice*))     Mark C. Hansen (admitted *pro hac vice*)
12
Jeremy Calsyn (SBN #25062               Michael J. Guzman (admitted *pro hac*
13
Nowell D. Bamberger (admitted *pro hac vice*)     *vice*)
                                        David L. Schwarz (CA Bar No. 206257)
14
2112 Pennsylvania Avenue, NW            1615 M Street, N.W. Suite 400
Washington, D.C. 20037                  Washington, D.C. 20036
15
Telephone:  (202) 974-1500              Telephone:  (202) 326-7900
Email:  dgelfand@cgsh.com               Email:  mhansen@kellogghansen.com
16
        jcalsyn@cgsh.com                        mguzman@kellogghansen.com
        nbamberger@cgsh.com                     dschwarz@kellogghansen.com
17

*Counsel for Defendants Juul Labs, Inc.*        *Counsel for Nicholas Pritzker and Riaz*
18                                              *Valani*

19

20

21

22

23

24

25

26

27

28

Motion to Compel Arbitration or Strike Class Allegations
Case No. 3:20-cv-02345-WHO

1

2

### **<u>FILER'S ATTESTATION</u>**

3
            Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, David I. Gelfand, attest that

4
concurrence in the filing of this document has been obtained.

5

DATED:  October 22, 2021

6

7
                                        CLEARY GOTTLIEB STEEN & HAMILTON LLP

8

9
                                        */s/ David I. Gelfand*

10
                                        DAVID I. GELFAND

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28