UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**IN RE: JUUL LABS, INC., ANTITRUST LITIGATION**

Case No. 20-cv-02345-WHO

**ORDER ON SECOND MOTION COMPEL**

Dkt. Nos: 284

Defendant Juul Labs, Inc. ("JLI") again moves to compel arbitration because the newly named Direct Purchaser Plaintiffs ("DPPs") gave constructive assent to arbitrate when they purchased JLI products or used the JLI website. The motion requires me to apply current precedent on this nettlesome issue to a series of web pages from 2017 to the present. I conclude that the DPPs' use of JLI's landing page after JLI modified it in April 2021 establishes constructive assent and grant the motion to compel. Whether the scope of the arbitration includes plaintiffs' purchases made prior to that is for the arbitrator to decide.

In my August 2021 Order, I granted JLI's first motion to compel arbitration of the claims of the then-named DPPs Anthony Martinez, Jessica McGee, and Mallory Flannery. Dkt. No. 270 (August 2021 Order). I determined that alterations JLI made to its Log In/Sign Up pages on www.juul.com as of August 9, 2018 were sufficient to establish objective constructive assent to JLI's Terms and Conditions, including JLI's Arbitration Policy. August 2021 Order at 7-8, 14-19. JLI had added an affirmative assent "clickbox" to the "landing page" immediately adjacent to a disclosure that "By registering with JUUL Labs, Inc. you agree to our Terms and Conditions and Privacy Policy." The Terms and Conditions and Privacy Policy terms were hyperlinks to those policies; one could not sign up to register with JLI and proceed to use the website unless that

clickbox was checked. August 2021 Order at 8. I stayed the effect of the Order and gave the DPPs leave to amend with new named DPPs who had purchased prior to August 9, 2018.

On September 20, 2021, DPP plaintiffs filed an Amended Consolidated Class Action Complaint, Dkt. No. 276, naming two new DPPs, Jonathan Burgher and Anthony Lana.[1] Both plaintiffs first created accounts on JUULvapor.com in 2017. JLI argues that the format of JUULvapor.com was different from the format of the Log In/Sign Up pages then existing on www.juul.com and that code on JUULvapor.com during that time contained an affirmative clickbox on the "checkout screen." Declaration of Eadon Jacobs (Dkt. No. 284-1) ¶¶ 5-6; Reply Declaration of Eadon Jacobs (Dkt. No. 297-1) ¶¶ 6-9, 11. But it presents no evidence of how the checkout screen on JUULvapor.com during the relevant timeframe looked to users. There is no evidence that the alleged affirmative checkbox was proximate to a hyperlinked copy of Terms and Conditions containing a specific arbitration policy. Absent this evidence, I cannot find that a consumer's use of the JUULvapor.com site to sign up for an account established the objective constructive assent required under Ninth Circuit precedent. *See* August 2021 Order at 11-12, 17-19; *see also Snow v. Eventbrite, Inc*., No. 3:20-CV-03698-WHO, 2020 WL 6135990, at *5 (N.D. Cal. Oct. 19, 2020) (denying motion to compel without prejudice where defendant did not provide sufficient evidence showing that design elements made disclosure of Terms of Service "sufficiently obvious" to place a reasonably prudent user on notice to support constructive assent).

JLI shows that Lana completed subsequent online transactions in March 2018. Jacobs Decl. ¶ 3b. But the design and appearance of the Log In/Sign Up page on juul.com during that month, *id*. ¶ 8, Ex. E, is the same as the page I reviewed in the August 2019 order in *Colgate v. JUUL Labs, Inc*., 402 F. Supp. 3d 728, 766 (N.D. Cal. 2019): I denied a motion to compel

---

[1] Plaintiffs voluntarily dismissed Counts Two and Three against the two remaining individual defendants, Riaz Valani and Nicholas Pritzker (Restraint of Trade in Violation of Section 7 of the Clayton Act, 15 U.S.C. § 18 and Declaratory and Injunctive Relief for Violations of Section 1 of the Sherman Act and Section 7 of the Clayton Act, 15 U.S.C. § 26) but did not dismiss them with respect to Count One of the ACC (Restraint Of Trade In Violation Of Section 1 Of The Sherman Act, 15 U.S.C. § 1). Dkt. Nos. 278, 279. JLI, therefore, moves on behalf Valani and Pritzker to compel the DPP plaintiffs' claims against them to arbitration. MTC at 23; Oppo. at 18-19; Reply at 15. At oral argument plaintiffs admitted that arbitration of Burgher and Lana's remaining claim against the individual defendants rises and falls with the arbitrability of the claims against JLI. *See* December 15, 2021 Transcript at 9:20-10:3.

arbitration based on that page. I will not revisit that determination or compel arbitration based on it.

