David I. Gelfand (*pro hac vice*)
Jeremy J. Calsyn (State Bar No. 205062)
Nowell D. Bamberger (*pro hac vice*)
dgelfand@cgsh.com
jcalsyn@cgsh.com
nbamberger@cgsh.com
**Cleary Gottlieb Steen & Hamilton LLP**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999

*Attorneys for Defendant*
*Juul Labs, Inc.*

Mark C. Hansen (admitted *pro hac vice*)
Michael J. Guzman (admitted *pro hac vice*)
David L. Schwarz (CA Bar No. 206257)
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com
**Kellogg Hansen Todd Figel & Frederick P.L.L.C.**
1615 M Street, N.W. Suite 400
Washington, D.C. 20036
Telephone:  (202) 326-7900

*Counsel for Nicholas Pritzker and Riaz Valani*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC. ANTITRUST LITIGATION <br><br> This Document Relates to: <br><br> **ALL DIRECT PURCHASER ACTIONS** | Case No. 3:20-CV-02345-WHO <br><br> **Defendant Juul Labs, Inc.'s and Director Defendants' Notice of Motion and Motion to Compel Arbitration and Stay Litigation Or Alternatively Strike Class Allegations and Motion to Dismiss; Memorandum of Points and Authorities; [Proposed] Order** <br><br> Judge:  Hon. William H. Orrick <br> Date:  January 31, 2024 <br> Time:  2:00 P.M. PT <br> Ctrm.:  2 |

## NOTICE OF MOTION AND MOTION

1

## <u>TABLE OF CONTENTS</u>

2

I.     INTRODUCTION.................................................................................................2

3

II.    STATEMENT OF FACTS...................................................................................5

4

       A.     The DPPs' Allegations ............................................................................5

5

       B.     Altria Terminated the Non-Compete Agreement and Relinquished All
              Economic Stake in JLI ............................................................................6

6

       C.     The Court's Order In *In re Juul I* Establishes That Plaintiffs' Claims Are
              Subject To Arbitration If They Assented To JLI's Website Terms and

7

              Conditions ................................................................................................7

8

       D.     The Court's Order in *In re Juul II* Establishes that Log-Ins through JLI's
              Later Log-In Screens Create a Binding Arbitration Agreement ..............8

9

10

       E.     Sieber, Black, and Thompson Accessed and Purchased Products From JLI's
              Website Between 2018 and 2019 .............................................................9

11

       F.     Sieber and Thompson Agreed to the JLI Website Terms and Conditions in

12

              2019 When They Signed In Multiple Times.............................................9

13

       G.     The Arbitration Agreement Agreed To By Plaintiffs Was Materially
              Identical To The One The Court Has Already Enforced..........................10

14

15

III.   ARGUMENT ....................................................................................................12

16

       A.     Plaintiffs Sieber and Thompson Agreed To Resolve This Dispute By
              Arbitration ...............................................................................................12

17

18

       B.     Plaintiffs' Claims Are Within The Scope Of The Agreement To Arbitrate ...........18

19

       C.     If The Court Declines To Compel Arbitration, Plaintiffs' Class Action
              Allegations Should Be Struck .................................................................18

20

       D.     Plaintiffs' Claims Against The Individual Defendants Should Be Compelled
              To Arbitration, As In *In re Juul I* and *In re Juul II* .................................19

21

       E.     The Claims For Injunctive Relief Should Be Dismissed For Lack of Article
              III Standing..............................................................................................19

22

23

IV.    CONCLUSION .................................................................................................23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,

4
     No. CV 15–00153, 2015 WL 1266787 (C.D. Cal. Mar. 18, 2015) ........................................ 18

5

*Anderson v. Apple Inc.*,

6
     500 F. Supp. 3d 993 (N.D. Cal. 2020) (Orrick, J.) ................................................................. 20

7

*Clapper v. Amnesty Int'l USA*,

8
     568 U.S. 398 (2013) ............................................................................................................... 22

9

*Colgate v. Juul Labs, Inc.*,

10
     402 F. Supp. 3d 728 (N.D. Cal. 2019) ................................................................................. 3, 7

11

*Dohrmann v. Intuit, Inc.*,

12
     823 F. App'x 482 (9th Cir. 2020) ................................................................................ 4, 14–15

13

*FTC v. Qualcomm Inc.*,

14
     969 F.3d 974 (9th Cir. 2020) ................................................................................................. 20

15

*Fteja v. Facebook, Inc.*,

16
     841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................................... 17

17

*Gutierrez v. Jolt Delivery, LLC*,
     No. LACV 17-8380, 2018 WL 6118581 (C.D. Cal. Aug. 7, 2018) ........................................ 19

18

*Hooper v. Jerry Ins. Agency, LLC*,

19
     No. 22-CV-04232, 2023 WL 3992130 (N.D. Cal. June 1, 2023) .................................... 15–16

20

*In re Adobe Sys., Inc. Priv. Litig.*,
     66 F. Supp. 3d 1197 (N.D. Cal. 2014) .................................................................................. 20

21

*In re Apple & AT & TM Antitrust Litig.*,

22
     826 F. Supp. 2d 1168 (N.D. Cal. 2011) ................................................................................ 12

23

*In re Capacitors Antitrust Litig.*,

24
     154 F. Supp. 3d 918 (N.D. Cal. 2015) .................................................................................. 19

25

*In re DDAVP Indirect Purchaser Antitrust Litig.*,

26
     903 F. Supp. 2d 198 (S.D.N.Y. 2012) ................................................................................... 21

27

*In re Juul Labs, Inc.*,

28
     No. 20-cv-02345, 2022 WL 137627 (N.D. Cal. Jan. 14, 2022) .................................... <u>passim</u>

*In re Juul Labs, Inc.*,
    555 F. Supp. 3d 932 (N.D. Cal. 2021) ............................................................ <u>passim</u>

*In re Nifedipine Antitrust Litig.*,
    335 F. Supp. 2d 6 (D.D.C. 2004) ......................................................................... 20–21

*Johnmohammadi v. Bloomingdale's, Inc.*,
    755 F.3d 1072 (9th Cir. 2014) ................................................................................... 12

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) ....................................................... 4, 13–14, 17–18

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
    363 F.3d 1010 (9th Cir. 2004) ................................................................................... 12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................ 19, 22

*Manning v. Bos. Med. Ctr. Corp.*,
    725 F.3d 34 (1st Cir. 2013) ........................................................................................ 18

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ......................................................................................... 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................................. 12–13

*Norcia v. Samsung Telecomms. Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017) ................................................................................... 17

*Oberstein v. Live Nation Ent., Inc.*,
    No. CV 20-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) ............................. 17

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) ...................................................................... 17

*Regan v. Pinger, Inc.*,
    No. 20-CV-02221, 2021 WL 706465 (N.D. Cal. Feb. 23, 2021) ........................ 16–17

*Romero v. Securus Techs., Inc.*,
    216 F. Supp. 3d 1078 (S.D. Cal. 2016) ..................................................................... 19

*Sanders v. Apple, Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................. 18–19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................................ 19

