UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: JUUL Labs, Inc. Antitrust Litigation

Case No. 20-cv-02345-WHO

**ORDER GRANTING MOTION TO COMPEL AND DISMISS**

Re: Dkt. No. 365

Currently before me is the motion of defendant JUUL Labs, Inc. ("JLI") and two individual defendants Nicholas Pritzker and Riaz Valani ("Directors") to compel the claims of two of the named Direct Purchaser Plaintiffs (DPPs) to arbitration.[1]  Consistent with my prior analyses of JLI's changing website and Ninth Circuit precedent, I GRANT the motion to compel. Separately, JLI moves to dismiss the claim for injunctive relief stated in Count Three of the Third Amended Consolidated Class Action Complaint (TAC).[2]  In light of the unwinding of the 2018 agreement challenged in this lawsuit and Altria's purchase of a competitor to JLI, the claim for injunctive relief is implausible now.  The motion to dismiss the request for injunctive relief is GRANTED.

**DISCUSSION**

**I.   MOTION TO COMPEL**

JLI and the Directors move to compel the claims of two of the named DPPs, Jake Sieber and Robert Thompson, to arbitration.  I have addressed the arbitrability of DPP claims, based on

---

[1] Defendants do not seek to compel the third named DPP, Devin Black, to arbitration.

[2] The factual and procedural background of this action and legal standards governing these motions were discussed extensively in prior Orders and will not be repeated. *See* Dkt. Nos. 270, 304.

purchases made through JLI websites, three prior times. In my first decision, concerning versions of JLI's website in place in 2018, I concluded that the "hyperlink to the terms and conditions" on the sign up pages of JLI's website were not conspicuous enough to put plaintiffs on inquiry notice of JLI's arbitration provision. *Colgate v. JUUL Labs, Inc*., 402 F. Supp. 3d 728, 764-766 (N.D. Cal. 2019).

In my second decision, I determined that design changes on JLI's website made on or after August 9, 2018 and additional design changes in 2019 – namely the "addition of the affirmative assent clickbox, drawing attention to the text immediately following that contains the somewhat highlighted hyperlinked Terms and Conditions links" and that each of the "Log In/Sign Up pages was relatively clear and uncluttered" – changed the analysis and demonstrated constructive assent to JLI's arbitration provision. *In re Juul Labs, Inc., Antitrust Litig*., 555 F. Supp. 3d 932, 951-952 (N.D. Cal. 2021) (*JUUL I*).

In my third decision, I determined that further changes made to JLI website's "landing page" for returning users in April 2021, were "sufficient to put a reasonably prudent user on inquiry notice to find constructive assent to the Arbitration Policy contained in the Terms and Conditions." *In re Juul Labs, Inc., Antitrust Litig*., No. 20-CV-02345-WHO, 2022 WL 137627, at *2 (N.D. Cal. Jan. 14, 2022) (*JUUL II*). I did not reach – because it did not alter the outcome of the *JUUL II* Order – the question of whether changes made in July 2019 to the landing page were sufficient to establish constructive assent.

> That page, which JLI asserts Burgher would have encountered when he logged onto the site in April 2020, was reformulated as a "Welcome Back" screen where a user was prompted to enter their email and password and hit the "SIGN IN" button. MTC at 8, Figure 3. Beneath the "SIGN IN" button there is a disclosure in a greyed out box that "By proceeding, you agree to our Terms and Conditions." *Id*. The change in language – notifying users that by "proceeding" they would agree to hyperlinked Terms and Conditions – is a material, significant change. However, that disclosure is still placed beneath the SIGN IN button, so there remains a question whether that disclosure was sufficient to put a reasonably prudent user on inquiry notice.

*Id*. at *2.

According to JLI, the two named DPPs at issue in this motion – Sieber and Thompson –

1  logged onto the JLI site *after* the July 2019 changes were made but *before* the April 2021 changes
2  were made. Therefore, I must answer the question left unaddressed from my prior orders: was
3  sufficient inquiry notice provided to find that the user agreed to hyperlinked Terms and Conditions
4  given that JLI placed a disclosure *below* the SIGN IN button notifying return users that "by
5  proceeding" to use the site they would be agreeing to the Terms and Conditions, including the
6  arbitration provision, and without requiring other affirmative action.

