*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: JUUL LABS, INC. ANTITRUST LITIGATION | Case No. 3:20-cv-02345-WHO<br><br>**JOINT CASE MANAGEMENT STATEMENT** |
| This Document Relates To:<br><br>ALL ACTIONS | Judge:     Hon. William H. Orrick<br>Date:      February 11, 2025<br>Time:      2:00 PM<br>Location:  Zoom |

Pursuant to the August 13, 2024 Notice Setting Zoom Hearing (ECF No. 410), the Direct Purchaser, Indirect Purchaser, and Indirect Reseller Antitrust Plaintiffs ("Plaintiffs"); Defendants Altria Group, Inc. and Altria Enterprises LLC ("Altria"); and Juul Labs, Inc., Nicholas Pritzker, and Riaz Valani ("JLI") (collectively "Defendants") (all collectively "Parties"), jointly submit this Statement for the February 11, 2025 Case Management Conference.

## I. STATUS OF DISCOVERY

**Fact Discovery.** Fact discovery closed on November 15, 2024. The Parties have concluded all party and non-party depositions. Plaintiffs recently raised the potential of seeking fact discovery from Defendants' expert, Mr. David Dobbins, on the basis that since 2023 he has been retained by Altria as a consultant. The Parties continue to meet and confer on this issue, and there is no pending dispute that is yet ripe.

**Expert Discovery.** On January 21, 2025, the Parties exchanged a total of 10 initial expert reports:

| Party | Expert |
|---|---|
| DPPs | Dr. Steven H. Kelder |
| DPPs | Dr. Pierre Thomas Léger |
| DPPs | Dr. Bryan J. Perry |
| DPPs | Tara K. Singh |
| IPPs | Dr. Gareth Macartney |
| IRPs | Dr. Keith B. Leffler |
| Defendants | David Dobbins |
| Defendants | Deborah A. Garza |
| Defendants | Dr. Jack E. Henningfield |
| Defendants | Dr. Kevin M. Murphy |

The deadline for expert rebuttals is March 21, 2025. Expert discovery closes on May 20, 2025.

**Expert Deposition Disputes.** The Parties have been meeting and conferring by email on the schedule and format for expert depositions. The Parties held a substantive meet-and-confer teleconference on January 31, 2025. Despite efforts to find agreement, the Parties have disputes as to the number, duration, and timing of expert depositions.

### I. Duration for the Deposition of Defendants' Expert, Dr. Murphy.

The Parties disagree on the time to be allotted for deposition of Defendants' expert Dr. Murphy.

**Plaintiffs' Position:**[1]

Unlike Defendants' other three experts, Dr. Murphy has authored a 207-page report which addresses liability (merits), class certification and damages and pertains to all three actions (DPP, IPP, and IRP). Each action's expert(s) make different points relevant to certifying each class and also propose their own methodologies to establish class-wide impact and estimate damages. Accordingly, Plaintiffs request 14 hours over two consecutive days to depose Dr. Murphy on his opening report and his anticipated rebuttal report.[2]

Good cause exists for Plaintiffs to conduct Dr. Murphy's deposition for up to 14 hours. Although not entirely clear before his rebuttal report(s) are served, Dr. Murphy's testimony likely will concern common issues across all three Plaintiff classes as well as issues pertaining to only one or two of the three classes. But regardless of any overlap of economic or other topics of questioning by the classes, each Plaintiff class will need to question Dr. Murphy concerning their experts' respective impact and damages models, *because they are not identical*, involving different econometric findings and relying on different materials in calculating overcharges. DPPs have four experts, two who cover areas relevant to Dr. Murphy's report, and IRPs and IPPs each have their own independent experts. For class certification, DPPs, IRPs, and IPPs all have *separate* classes of purchasers for which they are seeking certification. IPPs and IRPs must show pass-through of the initial overcharge, whereas DPPs do not. DPPs also bring claims under federal law whereas the IRPs and IPPs assert claims under the laws of states allowing such claims. The expert reports are also not bifurcated as in some complex cases; class certification and merits are presented together. The time to conduct Dr. Murphy's deposition ought not be decreased to the prejudice of any of the three Plaintiff classes, hence why Plaintiffs seek up to 14 hours to conduct Dr. Murphy's deposition, given his unique importance to each of their actions. There is

---

[1] Plaintiffs offered to address these scheduling issues in a separate letter brief. Defendants refused and insisted on briefing the issue in this Case Management Conference Statement. Plaintiffs are happy to address these issues in the method the Court prefers.