Burgher made a purchase on juul.com in May 2019 and Lana logged into his account in May 2019 (but did not make a further purchase). Jacobs Decl., ¶¶ 3a, 3b. At that time the juul.com landing page was still split in two with the Log In section above and the Sign Up section below. *See* MTC (Dkt. No. 284) at 7, Figure 2. The clickbox was beneath the lower "Sign Up" section and informed consumers "signing up" that "By registering" the user agreed to JLI's Terms and Conditions and Privacy Policy. *Id*. That page does not establish constructive affirmative assent sufficient to compel arbitration. There is no evidence that returning, already registered users – like Burgher and Lana – would need to check the clickbox to proceed to the site. More fundamentally, the disclosure regarding the Terms and Conditions was contained in the wholly separate Sign Up section below the Log In section. There is no reason why a returning user would pay particular attention to a disclosure below the Sign In button or have reasonable notice that by signing in they could, as already registered users, be giving constructive assent to terms and conditions applying to then "registering" users. This page does not demonstrate constructive assent by Burgher or Lana to the Terms and Conditions, including the Arbitration Policy.

JLI made modifications in July 2019 to the juul.com landing page. That page, which JLI asserts Burgher would have encountered when he logged onto the site in April 2020, was reformulated as a "Welcome Back" screen where a user was prompted to enter their email and password and hit the "SIGN IN" button. MTC at 8, Figure 3. Beneath the "SIGN IN" button there is a disclosure in a greyed out box that "By proceeding, you agree to our Terms and Conditions." *Id*. The change in language – notifying users that by "proceeding" they would agree to hyperlinked Terms and Conditions – is a material, significant change. However, that disclosure is still placed beneath the SIGN IN button, so there remains a question whether that disclosure was sufficient to put a reasonably prudent user on inquiry notice.

I need not definitely resolve this question, however, given further modifications that JLI made to its landing page as of April 2021 that were in place when Burgher and Lana logged into the juul.com website in May and September 2021 respectively. Jacobs Decl., ¶¶ 3a, 3b; MTD at 9,

3

1  Figure 4.  On the April 2021 "Log In" page, the grayed out box containing the disclosure that "By

2  proceeding, you agree to our Terms and Conditions" is placed immediately *above* the "LOG INTO

3  MY ACCOUNT" button.  *Id.*  Consistent with numerous decisions from this District, this

4  placement of the disclosure and the broad "By proceeding" language – even absent the clickbox –

5  is sufficient to put a reasonably prudent user on inquiry notice to find constructive assent to the

6  Arbitration Policy contained in the Terms and Conditions.  *See, e.g., Snow v. Eventbrite, Inc*., No.

7  3:20-CV-03698-WHO, 2021 WL 3931995, at *4 (N.D. Cal. Sept. 2, 2021) (hyperlinked disclosure

8  of "I accept the terms of service" immediately above "Pay Now" button sufficient to put a

9  reasonably prudent user on adequate notice); *Allen v. Shutterfly, Inc*., No. 20-CV-02448-BLF,

10 2020 WL 5517172, at *3 (N.D. Cal. Sept. 14, 2020)  (compelling arbitration where "customers are

11 provided with a link to the 'Terms and Conditions' above the 'Submit Payment' button at

12 checkout."); *Regan v. Pinger, Inc*., No. 20-CV-02221-LHK, 2021 WL 706465, at *7 (N.D. Cal.