*Sun v. Rickenbacker Collections*,
    No. 10-CV-1055, 2012 WL 2838782 (N.D. Cal. July 10, 2012) .................................. 1

*Tompkins v. 23andMe, Inc.*,
    2014 WL 2903752 (N.D. Cal. June 25, 2014) ........................................................ 12

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) .................................................................. 19

**Docketed Cases**

*Altria Grp., Inc. and JUUL Labs, Inc.*,
    Docket No. 9393 (F.T.C. Feb. 15, 2022) .......................................................... 2, 5

*Altria Grp., Inc. and JUUL Labs, Inc.*,
    Docket No. 9393 (F.T.C. June 30, 2023) ................................................ 2, 5, 7, 21

*Altria Grp., Inc. and JUUL Labs, Inc.*,
    Docket No. 9393 (F.T.C. Mar. 6, 2023) ............................................................... 6

*Altria Grp., Inc. and JUUL Labs, Inc.*,
    Docket No. 9393 (F.T.C. May 4, 2023) ........................................................... 6–7

*Altria Grp., Inc. and JUUL Labs, Inc.*,
    Docket No. 9393 (F.T.C. Oct. 12, 2022) ............................................................. 6

**Statutes**

9 U.S.C. § 1 .................................................................................................... 12–13

9 U.S.C. § 3 ...................................................................................................... 1, 12

15 U.S.C. § 1 ........................................................................................................ 12

15 U.S.C. § 18 ...................................................................................................... 12

**Other Authorities**

Fed. R. Civ. P. 12(a)(4)(A) ...................................................................................... 1

Fed. R. Civ. P. 12(f) ............................................................................................. 18

Fed. R. Civ. P. 12(b)(1) ................................................................................... 19, 23

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on January 31, 2024, at 2:00 P.M., or as soon thereafter as this matter may be heard, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendants Juul Labs, Inc. ("JLI"), Nicholas Pritzker, and Riaz Valani will and hereby do move the Court for an order compelling arbitration, and dismissing or staying the litigation of claims brought by two of the Direct Purchaser Plaintiffs ("DPPs") named in the Third Amended Consolidated Class Action Complaint or, alternatively, striking those two DPPs' class action allegations; in addition, JLI moves for an order dismissing the claims for injunctive relief.  Defendants do not waive other Rule 12(b)(6) defenses to these or any related actions by not asserting such defenses in this Motion.

## ISSUES TO BE DECIDED

1.      Whether Plaintiffs Jake Sieber and Robert Thompson in the Third Amended Consolidated Class Action Complaint (ECF No. 357) must be referred to arbitration, or, alternatively, whether their class action allegations should be struck pursuant to provisions contained in Terms and Conditions of Juul Labs, Inc.'s website to which both Plaintiffs agreed.

2.      Whether Plaintiffs' claims for injunctive relief (Count Three) should be dismissed for failure to establish an imminent injury as required to establish standing under Article III of the United States Constitution.[1]

## REQUEST FOR RELIEF

JLI, Nicholas Pritzker, and Riaz Valani request that the Court enter an order compelling Plaintiffs Jake Sieber and Robert Thompson to arbitrate their claims pursuant to 9 U.S.C. § 3; and in addition, JLI requests that the Court enter an order dismissing the DPPs' claim for injunctive relief in Count Three of the Third Amended Consolidated Class Action Complaint.

---

[1]      JLI moves to dismiss only Count Three of the Third Amended Consolidated Class Action Complaint.  JLI will submit a responsive pleading in accordance with the timing provided by Federal Rule of Civil Procedure 12(a)(4)(A) or as otherwise directed by the Court.  *See Sun v. Rickenbacker Collections*, No. 10-CV-1055, 2012 WL 2838782, at *2 (N.D. Cal. July 10, 2012) (a pending motion to dismiss, even if "only partially dispositive," tolls the time to submit a responsive pleading as provided by Rule 12(a)(4)(A)).  The Director Defendants are not named in Count Three and accordingly will answer the Third Amended Consolidated Class Action Complaint.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

This is an antitrust case in which the DPPs premised their allegations on those made by the Federal Trade Commission ("FTC") in a parallel case against defendants JLI and Altria Group, Inc. ("Altria").  Both the FTC and the DPPs alleged that a December 2018 transaction between JLI and Altria resulted in anticompetitive effects on the market for Closed-End E-vapor products sold directly to them by JLI.  Following extensive discovery and fact-finding, the FTC case was resolved in favor of JLI and Altria.  *See Altria Grp., Inc. and JUUL Labs, Inc.*, Docket No. 9393 (F.T.C. Feb. 15, 2022) (Initial Decision) (hereinafter, the "FTC Initial Decision"), Bamberger Decl.[2] Ex. A; *see also Altria Grp., Inc. and JUUL Labs, Inc.*, Docket No. 9393 (F.T.C. June 30, 2023) (Order to Return Case to Adjudication, Vacate Initial Decision, and Dismiss Complaint) (hereinafter, the "FTC Order"), Bamberger Decl. Ex. B.  Notably, the Administrative Law Judge found that "the evidence fail[ed] to prove the alleged agreement between Altria and JLI for Altria to stop competing with its existing products."[3]  FTC Initial Decision at 85.  In addition, the transaction at the heart of this case has now been unwound.  In September 2022, Altria terminated its non-compete agreement with JLI and, on March 3, 2023, it returned to JLI the shares that it had agreed to purchase in December 2018.  In fact, Altria is now actively competing *against* JLI through its 100% acquisition of NJOY, LLC, a company that produces similar products to JLI. The DPPs' claims in this case thus face a double dilemma:  there is no evidence to support finding the anticompetitive agreement they assert, and even if there was, their claims for prospective injunctive relief are entirely moot.  Despite this outcome, the DPPs continue to assert their nearly identical claims against JLI and Altria, most recently submitting their Third Amended Consolidated Class Action Complaint ("TAC"), ECF No. 357.

---

[2]     "Bamberger Decl." refers to the accompanying attorney declaration of Nowell D. Bamberger.  The documents annexed to this declaration are subject to judicial notice in connection with this Motion as set out in JLI's accompanying Request for Judicial Notice.

[3]     In the FTC Order, the Commission affirmed the legal analysis of the "plus factors" in the Initial Decision was correct and did not specifically reject the finding that there was no proof of an unwritten, anticompetitive agreement between Altria and JLI.  FTC Order at 5–7.

1      Merits aside, Plaintiffs' counsel has struggled to identify an individual who is actually

2   capable of serving as a representative plaintiff in this case.  So far, the Court has compelled the

3   claims of five proposed named plaintiffs to arbitration pursuant to the Terms and Conditions on

4   JLI's website where they made their purchases.  The DPPs proposed and then abandoned four others

5   in their Second Amended Consolidated Class Action Complaint, ECF No. 305.  Now they assert

6   that claims by their ninth, tenth, and eleventh proposed class representatives should move forward.