7  Defendants argue that the answer is yes under Ninth Circuit authority.[3] In *Lee v.*
8  *Ticketmaster L.L.C*., 817 F. App'x 393 (9th Cir. 2020), the Ninth Circuit held that a disclosure
9  constituted sufficient constructive notice when it was placed three lines below the sign in button
10 notifying users that "by continuing" past the page, the user agreed to the hyperlinked "Terms of
11 Use." Plaintiffs attempt to distinguish *Lee* because there the hyperlinked Terms were also found
12 on a later page, above the place order button, and the plaintiff was a frequent visitor on the site
13 having "assented" 20 times during the relevant timeframe. *Id*. But the court in *Lee* determined
14 that constructive notice existed solely through use of the sign in button, given the proximate "by
15 continuing" warning. *Id*. at 394. The presence of the terms and conditions on another page, as
16 well as the frequency of Lee's continued use of the site, "only reinforces that he had many such
17 opportunities" to receive constructive notice. *Id*. at 395.

18 Defendants also rely on *Dohrmann v. Intuit, Inc*., 823 F. App'x 482 (9th Cir. 2020). There,
19 as here, after users entered their ID and password, they were "required to click a 'Sign In' button,
20 directly under which the following language appeared: 'By clicking Sign In, you agree to the
21 Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy
22 Statement.'" *Id*. at 484. The court noted that "the relevant warning language and hyperlink to the
23 Terms of Use were conspicuous – they were the only text on the webpage in italics, were located

---

[3] JLI asserts Sieber and Thompson signed into JLI's site six-times between September 21, 2019 and November 25, 2019. *See* Declaration of Franklin Sean Alexander Schultz [Dkt. No. 365-9]. Plaintiffs argue that they cannot verify this information because if they do, by logging into JLI's site, they may be agreeing to a revised arbitration agreement. JLI noted in its Reply that its counsel provided information relevant to the DPPs' purchases to plaintiffs' counsel, and at the hearing plaintiffs' counsel did not argue they needed discovery or would otherwise contest this issue further. Reply at 4 n.2.

3

directly below the sign-in button, and the sign-in page was relatively uncluttered" and concluded that "TurboTax's website therefore provided sufficient notice to a reasonably prudent internet user of its Terms of Use, which include an arbitration clause." *Id*. Plaintiffs contend that the sign in page here was materially different to the one in *Dohrmann*, arguing that assent cannot be found because the password recovery and account creation hyperlinks on the JLI landing page were more prominent (in black, bolded, and all capitals) as opposed to the hyperlinked terms and conditions (below the sign in button but in blue) and because the JLI page was more "cluttered" than in *Dohrmann*.

The only real distinction between the sign in page seen by Sieber and Thompson and the one I found adequate in *JUUL II* is the placement of the disclosure language with the hyperlinked Terms and Conditions immediately below the sign in button. In *JUUL II,* it was immediately above the sign in button. Both pages are relatively uncluttered. While the "Forgot Your Password?" hyperlink (in all caps and in bolded black) is perhaps a touch more prominent than the Terms and Conditions (in bolded blue), that touch of additional prominence was also present in the *JUUL II*. Considering the totality of the design of the sign in page at issue, there are no material differences from the ones in *Lee* or *Dohrmann*.

In addition, a number of recent opinions from this District have found adequate constructive notice when considering websites where the log in button was immediately above disclosures that, by clicking continue or by signing into an account, the user agreed to terms of use that included an arbitration agreement. *See, e.g*., *Hooper v. Jerry Ins. Agency, LLC*, No. 22-CV-04232-JST, 2023 WL 3992130 (N.D. Cal. June 1, 2023); *Regan v. Pinger, Inc*., No. 20-CV-02221-LHK, 2021 WL 706465, at *1 (N.D. Cal. Feb. 23, 2021). Plaintiffs cannot materially distinguish these cases either.

Instead, plaintiffs argue that "common sense" teaches that returning users like Sieber and Thompson would not read below the sign in button or have any incentive – absent some affirmative act like agreeing to a checkbox or being required to click on the hyperlinked terms of service before proceeding – to consider the disclosure immediately under the sign in button. But they cite no authority in support or authority finding a sign in page similar to one at issue did not

4

provide adequate constructive notice.

The DPPs request that if I grant the motion to compel as to Sieber and Thompson, I limit the "time period" to those who logged onto the JLI site between September 21, 2019 and November 25, 2019, as those are the only dates JLI's declarant attests to regarding the appearance of the JLI landing page. Plaintiffs note that JLI's log in and account creation pages have been continually altered over the proposed class period and, therefore, want to limit the impact of this ruling to that narrow window. *See generally* Schultz Declaration & Exhibits thereto; *see also* Oppo. at 10. I address only the issue before me, which is that Sieber and Thompson should be compelled to arbitration based on the evidentiary showing made by JLI.