[2] Defendants have represented that Dr. Murphy intends to submit a rebuttal report. He will likely author a separate rebuttal to each one of Plaintiffs' economic experts (as permitted by the Court-approved schedule). Defendants also do not dispute that Dr. Murphy's rebuttal reports or report likely will address each of Plaintiffs' experts' separate and distinct methodologies of calculating damages for each class.

clear good cause to allow for two days of deposition and ensure that each case has sufficient time to cover their claims, and sufficient ground to rebut the *Daubert* challenges Defendants are expected to pose.

As the Court is aware, it is not unusual in complex matters (such as those involving separate plaintiff actions with differing theories of liability, impact and damages) that the parties agree at the outset to allow for additional time to depose expert witnesses. *See, e.g.*, Joint Case Management Statement i*n Eon Corp. Holdings v. Apple, Inc*., 2015 WL 3811652 (N.D. Cal. 2015) (Orrick) (Each side may take up to seven (7) hours of deposition testimony of each testifying expert for each report on a separate subject (*e.g.*, if an expert opines on infringement and validity, fourteen (14) hours of deposition testimony would be permitted); Case Management Order in *Finjan, Inc. v. Websense, Inc*., 2014 WL 2925309 (N.D. Cal. 2015) (same). Here, the Parties agreed to seven hours per witness. As Defendants concede, no distinction is made between fact and expert witnesses. Plaintiffs now seek additional time only to depose Dr. Murphy, because good cause exists for the three classes of Plaintiffs to conduct Dr. Murphy's deposition for up to 14 hours over two consecutive days, given the complexity of issues and Dr. Murphy's unique testimony in his opening report and in his anticipated rebuttal report concerning the reports of Plaintiffs' economic experts in the three cases. Plaintiffs have otherwise agreed to share up to seven hours among them to conduct the depositions of the Defendants three other experts: Ms. Garza, Dr. Henningfield, and Mr. Dobbins.[3]

---

[3] Defendants seem to concede that Plaintiffs will be prejudiced if they are not permitted to question Dr. Murphy for more than seven hours, as they do not object to his deposition taking up to 12 hours; they just dispute that Dr. Murphy should be treated any differently than any other expert, even though he is the only one of Defendants' four experts whose testimony is uniquely relevant to each one of the three Plaintiffs' actions, which is why his deposition is the only one Plaintiffs request the Court's permission to conduct for up to 14 hours.

**Defendants' Position:**[4]

Defendants are not opposed to more than seven hours of deposition time for Dr. Murphy; indeed, as explained below, under Defendants' two proposals Plaintiffs would either have 14 or 12 hours of deposition time for Dr. Murphy. Defendants' objection is to Plaintiffs' contention that Dr. Murphy should be treated differently from every other witness.

Plaintiffs' assertion that because they represent three classes they would be entitled to take 21 total deposition hours of each of Defendants' expert witnesses is wrong. The Deposition Protocol agreed by the Parties and entered by the Court provides that "the length of depositions of all 30(b)(1) witnesses noticed by any party will be seven on-the-record hours, excluding breaks and recesses off the record." ECF No. 446 § II.B. The Deposition Protocol does not distinguish between expert and fact witnesses.

Dr. Murphy is one witness, who has submitted one opening report, and who Defendants expect will submit one rebuttal report. His opening report addresses, from an economic perspective, the market for e-cigarettes and the lack of economic evidence supporting the allegation found in the complaints for all three classes that prices for closed system e-vapor products were raised, fixed, maintained, and/or stabilized at supra-competitive and/or artificially high levels. His rebuttal report will, Defendants expect, explain why Plaintiffs' experts are wrong to opine otherwise. Plaintiffs' argument in favor of additional deposition time with Dr. Murphy appears to be that because *they* chose to submit multiple, often conflicting, expert opinions on issues related to market impact and damages, they are entitled to additional deposition time with *Defendants'* expert. That is neither reasonable nor how expert discovery is ordinarily conducted. Nothing obligated Plaintiffs to rely on multiple experts. Their argument that it was necessary to do so ignores that the central thesis of the claims brought by all three classes are the same: that the prices JLI charged for its products were artificially high because of alleged unlawful anti-competitive acts of Defendants. Plaintiffs' decision not to coordinate their efforts