13 Feb. 23, 2021) (compelling arbitration where webpage "included notice of the TOS via a hyperlink

14 in close proximity to the relevant action button, but the text of the notice itself further informed

15 Plaintiff that by registering an account or clicking a button Plaintiff was consenting to the []

16 TOS."); *cf. Lee v. Ticketmaster L.L.C*., 817 F. App'x 393, 394–95 (9th Cir. 2020)

17      Therefore, at least as of May and September 2021, Burgher and Lana were on inquiry

18 notice that by proceeding to use the juul.com site, they were agreeing to be bound by the Terms

19 and Conditions.  Therefore, there is sufficient constructive assent to the Arbitration Policy.

20      The remaining question is whether the assent to be bound by the Arbitration Policy in 2021

21 by using JLI's website requires arbitration of Burgher and Lana's claims related to purchases that

22 took place prior to 2021.  JLI argues that because the Arbitration Policy Burgher and Lana agreed

23 to in 2021 contained broad "Website Term of Use" language mandating the arbitration of "any

24 claim, dispute, or controversy arising out of or in connection with or relating to these Terms, the

25 breach or alleged breach thereof, or your purchase or use of JUUL Products," the prior purchases

26 are now covered by the Arbitration Policy.  Jacobs Decl., Ex10 at 1, 8.  These arguments go to the

27 scope of the Arbitration Policy, matters to be resolved by the arbitrator.  *Allen v. Shutterfly, Inc*.,

28 No. 20-CV-02448-BLF, 2020 WL 5517172, at *9 (N.D. Cal. Sept. 14, 2020) ("the question of

4

retroactive application of the Arbitration Agreement to Plaintiff's purchases prior to July 2018 is in the arbitrator's purview") ; *Davis v. Einstein Noah Rest. Grp., Inc*., No. 19-CV-00771-JSW, 2019 WL 6835717, at *2 (N.D. Cal. Oct. 23, 2019) ("When [plaintiff] maintains she did not consent to arbitrate claims that had accrued before the Arbitration Agreement was signed, she is arguing about the reach or scope of the Agreement, not whether she agreed to arbitrate.").[2]

I find the prior uses and purchases of Burgher and Lana through juul.com are arguably covered by the Arbitration Policy (although the arbitrator will be the final arbiter of the scope of the Arbitration Policy) and GRANT JLI's motion to compel.

## CONCLUSION

The motion to compel as to the two new DPPs Jonathan Burgher and Anthony Lana is GRANTED. The effect of this Order, as well as the August 2021 Order, is further stayed for thirty (30) days to allow the DPPs to substitute in a class representative whose claims against JLI and the Director Defendants would not be subject to arbitration and for the DPPs to notify me whether they want the claims of Martinez, McGee, Flannery, Burgher, and Lana dismissed or stayed pending arbitration.

The DPPs shall file their Second Amended Consolidated Class Action Complaint within

---

[2] The retroactivity issue was not addressed by plaintiffs in their Opposition. When asked about it during oral argument, plaintiffs identified only two relevant cases, both of which interpreted "arise" to refer to the timing of accrual of claim and not to what types of claims would be covered. *See, e.g., Castro v. ABM Indus., Inc*., No. 17-CV-3026-YGR, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) ("the Court finds that the phrase 'whenever they arise' points to the timing of covered claims rather than the subject-matter. In the context of a phrase describing the timing, rather than the substance, of covered claims, the CBAs' use of the present tense "arise" suggests that the clauses govern present and future, but not past, conduct."); *Morse v. ServiceMaster Glob. Holdings Inc*., No. C 10-00628 SI, 2012 WL 4755035, at *5 (N.D. Cal. Oct. 4, 2012) ("The use of the present participle 'arising' makes it clear that it applies to claims that may arise going forward, not claims that have already accrued."). Here, while the Arbitration Policy used "arising," it does so in terms of defining the substance of covered claims. Moreover, looking to the totality of the arbitration language, it very broadly encompasses "any claim" "arising out of or in connection with" the use of the website "or your purchase or use of JUUL Products." Jacobs Decl., Ex. 10 at 8. The ultimate question of arbitrability of Burgher or Lana's claims based on their accrual or otherwise, however, is left to the arbitrator to decide.

thirty (30) days of the date of this Order.

Dated: January 14, 2022

William H. Orrick
United States District Judge