7   Yet two of these proposed Plaintiffs face the same issue as their predecessors:  they agreed to

8   arbitrate their claims and not to bring them on a class basis, under Terms and Conditions that the

9   Court has repeatedly found to be enforceable.[4]

10      The claims of two of the named DPPs—Sieber and Thompson—must be compelled to

11   arbitration because they are subject to a binding arbitration agreement.  The Court has now issued

12   three opinions evaluating whether claims by purchasers of products from JLI's website were

13   required to be compelled to arbitration.  Each of these opinions provides guidance to the DPPs on

14   which plaintiffs will be subject to a binding arbitration agreement.  Sieber and Thompson both

15   logged in to JLI's website through a screen substantially identical to one the Court has held gave

16   rise to an agreement to arbitrate—the only difference being that the relevant text was below, not

17   above, the "Login" button; a distinction two holdings of the Ninth Circuit have shown to be

18   irrelevant.

19      In its August 2021 decision, the Court found that three prior plaintiffs had agreed to arbitrate

20   their claims when they checked a "click box" affirmatively assenting to JLI's Terms and Conditions

21   while creating the accounts on JLI's website used to purchase the products at issue.  *See In re Juul*

22   *Labs, Inc.*, 555 F. Supp. 3d 932 (N.D. Cal. 2021) ("*In re Juul I*").  The "clickbox"—added by JLI

23   on August 9, 2018—cured what the Court had determined in an earlier case to be a deficiency in a

24   prior (pre-August 2018) version of JLI's website—that is, a lack of a clear manifestation of

25   agreement to arbitrate.  *See Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728, 763–764 (N.D. Cal.

26   2019).

27   _____

28   [4]      JLI does not assert that the claims of Plaintiff Devin Black are subject to arbitration, although
    his claim for prospective relief in Count Three should be dismissed.

1    In its January 2022 Order, the Court did not rule on the version of JLI's log-in screen as

2  modified in 2019 to include a notice to users immediately below the sign-in button that, by signing

3  in, they were agreeing to JLI's Terms and Conditions, a modification the Court did call "a material,

4  significant change." *In re Juul Labs*, *Inc.*, No. 20-cv-02345, 2022 WL 137627, at *2 (N.D. Cal. Jan.

5  14, 2022) ("*In re Juul II*").  Instead, the Court found that the two plaintiffs named in that complaint

6  entered into a binding arbitration agreement with JLI when they logged into JLI's website in 2021,

7  after JLI had modified the log-in screen again to move the notice above the sign-in button. *Id.* at

8  *2–3.  The only distinction between the 2019 and 2021 versions of the log-in screen is the position

9  of that notice with respect to the sign-in button, a distinction the Ninth Circuit and other courts in

10  this circuit have found immaterial to the end result.  *See Dohrmann v. Intuit, Inc.*, 823 F. App'x 482,

11  484–85 (9th Cir. 2020); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020).

12    In the TAC, Plaintiffs Sieber and Thompson contend that they created their accounts on JLI's

13  website prior to August 9, 2018 when JLI added the "clickbox" to its account creation page, and

14  therefore, they are not subject to the Court's August 19, 2021 Order.  But JLI's user data shows that

15  Sieber logged in twice and Thompson six times through the log-in screens as modified by JLI in

16  2019 to include immediately below the sign-in button the clear and unambiguous notice that "By

17  proceeding, you agree to our Terms and Conditions."  Just as prior plaintiffs manifested their

18  agreement with their sign-ins through the 2021 version of the screen, Sieber and Thompson did so

19  through their sign-ins at the end of 2019.

20    The Court has already decided that the arbitration agreement at issue was not procedurally

21  or substantively unconscionable and encompasses the claims asserted (including those brought

22  against the Individual Defendants, JLI directors Nicholas Pritzker and Riaz Valani).  The Court has

23  also found that the question of whether agreements to arbitrate apply to prior purchasers is a question

24  for the arbitrator to decide.  Those conclusions hold equally true for the newly named Plaintiffs,

25  whose allegations are identical and who are subject to identical website Terms and Conditions.

26    And setting aside Plaintiffs Sieber's and Thompson's obligations to arbitrate their claims,

27  all of the DPPs lack Article III standing to obtain prospective relief.  The December 2018 transaction

28  that forms the basis of the antitrust claims in this matter has been unwound.  In addition, the DPPs

1  have not pled that they will suffer any prospective harm because none have purchased a JLI product

2  from JLI's website in four or more years.  The Court should accordingly dismiss the claim for

3  injunctive relief, Count Three of the TAC.

4  **II.**    **STATEMENT OF FACTS**

5         **A.    The DPPs' Allegations**

6         The Court has addressed the substance of the DPPs' allegations in a prior decision in this

7  case.  *See In re Juul I*, 555 F. Supp. 3d at 940–944.  Those allegations are drawn virtually entirely

8  from allegations made against JLI and Altria in an administrative complaint filed by the FTC.  The

9  complaint was adjudicated earlier this year.  On February 15, 2022, in a 263-page opinion, the FTC's

10  Chief Administrative Law Judge dismissed the agency's action finding that "[u]pon full

11  consideration of the entire record … the evidence fails to prove the alleged agreement between

12  Respondents for Altria to remove its then-existing e-cigarette products from the market in exchange

13  for entering into the Transaction with JLI.  In addition, the evidence fails to prove that the non-

14  compete provision, agreed to as part of the Transaction, unreasonably restrained future competition

15  from Altria in the alleged e-cigarette market." *See* FTC Initial Decision at 2.  On June 30, 2023, the

16  FTC issued an Order vacating the Initial Decision and dismissing the administrative complaint in

17  light of the unwinding of the transaction between Altria and JLI that formed the basis of the

18  allegations.  *See* FTC Order at 3–4.  Notwithstanding the demonstrably meritless nature of Plaintiffs'

19  claims, in this procedural posture JLI and the Individual Defendants treat them as if they were true.

20         This case relates to competition in the sale of "e-vapor" products, which are electronic

21  devices that deliver nicotine to a user by aerosolizing a liquid nicotine solution.  TAC ¶¶ 1, 2.  As

22  alleged by the DPPs, JLI's product, "JUUL," is a pod-based e-vapor product that consists of a

23  device, "e-liquid" pods (also called "JUULpods"), and a charger.  TAC ¶ 50.  JUULpods contain a

24  proprietary fluid that includes nicotine, and that fluid is aerosolized by the device and inhaled by

25  the user.  TAC ¶¶ 51, 52. The DPPs allege that the liquid nicotine solution comes in traditional

26  tobacco and menthol flavors.  TAC ¶ 118, 134.  Prior to an FDA ban on all non-tobacco/non-menthol

27  flavors that went into effect February 2020, it also came in other non-traditional flavors like Mango,

28

1    Cucumber, and Creme.  TAC ¶ 118, 134.  Plaintiffs allege that the relevant market is "the Closed-

2    System E-Vapor market" in the United States.  TAC ¶¶ 111, 127.

3           The crux of the DPPs' allegations is a series of agreements between JLI and Altria entered

4    into in December 2018.  The DPPs also allege that JLI and Altria took steps to implement a separate,

5    unwritten anticompetitive agreement for Altria to wind down its Closed-System E-Vapor business.