Finally, the DPPs also ask for clarification regarding the provision in the arbitration agreement shortening the statute of limitations for claims from four years to one year. In the *JUUL I* Order, I concluded that the shortened statute of limitations provided was "significantly unconscionable" but readily severable from the arbitration provision. *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d at 955. What impact that ruling has on the claims of Sieber and Thompson is a matter for the arbitrator to decide.

JLI's motion to compel arbitration of the individual claims of Sieber and Thompson is GRANTED. The Director defendants joined the motion to compel, arguing that the JLI arbitration agreement covered the claims against them as well. The DPPs did not respond to this argument. Consistent with my prior Orders in *JUUL I* and *JUUL II*, the Directors' motion to compel is GRANTED as well.[4]

## II.   INJUNCTIVE RELIEF

JLI separately moves to dismiss the DPPs' request for injunctive relief, arguing that they lack Article III standing because the December 2018 transaction between JLI and Altria that formed the basis of the antitrust claims has been fully "unwound" and the injunctive relief claim is mooted as a result. JLI points to public records (specifically Form 8-K filings and rulings from

---

[4] As such, I do not need to reach the alternative argument that the class allegations should be struck in light of the class action waiver provisions in JLI's Terms and Conditions as applied to Sieber and Thompson. JLI clarified that it does not move to strike the class allegations with respect to DPP Black. Reply at 8.

5

the Federal Trade Commission ("FTC")) showing that Altria exercised its option to be released from the non-compete provision challenged in this case and relinquished its 35% ownership stake in JLI, "marking the full unwinding of Altria's 2018 minority investment in JLI." Altria Group, Inc. and JUUL Labs, Inc. Dkt. No. 9393 at 1 (F.T.C. Mar. 6. 2023) (Motion to Take Official Notice and to Dismiss or Stay), Ex. E to Declaration of Bamberger; *see also* Bamberger Ex. G (F.T.C. May 4, 2023 Order Taking Official Notice and Withdrawing Proceeding From Adjudication). JLI also points to the statements in the Altria's Form 8-K and FTC filings that Altria purchased a competitor to JUUL, NJOY, LLC, further diminishing the possibility of future alleged anti-competitive behavior between JLI and Altria. *See id.*[5]

In light of this judicially noticeable backdrop, JLI argues that the DPPs cannot demonstrate standing for or entitlement to injunctive relief because: (1) there is no "actual and imminent" threat of future injury by agreements between JLI and Altria; (2) defendants have already unwound the agreement; and (3) the DPPs have not adequately alleged a likelihood of real and imminent prospective injury to them because they fail to allege that they intend to purchase product from JLI in the future.

Plaintiffs respond that the TAC seeks two forms of injunctive relief: (1) an order declaring the agreements that comprise the transaction are "invalid and unenforceable" and (2) "equitable and injunctive relief . . . to correct the anticompetitive effects" allegedly resulting from the transaction. TAC ¶¶ 180, 183. They also request "[i]ssuance of a permanent injunction against Defendants and . . . all other persons acting or claiming to act on their behalf from continuing and maintaining the conspiracy or agreements alleged herein." TAC ¶ 189. Plaintiffs argue that nothing prevents JLI and Altria from recombining at a future date, despite the unwinding of the prior agreement and their resumed status as direct competitors. They also note, concerning their individual standing, that it would be unfair to require these plaintiffs to plead an intent to be direct purchasers again in the future when doing so would possibly bind them into arbitration. *See*

---

[5] JLI requests Judicial Notice of the public records it relies on; namely the Altria Form 8Ks and the FTC filings and orders. Dkt. No. 366. The DPPs do not address the request for judicial notice in their response.

*supra*.

The motion to dismiss is GRANTED. In light of the judicially noticeable and uncontested showing regarding both the unwinding of the challenged 2018 agreement and that Altria has an interest in a JUUL competitor, the risk of future combination is too implausible to establish standing. This dismissal, however, is without prejudice. If evidence comes to light regarding changed circumstances between the parties or otherwise makes a potential re-combination plausible, the claim for injunctive relief may be realleged with leave of the Court.

## CONCLUSION

The motion to compel arbitration and to dismiss the claim for injunctive relief is GRANTED.

**IT IS SO ORDERED.**

Dated: February 13, 2024

William H. Orrick
United States District Judge