---

[4] Plaintiffs' original draft CMC statement included both an argument on these issues and also contemplated submitting additional letter briefing on Friday, February 7. Defendants' objection was to burdening the Court with two separate submissions on these issues, one of which would not be submitted until shortly before the CMC. The Parties ultimately agreed to brief the issues as part of this statement.

in addressing that issue and to instead submit separate and inconsistent reports has already increased significantly the burden on Defendants. Aside from their own tactical decision, Plaintiffs fail to make any showing of why Dr. Murphy should be treated differently from any other witness.

Defendants are not averse to modification of the default deposition procedures for expert witnesses, but any accommodation should not be a one-way street. Plaintiffs demand twice as much time with Dr. Murphy while at the same time refusing to agree that experts who submit both opening and rebuttal reports can be deposed separately related to each of their submitted reports. As described in more detail below, Defendants believe a similar rule should apply for all witnesses.

II. **Number of Depositions for Each Expert and Allotment of Time for Each Expert Deposition.**

Defendants propose that the parties stipulate and agree that, for those expert witnesses who submit both an opening and a rebuttal report, the opposing party may take one seven-hour deposition related to the experts' opening reports and another seven-hour deposition related to that expert's rebuttal report. Plaintiffs disagree that there should be a blanket stipulation for two depositions for each of the 10 experts who have submitted reports. Rather, Plaintiffs submit that if Defendants see reason to have additional deposition time after rebuttals, they move for additional time and show why it meets the standard of good cause for that time. Alternatively, Defendants have offered that each expert who submits two reports should be deposed for a total of 12 hours. Under this alternative approach, the questioning side would have discretion as to when and how to allocate the 12 hours of deposition time. Plaintiffs do not agree to this alternative proposal because it does not address the core issue in dispute.

**Plaintiffs' Position:**

The parties agreed that each witness would be deposed for no more than seven hours. Now, rather than moving for leave to depose a particular expert witness for an additional amount of time as regards certain topics pursuant to the Federal Rules, Defendants beseech the Court for permission to multiply the proceedings by deposing each expert shortly after service of each of their reports (should they author a rebuttal report), necessarily increasing the time and expenses of the parties and the Court. Plaintiffs cannot agree that their collective six experts and Defendants' four experts should be subject to a second deposition—one before their rebuttal report is served on March 21 and another one afterward.

To the extent Defendants find a need for additional time to depose any expert after the rebuttal period (i.e., after depositions of the experts are conducted on their report(s)), Plaintiffs simply ask that they move for additional time pursuant to a showing of good cause, as Plaintiffs are doing now with respect solely to Dr. Murphy.[5] Plaintiffs have agreed to produce their experts at a time of Defendants' choosing, either before or after rebuttal, but maintain that seeking an intervening deposition is inefficient, disruptive, and has the potential to cause confusion, and thus recommend that all parties conduct their depositions after service of all of the experts' reports.

At this time, before rebuttal, a blanket stipulation to take each expert twice is not only premature but extremely inefficient. With ten experts in different locations around the country (*e.g.*, Los Angeles, CA; Washington, DC; Austin, TX; Chicago, IL; San Francisco, CA), it is incredibly inefficient to assume all would be deposed twice. There are seven teams of lawyers, many of whom will travel to each, twice. Defendants' proposal contemplates conducting 20 depositions in total without any justification that there is good cause for such inefficiency or such high-cost expenditure. Furthermore, without a showing of good cause, there is a potential to abuse that time and use it as carte blanche to buffer reports.