6    TAC ¶¶ 7, 81, 82, 83.  On December 20, 2018, JLI and Altria executed a series of agreements

7    providing that Altria would acquire a 35% non-voting stake in JLI for $12.8 billion (the

8    "Transaction").  TAC ¶¶ 8, 92–93.  Pursuant to a Services Agreement, Altria would provide services

9    to support the JLI product, such as leasing retail shelf space to JLI and providing regulatory

10   consulting services, distribution support, and marketing and sales services.  TAC ¶ 97.  Altria also

11   agreed to grant JLI a license to its e-vapor intellectual property.  TAC ¶ 99.  The Transaction also

12   included a so-called "non-compete" provision that was ancillary to the agreement for services.  TAC

13   ¶ 95.

14          All of the DPPs' theories of antitrust injury—price, output, and innovation—flow from the

15   alleged anticompetitive conduct that began no earlier than October 2018 and from the Transaction

16   executed in December 2018.  *See* TAC ¶¶ 139–151.

17          **B.      Altria Terminated the Non-Compete Agreement and Relinquished All**
             **Economic Stake in JLI**

18

19          On September 29, 2022, Altria unilaterally exercised its option to be released from the non-

20   compete provision ancillary to the agreement for services.  *See* Altria Group, Inc., Current Report

     (Form 8-K) (Sept. 30, 2022), Bamberger Decl. Ex. C; *see also Altria Grp., Inc. and JUUL Labs,*

21   *Inc.*, Docket No. 9393 (F.T.C. Nov. 10, 2022) (Order Granting Mot. for Official Notice of

22   Termination of the Non-Compete), Bamberger Decl. Ex. D.  And on March 3, 2023, Altria

23   relinquished its 35% ownership interest in JLI obtained through the Transaction, "marking the full

24   unwinding of Altria's 2018 minority investment in JLI."  *Altria Grp., Inc. and JUUL Labs, Inc.*,

25   Docket No. 9393, at 1 (F.T.C. Mar. 6, 2023) (Mot. to Take Official Notice and to Dismiss or Stay),

26   Bamberger Decl. Ex. E; *see also* Altria Group, Inc., Current Report (Form 8-K) (Mar. 6, 2023),

27   Bamberger Decl. Ex. F; *Altria Grp., Inc. and JUUL Labs, Inc.*, Docket No. 9393 (F.T.C. May 4,

28

2023) (Order Taking Official Notice and Withdrawing Proceeding From Adjudication), Bamberger Decl. Ex. G.  Altria now no longer has any economic stake in JLI, and all relevant agreements executed as part of the Transaction—including the so-called "non-compete provision"—have been terminated.  On this basis, the FTC dismissed its complaint against JLI and Altria.  *See* FTC Order at 3.  On the same day Altria unwound its ownership of JLI, it began actively competing *against* JLI through its purchase of 100% of NJOY, a company that sells a similar e-vapor product to JLI.  *See* Altria Group, Inc., Current Report (Form 8-K) (Mar. 6, 2023), Bamberger Decl. Ex. F; *Altria Grp., Inc. and JUUL Labs, Inc.*, Docket No. 9393 (F.T.C. May 4, 2023) (Order Taking Official Notice and Withdrawing Proceeding From Adjudication), Bamberger Decl. Ex. G.

**C.**     **The Court's Order In *In re Juul I* Establishes That Plaintiffs' Claims Are Subject To Arbitration If They Assented To JLI's Website Terms and Conditions**

This is the fourth time this Court has been asked to construe whether claims by those who purchased products from JLI's website were required to be submitted to arbitration.  The Court's first decision on this issue in *Colgate* construed the effect of creating an accounting using versions of JLI's combined account creation and log-in screen in place prior to August 9, 2018.  402 F. Supp. 3d 728.  The Court found in *Colgate* that the version of the website considered there did not include any "clickbox" or other affirmative manifestation of assent, and that the format of JLI's website in place at the time was insufficient to give notice to the plaintiffs in that case that merely by using the website they were agreeing to the website Terms and Conditions.  *Id.* at 762–66.

In August 2021, the Court ruled on the effect of creating an account using a revised version of JLI's combined account creation and log-in screen, one that was first put in place on August 9, 2018.  The Court distinguished this iteration of the screen from the one considered in *Colgate* and found that "the addition of the affirmative assent clickbox, drawing attention to the text immediately following that contains the somewhat highlighted hyperlinked Terms and Conditions links, does change the analysis."  *In re Juul I*, 555 F. Supp. 3d at 951.  The Court also considered that the version of JLI's website in place after August 2018 "also support[ed] a finding of constructive assent" in that it "was relatively clear and uncluttered" and that "[a]s of and after August 9, 2018, the Terms and Conditions and Privacy Policy hyperlinks *were* in a different shade of text and in a

different font-style.  And by 2019, the hyperlinks following the clickbox were underlined and for part of that period also italicized." *Id.*  The Court compelled three Direct Purchaser Plaintiffs—Anthony Martinez, Jessica McGee, and Mallory Flannery—to submit their claims to arbitration. *Id.* at 957.  The Court held that all three had agreed to arbitrate their claims when they signed up for accounts on JLI's website between August 2018 and July 2019 and were required to "affirmatively check a box ('clickbox') on each version of the 'Log In/Sign Up' page they were presented, establishing their assent to the hyperlinked Terms and Conditions that governed the terms of plaintiffs' access to and use of the site *and* their agreement to arbitrate claims and waive a right to pursue a class action." *Id.* at 944 (emphasis added); *see also id.* at 969 (granting motion).

In granting JLI's motion to compel arbitration with respect to the claims against Martinez, McGee, and Flannery, the Court rejected a range of arguments made by them, including that the arbitration agreement was procedurally or substantively unconscionable, *id.* at 952–955, and that it was an unenforceable prospective waiver of rights, *id.* at 955–956.  The Court also compelled the plaintiffs to arbitrate their claims against two JLI directors, Nicholas Pritzker and Riaz Valani. *Id.* at 956–957.  The Court did, however, grant leave for the complaint to be amended to "substitute a named direct purchaser plaintiff who purchased directly from JLI prior to August 9, 2018 or who otherwise is not subject to JLI's Terms and Conditions for direct purchases on or after August 9, 2018." *Id.* at 957.