The Court's scheduling order and the Federal Rules do not contemplate double depositions per expert and align with Plaintiffs' position. ECF No. 458; Fed. R. Civ. P. 30. A party seeking two depositions of one witness must obtain leave of Court. Fed. R. Civ. P. 30(a)(2)(ii). Because expert reports are complex, and because lengthy reports require significant back and forth between expert and counsel, setting rules to govern the scope of discovery is advisable. *See* Federal Judicial Center, Manual for Complex Litigation, at 626 (4th ed. 2004). The Court's orders contain no such relevant provisions, because at no point during the two instances in the last three months that the parties stipulated to modify the Court's Scheduling Order (ECF Nos. 455, 458), or during the negotiation of the parties' Stipulated Order Regarding Deposition (ECF No. 447), did Defendants disclose their desire to depose

---

[5] Good cause is found where a party can show a good reason for the request, e.g., new evidence, new theories, new damages computations, and where unreasonable duplicativeness is not a risk. *See, e.g., Graebner v. James River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1989); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 3462580, at *1 (N.D. Cal. Nov. 29, 2006); *In re TFT-LCD (LCD) Antitrust Litig.*, 2014 WL 12639392, at *2 (N.D. Cal. Dec. 10, 2014).

Plaintiffs' experts multiple times. Instead, the parties agreed to plan for eight weeks following the submission of expert reports to conduct and complete expert discovery.[6] Defendants are raising this issue for the first time, and when they proposed it by email on January 22, they proposed a schedule that would have started the depositions of Plaintiffs' experts in less than one month.

Not only is such a truncated calendar with no notice logistically difficult to execute and an inefficient use of time, but there is also no showing at this juncture that the ordinary seven hours would be insufficient.[7] Defendants assert that the basis for their proposal is so that they avoid a possibility that reports are misunderstood. But, an expansion of the rules or modifications to the Court's schedule should be made on a specific showing of actual need, not hypothetical, and with each party having the opportunity to be heard on a developed record (i.e., if and when a party needs to seek leave of Court for a second deposition). Second, clarification of testimony makes far more sense after the reports are complete than while rebuttals are in process. Third, the rules are meant to encourage each party to prepare independently rather than automatically benefit from preparatory work of the other side. Fed. R. Civ. P. 26 Advisory Committee Note ¶ 58 (1970) ("A party . . . can hardly hope to build his case out of his opponent's experts."); see also *Procongps, Inc. v. Skypatrol, LLC*, No. C 11-3975 SI, 2013 WL 11261327, at *1 (N.D. Cal. May 22, 2013) (agreeing with plaintiff's argument that the purpose of expert depositions is to develop cross-examination for trial or for a Daubert motion, not to build a case for one's own expert, and that two rounds of depositions is impractical and wasteful).

Defendants rely on *LCD* and *DRAM*. Each is distinguishable. The facts in *LCD* show why Defendants are off-base. In *In re LCD Antitrust Litig.*, 2014 WL 12639392, Judge Illston presided over a multiparty multidistrict antitrust cartel case involving a series of direct purchaser class cases, indirect purchaser class cases and follow on opt-out cases. One opt-out used an expert who had testified repeatedly in prior cases offering the same substantive opinion. When that expert came up with a new damage calculation in rebuttal that increased damages by almost two-fold, Judge Illston ordered the

---

[6] The Scheduling Order set by the Court provides for: expert disclosures on January 21, expert rebuttals on March 21, and close of expert discovery on May 20, 2025. ECF Nos. 455, 458.

[7] This is true for everyone other than Dr. Murphy, for whom Plaintiffs seek additional time on a specific basis. Plaintiffs would likewise be amenable to considering a specific need for a particular witness.

expert deposition taken on the new opinion. Of course, here there is no such record because the rebuttal reports have not been issued. Indeed, taking depositions after the rebuttal would avoid such surprise and prevent depositions before opinions are final. The operative schedule heads off that problem by having depositions occur after reports are done. Similarly, in *In re DRAM Antitrust Litig.*, 2006 WL 3462580, the witness offered a new calculation of damages in his rebuttal and the defendants had no opportunity to examine the witness, unlike here. In Defendants' third cited case—*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 6879321, at *2 (S.D.N.Y. Dec. 16, 2019)—defendants sought two depositions of only one expert, not arguably the six at issue here.