### D. The Court's Order in *In re Juul II* Establishes that Log-Ins through JLI's Later Log-In Screens Create a Binding Arbitration Agreement

The DPPs' second attempt to name plaintiffs whose claims were not subject to arbitration fared no better than the first.  In its January 2022 Order, the Court compelled two more plaintiffs named by the Direct Purchasers to arbitration because both Jonathan Burgher and Anthony Lana had logged into their www.juul.com accounts through a landing page modified as of April 2021. *In re Juul II*, 2022 WL 137627, at *2–3.  The Court observed that the April 2021 version of the log-in page included a gray box with a disclosure that, "By proceeding, you agree to our Terms and Conditions," with "Terms and Conditions" appearing in a blue, underlined hyperlink. *Id.*  For the April 2021 screen, the box with this language was "placed immediately *above* the 'LOG INTO MY

1   ACCOUNT' button." *Id.* at *2.  The Court held that this screen was "sufficient to put a reasonably

2   prudent user on inquiry notice to find constructive assent to the Arbitration Policy contained in the

3   Terms and Conditions." *Id.* at *2.

4       Because it was otherwise compelling the plaintiffs' claims to arbitration, the Court declined

5   to rule on whether sign-ins via the iteration of the log-in screen that immediately preceded the April

6   2021 version resulted in an enforceable agreement to arbitrate.  *Id.*  The only difference between

7   these two versions of these screens is the placement of the disclosure language:  in the earlier

8   version, the disclaimer language was placed immediately below the sign-in button; in the most

9   recent version, JLI moved that same language to be placed directly above the sign-in button.  *Id.*

10      **E.      Sieber, Black, and Thompson Accessed and Purchased Products From JLI's
                Website Between 2018 and 2019**

11

12      Plaintiffs Sieber, Black, and Thompson are alleged purchasers of e-vapor products from JLI,

13  and they purport to represent a class of such "Direct Purchaser Plaintiffs."  Mr. Sieber's most recent

14  purchase from JLI was an auto-shipment on September 30, 2019.  *See also*, Declaration of Franklin

15  Sean Alexander Schultz ("Schultz Decl.") ¶ 3a, Ex. 1.  Mr. Thompson's most recent purchase from

16  JLI was a purchase on October 7, 2019.  *Id* ¶ 3b, Ex. 2.  Mr. Black's most recent purchase from JLI

17  was an auto-shipment on May 5, 2019.  *Id* ¶ 3c, Ex. 3.  Since these dates, none of these Plaintiffs

18  have made a single additional purchase from JLI.  The dates of these purchases are established by

19  JLI's records and are not in conflict with Plaintiffs' allegations—which assert only that each of them

20  "purchased Closed-System E-Vapor products," without specifying when.  TAC ¶¶ 13–15.  To make

21  these purchases, each accessed the JLI website, created an account, and signed into that account to

22  verify their age and make their purchases.  Schultz Decl. ¶ 2–3.  The full transaction history of each

23  plaintiff is set out in the Declaration of Franklin Sean Alexander Schultz.

        **F.      Sieber and Thompson Agreed to the JLI Website Terms and Conditions in 2019
24              When They Signed In Multiple Times**

25      Both Sieber and Thompson created their accounts in June 2018 and logged in to their

26  accounts several times in late 2019, providing and confirming their assent to be bound by JLI's

27  Terms and Conditions, including the arbitration provision.  Sieber signed into his account twice on

28  October 18, 2019.  Schultz Decl. ¶ 3a, Ex. 1.  Thompson signed into his account six times in late

2019—on September 21, 2019, September 24, 2019, September 30, 2019, October 7, 2019, October 9, 2019, and October 21, 2019.  *Id.* ¶ 3b, Ex. 2.  On each of these sign-ins, both Sieber and Thompson would have seen the sign-in page shown in **Figure 1**, below:



**Figure 1**

     **Figure 1** depicts the format of the screen between September 2019 and March 2020.  The screen made blaringly clear that "by proceeding" a customer was agreeing to the "Terms and Conditions"—which were obviously available via a prominent hyperlink.  Indeed, the only difference between this screen and the 2021 screen that the Court held was sufficient to establish the plaintiffs' consent to arbitrate in *In re Juul II* is that the text box is below rather than above the "Sign In" button.  But that difference is immaterial to whether a reasonable consumer confronted by this screen would have understood that he or she was agreeing to the Terms and Conditions.  As the Court has previously recognized, at the time of these log-ins, Sieber and Thompson assented to JLI's Terms and Conditions, including the arbitration provision.

### G.    The Arbitration Agreement Agreed To By Plaintiffs Was Materially Identical To The One The Court Has Already Enforced

     The Court has already considered the language of the relevant arbitration agreement and found that it covers this dispute.  Although minor revisions were made over time, the relevant arbitration and class action waiver terms of the JLI website Terms and Conditions in place in 2017,

2018, 2019, 2020, and 2021 were materially identical to the terms that the Court enforced in *In re Juul I* and again in *In re Juul II*. The agreement to arbitrate and class action waiver were prominently presented, clearly explained, and unambiguous:

> **GOVERNING LAW, VENUE, AND CLASS ACTION /JURY TRIAL WAIVER**
>
> [*      *      *]
>
> Arbitration. Read this section carefully because it requires the parties to arbitrate their disputes and limits the manner in which you can seek relief from JUUL Labs. For any dispute with JUUL Labs, you agree to first contact us via email and attempt to resolve the dispute with us informally. In the unlikely event that JUUL Labs has not been able to resolve a dispute it has with you after sixty (60) days, **we each agree to resolve any claim, dispute, or controversy (excluding any claims for injunctive or other equitable relief as provided below) arising out of or in connection with or relating to these Terms, or the breach or alleged breach thereof (collectively, "Claims"), by binding arbitration by JAMS, under the Optional Expedited Arbitration Procedures then in effect for JAMS . . . .** Nothing in this Section shall be deemed as preventing JUUL Labs from seeking injunctive or other equitable relief from the courts as necessary to prevent the actual or threatened infringement, misappropriation, or violation of our data security, Intellectual Property Rights or other proprietary rights.
>
> **Class Action/Jury Trial Waiver.** With respect to all persons and entities, regardless of whether they have obtained or used the Website or JUUL Labs Products or services for personal, commercial or other purposes, all claims must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class action, collective action, private attorney general action or other representative proceeding. This waiver applies to class arbitration, and, unless we agree otherwise, the arbitrator may not consolidate more than one person's claims. You agree that, by entering into this agreement, you and JUUL Labs are each waiving the right to a trial by jury or to participate in a class action, collective action, private attorney general action, or other representative proceeding of any kind.

Schultz Decl. Ex. 5; *see also id.*, Exs. 6–7 (identical in relevant part) (emphasis added). The Terms and Conditions in place when Plaintiffs created their accounts were governed by California law. *Id.*

In briefing that led to the Court's decisions in *In re Juul I* and *In re Juul II*, the plaintiffs did not dispute that their claims in this case fall within the scope of this agreement to arbitrate, and with the Court found in *In re Juul II* that the scope of arbitration is ultimately a question for the arbitrator to determine.

1    **III.    <u>ARGUMENT</u>**

2        The claims of two of the named DPPs, Sieber and Thompson, must be compelled to

3    arbitration because they agreed to binding arbitration through their assent to JLI's website's Terms

4    and Conditions.