Requiring at the outset that a deposition occur both before and after a rebuttal report without a specific showing of a need to explore, *e.g.*, an additional opinion or methodology, substantially risks subjecting Plaintiffs' experts to unreasonably cumulative or duplicative discovery in violation of the Rules. *See* Fed. R. Civ. P. 26(b)(2)(c) (court may consider whether proposed discovery would be unreasonably cumulative or duplicative). The mere fact of submission of a rebuttal report is not a basis for two depositions. It is far more sensible to follow the Court's schedule, allow the experts to prepare their rebuttal reports without interruption, then proceed with depositions. Experts should have an opportunity to complete their analyses rather than be cross-examined before they are done. In addition to fairness, allowing experts to complete their work and to be examined on it in its entirety will provide for a clearer deposition record. Preparation for depositions will also disrupt the preparation of the rebuttals and could delay the Court schedule. Under Defendants' proposal, Plaintiffs' experts would redirect significant energy to deposition preparation rather than focus on rebuttal reports.

Finally, Defendants seem to confuse the need to take Dr. Murphy's deposition once for more than seven hours—with time divided between the two indirect classes and the direct class—with their proposal to preemptively seek to depose every single expert twice for seven hours each time. Plaintiffs' request for additional time for one expert deposition that is relevant to three distinct cases is clearly distinguishable.

Defendants' other proposal—to curb the deposition time from 14 to 12 hours, presumably, to still be used before and after rebuttal—does not address the disruption and unfairness of depositions taken during the preparation of the expert reports, or the inefficiency of duplicate sittings, travel, and costs.

Shaving two hours does not ameliorate the basic flaws with Defendants' approach. Further, 12 hours is unnecessary on the current record and without the complete expert testimony as represented by both rounds of reports.

Plaintiffs maintain that Defendants should not get a blanket stipulation for double depositions. Rather, they should show good cause as needed and where the Court decides good cause warrants additional time, Plaintiffs will provide their experts as indicated.

**Defendants' Position:**

After arguing that they are entitled to expanded deposition time with Defendants' economist, Plaintiffs argue that Defendants' opportunity to depose Plaintiffs' own economists should be strictly limited. Their proposal is both lacking in reciprocity and inconsistent with an effort to efficiently crystallize the points of dispute between the Parties' respective economics experts.

To start, Plaintiffs' contention that the existing schedule or the Parties' discussions contemplated that depositions would occur only after rebuttal reports were submitted is simply not accurate. The current schedule provides a period of 17 weeks for expert discovery and does not speak to when depositions will occur within that window. ECF No. 455. It is also incorrect that Defendants propose to "require" that experts be deposed twice. Under Defendants' proposal, Plaintiffs would be free to take a single deposition of each of Defendants' experts following rebuttal reports, of up to 12 or 14 hours if that expert submitted a rebuttal report. And contrary to Plaintiffs' assumption, this would not necessarily mean 20 depositions, as it would only apply to those witnesses for whom the parties perceived a need to file two separate reports.

Defendants submit that their experts' rebuttal analysis, and therefore also the task of the Court at the *Daubert* stage, will be greatly streamlined by ensuring that their rebuttal reports are actually responsive to the arguments and analyses on which Plaintiffs intend to rely – and not, for example, either built upon a misunderstanding of that analysis or a failure to address errors or omissions that may come to light only later during depositions. To that end, Defendants propose that each party be entitled to depose the opposing side's experts, if they so choose, on the reports they have already submitted, without prejudice to the right to depose those experts again on any rebuttal reports they may submit. No expert would be deposed more than once on any particular report, but for experts whom a party

elects to put forward *both* as an affirmative expert as well as for the purposes of rebutting the other side's experts, that dual-hatted expert may be deposed twice.