5        In addition, setting aside their utter lack of merit as found on a full record by the FTC

6    Administrative Law Judge who dismissed the claims on which the allegations in this case are

7    modeled, the DPPs have failed to allege prospective harm and, accordingly, as to the claims for

8    prospective relief, they lack standing under Article III of the Constitution and a claim upon which

9    relief can be granted under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 7 of the Clayton

10   Act, 15 U.S.C. § 18.

11       **A.    <u>Plaintiffs Sieber and Thompson Agreed To Resolve This Dispute By Arbitration</u>**

12       In light of the Court's prior decisions in *In re Juul I* and *In re Juul II*, the only pertinent

13   question as to Plaintiffs Sieber and Thompson is whether they agreed to the JLI website Terms and

14   Conditions.  Applying the Court's prior decisions and decisions in this circuit, it is clear both did.

15       As the Court has recognized, "The FAA, 9 U.S.C. § 1 et seq., requires federal district courts

16   to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable

17   arbitration agreement. [] The FAA limits the district court's role to determining whether a valid

18   arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *In re*

19   *Juul I*, 555 F. Supp. 3d at 946–947 (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175

20   (9th Cir. 2014)).  On a motion to compel arbitration, "[t]he district court's 'role is limited to

21   determining whether a valid arbitration agreement exists and, if so, whether the agreement

22   encompasses the dispute at issue.'" *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168,

23   1173 (N.D. Cal. 2011) (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012

24   (9th Cir. 2004)).  After determining that arbitration should be compelled, "a district court may either

25   stay the action or dismiss it outright." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072,

26   1074 (9th Cir. 2014); *see also, e.g.*, *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *18 (N.D.

27   Cal. June 25, 2014) ("When arbitration is mandatory, courts have discretion to stay the case under

28   9 U.S.C. § 3 or dismiss the litigation entirely.").  The Federal Arbitration Act ("FAA"), 9 U.S.C.

§ 1, "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  In accordance with that pro-arbitration policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25.

Mr. Sieber and Mr. Thompson were each on notice of their agreement to JLI's Terms and Conditions, at least when they logged into their accounts in September and October 2019.  By that time, JLI had separated its landing page into two separate pages:  one for new users to create a www.juul.com account and a separate "Welcome Back" page for returning users to sign in to their existing accounts.  On the "Welcome Back" page, users were greeted with fields for their email and password above a "SIGN IN" button.  Immediately below that button, a notice appeared in a greyed out box reading, "By proceeding, you agree to our Terms and Conditions," with "Terms and Conditions" appearing in blue, hyperlinked text.  In *In re Juul II*, the Court called this language a "material, significant change" from earlier screens that did not have similar language.  2022 WL 137627, at *2.  However, the Court declined to rule on this screen because the disclaimer language appeared below the "Sign In" button.  *Id.*  Instead, the Court ruled on the next iteration of the "Welcome Back" screen, which included the same disclaimer *above* the "Sign In" button.  *Id.*  The only difference between the sign-in screen the Court found sufficient in *In re Juul II* and the one Sieber saw when he signed in three times in October and November 2019 is the placement of this language below the sign-in button instead of above it.

The Ninth Circuit and other courts in this district have found that the placement of the disclaimer language below the sign in button does not change the outcome.  Specifically, in *Lee*, the Court enforced a consumer arbitration agreement with Ticketmaster because "each time he clicked the 'Sign In' button when signing into his Ticketmaster account, [] *three lines below the button*, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use.'" 817 F. App'x at 394 (emphasis added).  The Court observed that "it is easier to find mutual assent in cases dealing with clickwrap agreements," and "[w]e are 'more willing to find the requisite notice

for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with the use of the website.'"  *Id.* (quoting *Nguyen*, 763 F.3d at 1176).  The sign-in screen that formed the basis of the Ninth Circuit's opinion in *Lee* appears in **Figure 2** below:



**Figure 2**

Likewise in *Dohrmann*, the Ninth Circuit found "sufficient notice to a reasonably prudent internet user of [TurboTax's] Terms of Use, which include[d] an arbitration clause" where the user "was required to click a 'Sign In' button, *directly under which* the following language appeared: '*By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement.*'"  823 F. App'x at 484 (emphasis added).  "Turbo Terms of Use," "TurboTax Terms of Use," and "Privacy Statements" were each highlighted in "hyperlinks which, if clicked, directed the user to a new webpage."  *Id.*  Based on this display, the Ninth Circuit concluded that "TurboTax's website . . . required users to 'affirmatively acknowledge' the agreement before proceeding, and the website contained 'explicit textual notice that continued use

1    will act as a manifestation of the user's intent to be bound.'"  *Id.*  (quoting *Nguyen*, 763 F.3d at

2    1176–1177).  The sign in screen at issue in *Dohrmann* appears in **Figure 3** below:



**Figure 3**

16       The Ninth Circuit gave no indication in either *Lee* or *Dohrmann* that the placement of the

17   notice language for the sign-in wrap agreements at issue below the sign in button put the sufficiency

18   of that notice in question, and in each case the Court held that the plaintiff had consented to arbitrate.

19   As shown in **Figures 2** and **3** above, the placement of the notice language on the sign-in screens

20   was *less* conspicuous than that found in the 2019 version of JLI's sign-in screen.  Unlike *Lee*, the

21   notice as shown in **Figure 1** appears *directly below* the "SIGN IN" button, not three lines below

22   with each line above it including a different link and in larger font.  And unlike *Dohrmann*, the

23   notice language on JLI's screen is set apart in a greyed out box intended to draw attention to the

24   language.

25       Other courts in this circuit have followed the same approach as in *Lee* and *Dohrmann* and

26   have enforced arbitration agreements based on similar consents.  For example, in *Hooper v. Jerry*

27   *Ins. Agency, LLC*, No. 22-CV-04232, 2023 WL 3992130, at *4–5 (N.D. Cal. June 1, 2023), Judge

28   Tigar held that the plaintiff had "reasonably conspicuous notice" of the website's Terms and

Conditions for a similar sign-in screen on an insurer's website that included the disclaimer language below the "Continue" button, with the links to the Terms and Conditions shown in pink font, as illustrated in **Figure 4**:



**Figure 4**

Similarly, in *Regan v. Pinger, Inc.*, No. 20-CV-02221, 2021 WL 706465, at *6 (N.D. Cal. Feb. 23, 2021), Judge Koh held that the plaintiff was "sufficiently informed" that he was agreeing to the terms of service "by clicking the 'Create Account,' 'For Professional Use,' 'For Personal Use,' or 'Login' button" where that disclaimer appeared *below both* of the buttons mentioned in the disclaimer, as illustrated in the screen shown in **Figure 5**:



**Figure 5**

Motion to Compel Arbitration or Strike Class Allegations

*Id* at \*1.[5]  And in *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 582, 587 (N.D. Cal. 2020), Judge Tigar found that DoorDash's Terms and Conditions, placed *directly below* the "Sign Up" button with a statement that read "By tapping Sign Up . . . you agree to our Terms and Conditions and Privacy Statement" and had the words "'Terms and Conditions' . . . hyperlinked to the DoorDash Terms and Conditions in effect at the time," was sufficient to bind the plaintiffs to an arbitration provision in the Terms and Conditions.  *See also Oberstein v. Live Nation Ent., Inc.*, No. CV 20-3888, 2021 WL 4772885, at \*6 (C.D. Cal. Sept. 20, 2021) (finding plaintiffs had agreed to terms of use where the links to the terms of use were "placed conspicuously close to the buttons that the users are required to press to sign up, sign in, or complete a purchase.");  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing choice of forum clause in Facebook's terms of service based on agreement to terms hyperlinked under "Sign Up" button where "[t]he phrase 'Terms of Service' is underlined, an indication that the phrase is a hyperlink[.]").  All of these cases confirm that Plaintiffs here had sufficient notice that they were agreeing to the Terms and Conditions, including the arbitration provision, when they completed transactions or logged into JLI's website.