Plaintiffs erroneously claim the Federal Rules "do not contemplate double depositions," but under Federal Rule of Civil Procedure 30(a)(2), the Court "must grant leave" to take a second deposition of the Parties' respective economics experts "to the extent consistent with Rule 26(b)(1) and (2)." Contrary to Plaintiffs' assertion, Defendants need not show "good cause" for the second deposition, only that a second deposition is not "'unreasonably cumulative or duplicative' and that the benefit of the deposition outweighs the burden and expense 'considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues and stake in the action, and the importance of the discovery in resolving the issues.'" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2014 WL 12639392, at *1 (N.D. Cal. Dec. 10, 2014). Indeed, in the case Plaintiffs cite for the "good cause" standard, the Court imposed the burden to demonstrate good cause for issuance of a protective order on the party *resisting* a second deposition of the plaintiff herself, not an expert witness. *See Graebner v. James River Corp.*, 130 F.R.D. 440, 441-42 (N.D. Cal. 1989) ("[Plaintiff] has shown good cause for a protective order."); *see also Blackwell v. City & Cnty. of San Francisco*, 2010 WL 2608330, at *2 (N.D. Cal. June 25, 2010) ("[w]hether a second deposition is to be permitted should be based on the factors identified in Rule 26(b)(2), *none of which is good cause*.") (emphasis added).

Here, the hundreds of millions of dollars in damages the Plaintiffs seek to recover, the complexity of the various analyses put forward—which Plaintiffs' acknowledge—and the benefits of ensuring those expert analyses are fully understood before they are rebutted all counsel in favor of Defendants' proposed approach. Plaintiffs' claims for damages rely on three different, complex damages models reported across hundreds of pages of expert reports relying on more than 350 gigabytes of data, computational models, and record evidence. The validity of those models will be a crucial element of class certification arguments, particularly the models' ability to show classwide impact through common proof, including the existence of pass-through damages for the two indirect classes. And in this case the market conditions during the period in question were made more complex by the overlay of unusual extrinsic events – including the FDA's regulatory regime for E-Vapor products, a substantial transformation of the market resulting from the introduction of disposable E-

Vapor products, significant settlements of litigation against JLI and Altria, and the ultimate unwinding of the transaction at issue in this case. The opinions offered by the Parties' economists in this case are a critical factor in this litigation, and economic analysis of this type is not necessarily intuitive, particularly to those untrained in the field. That complexity is only exacerbated by Plaintiffs' decision to submit three competing (and often inconsistent) economic models and economic analysis from five different experts. Recognizing the importance of expert analysis, the Parties have agreed that the Court should hold an evidentiary hearing on *Daubert* issues in the fall.

It would ill-serve the Parties and the Court, particularly at the *Daubert* stage, for Defendants' experts to prepare rebuttal expert reports only to find out later in the case that they had misunderstood the analysis of Plaintiffs' experts or the grounds for their opinions or were not responding to the analysis that Plaintiffs are actually putting forward. Likewise, it would be inefficient and potentially confusing for errors, omissions or potential biases in an expert's report to be revealed for the first time only in a post-rebuttal deposition. That would deprive the opposing party's experts the opportunity to address such issues and likely limit any response to lawyer argument in briefing on summary judgment or *Daubert*.

It is not unusual for two depositions of expert witnesses to be taken where the experts submit both an opening and rebuttal report, particularly in complex cases where doing so may streamline later proceedings. For example, in *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 6879321, (S.D.N.Y. Dec. 16, 2019), where the schedule provided for two rounds of expert reports, the court ruled that each side should be permitted to depose the experts twice—after the opening report and then after the rebuttal report. Noting that "other courts have reached a similar conclusion" and collecting cases so holding, the court explained that "[t]his is a very complex case[] with millions of dollars at stake and many difficult issues on which expert testimony will be helpful. Given the amount of resources already expended during the discovery phase, an additional deposition or two is not a great burden or expense when taken in context." *Id.* at *1-2; *see also, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2014 WL 12639392, at *2 (allowing deposition on rebuttal report because it will "increase the chances of an efficient trial"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 3462580, at *1 (N.D. Cal. Nov. 29, 2006) (finding two depositions of expert to be the "fair result"). Plaintiffs'

attempt to distinguish these cases falls flat—the unifying theme of these opinions is that in complex cases in which expert testimony is critical, the need for an additional deposition outweighs the costs or burdens of having an expert sit for that deposition. In contrast, *Procongps, Inc. v. Skypatrol, LLC*, No. C 11-3975 SI, 2013 WL 11261327, at *1 (N.D. Cal. May 22, 2013), on which Plaintiffs rely, is a simple patent case and inapposite on the question of how to proceed in this type of complex litigation.