As the Court has recognized, the question is not whether Plaintiffs had "actual knowledge" that by using the JLI website they were agreeing to arbitrate their claims with JLI.  *In re Juul I*, 555 F. Supp. 3d at 949.  Rather, "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them."  *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017); *Lee*, 817 F. App'x at 395 (a party "'cannot avoid the terms of [the] contract on the ground that he ... failed to read it before signing,' *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049, 107 Cal. Rptr. 2d 645 (2001), especially

---

[5]     The Court also recognized that the user in *Pinger* "was also repeatedly reminded that he agreed to the TOS by creating an account when [he] clicked the 'Login' button upon returning to use the Sideline App." *Id.* at \*6.

1   when he 'had a legitimate *opportunity* to review it,' *Mohamed v. Uber Tech., Inc.*, 109 F. Supp. 3d

2   1185, 1198 (N.D. Cal. June 9, 2015)").

3      **B.      Plaintiffs' Claims Are Within The Scope Of The Agreement To Arbitrate**

4      The Court has already twice compelled arbitration of identical claims, on an identical

5   complaint, by three other plaintiffs who agreed to arbitrate under JLI website Terms and Conditions

6   that are materially identical to those at issue here.  *See In re Juul I*, 555 F. Supp. 3d at 949–957; *In*

7   *re Juul II*, 2022 WL 137627, at *2–3.  The same outcome should follow here.

8      In *In re Juul II*, the Court found that "prior uses and purchases" by the named plaintiffs "are

9   arguably covered by the Arbitration Policy" but noted that "the arbitrator will be the final arbiter of

10   the scope of the Arbitration Policy."  2022 WL 137627, at *3.  The same result should obtain here

11   for the same reasons cited in JLI's prior Motion to Compel.  ECF No. 284 at 18–22.  There is no

12   material difference between the agreements at issue in *In re Juul II* and those at issue here.  Sieber

13   and Thompson entered into a binding arbitration agreement in 2019, and that agreement arguably

14   covers their prior purchases.

15      **C.      If The Court Declines To Compel Arbitration, Plaintiffs' Class Action**
            **Allegations Should Be Struck**

16

17      In *In re Juul I* and *In re Juul II*, the Court did not reach the question of whether Plaintiffs'

18   class action allegations should be struck because it concluded that their claims should be referred to

19   arbitration.  It did, however, conclude in *In re Juul I* that the plaintiffs' "assent to the … class action

20   waiver has been demonstrated."  *In re Juul I*, 555 F. Supp. 3d at 952.  The same is true here as to

21   Sieber and Thompson, for the reasons discussed above.  And while Sieber and Thompson should

22   likewise be required to arbitrate their claims, if the Court were to decline to order that, it should still

23   strike plaintiffs' class allegations.  "Rule 12(f) … grants courts the authority to strike class

24   allegations that 'cannot possibly move forward on a classwide basis.'"  *Am. W. Door & Trim v. Arch*

25   *Specialty Ins. Co.*, No. CV 15–00153, 2015 WL 1266787, at *3 (C.D. Cal. Mar. 18, 2015) (*quoting*

26   *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)); *Sanders v. Apple, Inc.*, 672 F.

27   Supp. 2d 978, 989–90 (N.D. Cal. 2009) ("Where the complaint demonstrates that a class action

28   cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to

discovery."); *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1095 (S.D. Cal. 2016) (A "court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained."); *see also Gutierrez v. Jolt Delivery, LLC*, No. LACV 17-8380, 2018 WL 6118581, at *5 (C.D. Cal. Aug. 7, 2018) (dismissing class claims and compelling individual claims to arbitration).

> **D.**   **Plaintiffs' Claims Against The Individual Defendants Should Be Compelled To Arbitration, As In *In re Juul I* and *In re Juul II***

In *In re Juul I*, the Court held that the plaintiffs' claims against the Individual Defendants, Riaz Valani and Nicholas Pritzker, were covered by the agreement to arbitrate in JLI's website Terms and Conditions and compelled the plaintiffs to arbitrate those claims. *In re Juul I*, 555 F. Supp. 3d at 956–957. Similarly, in *In re Juul II*, the Court compelled to arbitration the claims against the Individual Defendants. 2022 WL 137627, at *4. The Individual Defendants accordingly request that Mr. Thompson and Mr. Sieber be compelled to arbitrate.

> **E.**   **The Claims For Injunctive Relief Should Be Dismissed For Lack of Article III Standing**

All three DPPs fail to establish Article III standing for their claims for prospective relief in Count Three of the TAC, and thus, this Court lacks subject matter jurisdiction over them. *See* Fed. R. Civ. P. 12(b)(1). To establish Article III standing, Plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* To meet their burden, Plaintiffs must affirmatively plead facts demonstrating "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.''" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Further, "Article III standing must be measured claim by claim." *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 924 (N.D. Cal. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

"To demonstrate constitutional standing for 'injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'''

1  *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 906 (N.D. Cal. 2020) (quoting *Davidson v. Kimberly-*

2  *Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)).   "An allegation of '*possible* future injury' is

3  insufficient; the plaintiff must show an injury that is '*certainly* impe[n]ding.'"   *Anderson v. Apple*

4  *Inc.*, 500 F. Supp. 3d 993, 1007 (N.D. Cal. 2020) (Orrick, J.) (quoting *Clapper v. Amnesty Int'l USA*,

5  568 U.S. 398, 409 (2013)).   Plaintiffs bear the burden of establishing this kind of imminent injury.

6  *See In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1211 (N.D. Cal. 2014).   Where a plaintiff

7  has failed to show a "real and immediate danger of recurrent violations" by the defendant in an

8  antitrust action, claims for injunctive must be dismissed for lack of subject matter jurisdiction.   *See*

9  *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 17 (D.D.C. 2004).

10          The DPPs allegations do not—and could never—plausibly allege a certain, impending future

11  injury.   The DPPs seek two forms of prospective relief:   (1) an order declaring the agreements that

12  comprise the Transaction are "invalid and unenforceable" and (2) "equitable and injunctive relief .

13  . . to correct the anticompetitive effects" allegedly resulting from the Transaction.   TAC ¶¶ 180,

14  183.   The declaratory relief sought by the DPPs cannot be tied to remediation of a future harm

15  because the agreements that comprised the Transaction have already been unwound and are no

16  longer in effect, meaning they cannot pose any threat of future harm to the DPPs, depriving the

17  DPPs of standing to seek such relief and rendering it moot.   As for the injunctive relief, the DPPs

18  have not made any allegation that there would be any likelihood of ongoing anticompetitive harm,

19  even after the Transaction is cancelled, nor does their complaint identify any ongoing conduct by

20  JLI or Altria that the Court could enjoin. That is all to say nothing of the fact that these DPPs, none

21  of whom allege having purchased products from JLI's website in several years, cannot plausibly

22  contend that any future injury was imminent in any event.