      Plaintiffs' proposal that Defendants wait to ask for a second deposition until after the rebuttal deadline makes no sense. The need for these depositions is already apparent, and the issue should be decided now while there remains plenty of time before expert rebuttal reports to schedule depositions. Contrary to Plaintiffs' suggestion, it does not make sense to require each party to make a separate showing of good cause as to each expert who files a rebuttal report. The very fact that an expert perceived the need to file two separate reports is what gives rise to the need for the second deposition. Plaintiffs' proposal would be unworkable because it would require each party to seek leave now without having seen the rebuttal report or even knowing if the expert contemplated filing a second report. Otherwise, the party would face the Hobson's choice of taking the deposition now without knowing whether it would have another deposition if the expert filed a separate rebuttal report or playing it safe by foregoing the deposition and thus losing the opportunity to depose the expert before rebuttal reports are due.

      Nor is there merit to Plaintiffs' contention that there would be a "clearer deposition record" if each expert is deposed only once. To the contrary, the record will be much clearer if rebuttal reports are fully responsive to the expert analyses they are intended to rebut. As for the suggestion that Defendants are seeking "preparatory work of the other side," that is hardly the case—Defendants are seeking to depose experts who Plaintiffs have put forth affirmatively on the reports they have actually submitted. Indeed, Plaintiffs' own rebuttal analyses would likely benefit from their experts having gone through the process of being deposed on their opening reports.

      The usual considerations that militate against multiple depositions of fact witnesses do not apply to these expert witnesses. All are professionals who are well compensated for their time, including their deposition time, and Defendants have agreed to depose Plaintiffs' experts at the location of their choosing (including, at their request, outside the United States). All chose to offer their services in this

litigation; they are not being summoned involuntarily. Plaintiffs' suggestion that arranging depositions now would be "logistically difficult to execute" is wrong: the parties have already largely agreed to dates on which these depositions could occur. And all parties are represented by teams of experienced counsel who are more than able to manage the schedule that has been agreed. Plaintiffs have pointed to no prejudice that would arise from taking multiple depositions of experts that submit multiple reports beyond the burden of preparing for depositions. But any burden raised by the expense of "preparing for, traveling to, and taking the deposition" is insufficient to outweigh the benefits discussed above of allowing experts to be deposed on each of their reports. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2014 WL 12639392, at *2.

In an effort to reach a compromise, Defendants proposed a bilateral solution that allows each side to take 12 hours total of expert deposition time for any expert who offers two reports, with the time divided however the deposing party chooses. If, for example, Plaintiffs wanted to depose Dr. Murphy only after the rebuttal reports were submitted, this would allow Plaintiffs to do so. Defendants remain amenable to that type of accommodation. But Plaintiffs have been unwilling to consider any alternatives to their position that *they* should be allowed a two-day deposition of Defendants' economic expert, while *Defendants* are limited to a single 7-hour deposition of each of theirs, even if those experts submit both opening and rebuttal reports.

## II.  ADDITIONAL ITEMS

**Proposal for Evidentiary Hearing.** A hearing on *Daubert* motions is currently set for October 9, 2025. Briefing on *Daubert* motions is scheduled to be completed on September 8, 2025. The Parties are in agreement and respectfully request that the Court hold an evidentiary hearing on the admissibility of expert testimony in conjunction with that hearing.

**Stipulation as to Authenticity.** The Parties are near agreement on a joint stipulation regarding the authenticity of documents produced by the Parties in this action and the accuracy of certain phone logs and text messages produced in the FTC action. The Parties will continue to meet and confer on the issue and anticipate filing the stipulation shortly.

All parties each reserve their respective rights.

DATED: February 4, 2025

**JOSEPH SAVERI LAW FIRM, LLP**

By:   */s/ Joseph R. Saveri*
          Joseph R. Saveri

Joseph R. Saveri (SBN 130064)
Ronnie S. Spiegel (*pro hac vice*)
David H. Seidel (SBN 307135)
Itak K. Moradi (SBN 310537)
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Email: jsaveri@saverilawfirm.com
           rspiegel@saverilawfirm.com
           dseidel@saverilawfirm.com
           imoradi@saverilawfirm.com