23          Injunctive relief is not warranted where there is no "current or future threat of

24  anticompetitive harm."   *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1005 (9th Cir. 2020).   In *Qualcomm*,

25  the Ninth Circuit noted that an injunction should not issue in connection with allegedly

26  anticompetitive agreements because it was "undisputed that these agreements do not pose" any such

27  threat where the defendant "itself terminated the agreements . . . two years before the FTC filed its

28  action."   *Id.*   Here, just as in that case, Altria has terminated the Transaction and associated

Motion to Compel Arbitration or Strike Class Allegations

agreements and has divested its economic interest in JLI, meaning the Transaction poses no real or immediate threat of future harm or violations of antitrust laws. Thus, injunctive relief would be improper.

Other courts have dismissed claims for prospective relief under similar circumstances. In *In re Nifedipine*, for example, the Court dismissed the plaintiffs' claims for injunctive relief where the defendants entered into a consent order with the FTC that prohibited the defendants from future anticompetitive activity and imposed requirements on the defendants for product development. 335 F. Supp. 2d at 11, 16–17. The Court found insufficient the plaintiffs' bald allegation that the defendants were continuing their unlawful, anticompetitive activity—even after the consent order— as "unsupported by facts." *Id.* at 18. Similarly, in *In re DDAVP Indirect Purchaser Antitrust Litig.*, the Court dismissed antitrust claims for injunctive relief where the patent underlying the alleged anticompetitive activity had been held to be unenforceable and the plaintiff had made only "wholly speculative" allegations about potential future anticompetitive conduct. 903 F. Supp. 2d 198, 210– 211 (S.D.N.Y. 2012).

Like the consent order in *In re Nifedipine* and the holding of the patent's unenforceability in *In re DDAVP*, the complete unwinding of the Transaction precludes any remedial effect of the prospective relief sought by the DPPs in Count Three of the TAC. Likewise, the TAC does not contain any plausible allegations that would support a finding of *any* potential future violations, much less a "real or actual" danger of such violations. The TAC alleges only that the alleged anticompetitive injuries "will continue unless halted." TAC ¶ 181. This allegation lacks any factual basis and cannot support the finding of a prospective injury. Even if taken as true, the allegation goes only to continuing future damages, not harm arising from future conduct. Continuing future damages cannot support standing for prospective relief. *See In re Nifedipine*, 335 F. Supp. 2d at 19 ("[L]ingering monetary injury, without any ongoing threat of recurrent violations, is not sufficient to confer standing to seek an injunction."). In fact, the FTC itself dismissed the administrative complaint against Altria and JLI because it found that the unwinding of the Transaction rendered "the pursuit of th[e] proceeding no longer in the public interest." *See* FTC Order at 3. Especially in light of these facts, the allegations are insufficient to confer standing for the prospective relief the

1    DPPs seek in Count Three of the TAC.

2         In addition, the DPPs cannot show that they themselves will suffer a real and imminent

3    prospective injury absent injunctive relief.  In the TAC, the DPPs do not even assert that they are

4    continuing to purchase products from JLI or that they have any intent to do so in the future.  Nor

5    could they make such an allegation in light of the current state of affairs:  Plaintiffs have not

6    purchased from JLI in more than four years.  There is no indication of any intent to make any future

7    purchases from JLI either.  As the Supreme Court has made clear, considerably more than theoretical

8    possible future injury is required for a consumer to bring a claim for injunctive relief.  A "profession

9    of an 'inten[t]' … is simply not enough" to satisfy Article III. *Lujan*, 504 U.S. at 563–64 (finding

10   insufficient allegations by one plaintiff that she "intend[ed] to go back to Sri Lanka," and another

11   who alleged she "intend[ed]" to go back to Egypt).  "Such 'some day' intentions—without any

12   description of concrete plans, or indeed even any specification of *when* the some day will be—do

13   not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 564; *see also*

14   *Clapper*, 568 U.S. at 409 (holding that a "*possible* future injury" does not confer standing for

15   injunctive relief—only a "*certainly* impending" injury does) (quoting *Whitmore*, 495 U.S. at 158).

16        The complete lack of *any* allegation of a potential future injury is fatal to the DPPs claim for

17   injunctive and declaratory relief in Count Three.  Plaintiffs plead no detail about any particular

18   products they intend to buy or when they plan to make these purchases.  The lack of any allegations

19   of such is especially telling considering the DPPs did include them in the prior iteration of their

20   complaint—including with respect to Sieber.  *Compare* Second Am. Consolidated Class Action

21   Compl., ECF No. 305 at ¶ 13 (alleging that Sieber "continues to purchase Closed-System E-Vapor

22   products, including devices and pods, from JLI, and intends to continue doing so in the future");

23   *with* TAC at ¶ 13 (describing Sieber but excluding that language).

24

25

26

27

28

1    IV.    **CONCLUSION**

2          For the foregoing reasons, JLI and the Individual Defendants respectfully ask that the Court

3    grant their motion to compel arbitration and dismiss Plaintiffs Sieber and Thompson from this

4    litigation, or in the alternative, strike these Plaintiffs' class action allegations; and JLI additionally

5    requests that the Court dismiss the DPPs' claims for prospective relief in Count Three of the TAC

6    under Rule 12(b)(1).

7

     DATED:  October 27, 2023
8
                       Respectfully submitted,
9

10   **CLEARY GOTTLIEB STEEN &**              **KELLOGG HANSEN TODD FIGEL**
     **HAMILTON LLP**                         **& FREDERICK, P.L.L.C.**
11
     By:    _____/s/ Nowell D. Bamberger_____  By:    _____/s/ Michael J. Guzman_____
12             Nowell D. Bamberger                     Michael J. Guzman
                                               Mark C. Hansen (admitted *pro hac vice*)
13   David I. Gelfand (admitted *pro hac vice*))  Michael J. Guzman (admitted *pro hac*
     Jeremy Calsyn (SBN #25062)                *vice*)
14   Nowell D. Bamberger (admitted *pro hac vice*)  David L. Schwarz (CA Bar No. 206257)
     2112 Pennsylvania Avenue, NW              1615 M Street, N.W. Suite 400
15   Washington, D.C. 20037                    Washington, D.C. 20036
     Telephone:  (202) 974-1500                Telephone:  (202) 326-7900
16   Email:  dgelfand@cgsh.com                 Email:  mhansen@kellogghansen.com
               jcalsyn@cgsh.com                          mguzman@kellogghansen.com
17             nbamberger@cgsh.com                       dschwarz@kellogghansen.com
18
     *Counsel for Defendants Juul Labs, Inc.*  *Counsel for Nicholas Pritzker and Riaz*
19                                             *Valani*

20

21

22

23

24

25

26

27

28

## **FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Nowell D. Bamberger, attest that concurrence in the filing of this document has been obtained.

DATED:  October 27, 2023

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ Nowell D. Bamberger

Nowell D. Bamberger

Motion to Compel Arbitration or Strike Class Allegations