*Interim Lead Counsel for Direct Purchaser Plaintiffs*

**ZWERLING, SCHACHTER & ZWERLING, LLP**

By:   */s/ Robin F. Zwerling*
          Robin F. Zwerling

Robin F. Zwerling (*pro hac vice*)
Susan Salvetti (*pro hac vice*)
Justin M. Tarshis (*pro hac vice*)
41 Madison Avenue
New York, NY 10010
Telephone: (212) 223-3900
Email: rzwerling@zsz.com
           ssalvetti@zsz.com
           jtarshis@zsz.com

*Interim Lead Counsel for Indirect Purchaser Plaintiffs and Indirect Reseller Plaintiffs*

**KAPLAN FOX & KILSHEIMER LLP**

By:   */s/ Elana Katcher*
          Elana Katcher

Robert N. Kaplan (*pro hac vice*)
Elana Katcher (*pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022

Telephone: (212) 687-1980
Email: rkaplan@kaplanfox.com
ekatcher@kaplanfox.com

*Steering Committee Counsel for Indirect Purchaser Plaintiffs and Indirect Reseller Plaintiffs*

**CERA LLP**

By:   */s/ C. Andrew Dirksen*
      C. Andrew Dirksen

C. Andrew Dirksen (SBN 197378)
529 Main St., Suite P200
Boston, MA 02129
Telephone: (857) 453-6555
Email: cdirksen@cerallp.com

Solomon B. Cera (SBN 099467)
Pamela A. Markert (SBN 203780)
**CERA LLP**
201 California Street, Suite 1240
San Francisco, CA 94111
Telephone: (415) 777-2230
Email: scera@cerallp.com
pmarkert@cerallp.com

*Steering Committee Counsel for Indirect Purchaser Plaintiffs and Indirect Reseller Plaintiffs*

**WILKINSON STEKLOFF LLP**

By:   */s/ Beth A. Wilkinson*
      Beth A. Wilkinson

Beth A. Wilkinson (*pro hac vice*)
James M. Rosenthal (*pro hac vice*)
Matthew Skanchy (*pro hac vice*)
Alysha Bohanon (*pro hac vice*)
Jenna Pavelec (*pro hac vice*)
2001 M Street, N.W., 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4000
Email: bwilkinson@wilkinsonstekloff.com
jrosenthal@wilkinsonstekoff.com
mskanchy@wilkinsonstekloff.com
abohanon@wilkinsonstekloff.com
jpavelec@wilkinsonstekloff.com

Moira Penza (*pro hac vice*)
Jeremy Barber (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
West 42nd Street, 24th Floor
New York, New York 10036
Telephone: (212) 294-8910
Email: mpenza@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Lauren S. Wulfe (SBN 287592)
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017
Telephone: 213-243-4000
Email: Lauren.Wulfe@arnoldporter.com

*Counsel for Defendants Altria Group, Inc. and Altria Enterprises LLC*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

By:   */s/ Nowell D. Bamberger*
         Nowell D. Bamberger

David I. Gelfand (*pro hac vice*)
Jeremy J. Calsyn (State Bar No. 205062)
Nowell D. Bamberger (*pro hac vice*)
2112 Pennsylvania Avenue
NW Washington, DC 20037
Telephone: (202) 974-1500
Email: dgelfand@cgsh.com
          jcalsyn@cgsh.com
          nbamberger@cgsh.com

*Counsel for Defendant Juul Labs, Inc.*

**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**

By:   */s/ Michael J. Guzman*
         Michael J. Guzman

Mark C. Hansen (*pro hac vice*)
Michael J. Guzman (*pro hac vice*)
David L. Schwarz (CA Bar No. 206257)
Andrew Skaras (*pro hac vice*)
1615 M Street, NW Suite 400
Washington, DC 20036

Telephone: (202) 326-7900
Email: mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com
askaras@kellogghansen.com

*Counsel for Individual Defendants Nicholas Pritzker and Riaz Valani*

**L.R. 5-1 SIGNATURE ATTESTATION**

As the ECF user whose user ID and password are utilized in the filing of this document, I attest under penalty of perjury that concurrence in the filing of the document has been obtained from each of the other signatories.

Dated: February 4, 2025         By:   */s/ Joseph R. Saveri*
                                           Joseph R. Saveri