*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: JUUL LABS, INC. ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:20-cv-02345-WHO<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:    Hon. William H. Orrick<br>Date:     February 27, 2026<br>Time:     10:00 AM<br>Location: Zoom |

Pursuant to the Court's Civil Minutes entered February 2, 2026 (ECF No. 623), Direct Purchaser, Indirect Purchaser, and Indirect Reseller Plaintiffs ("Plaintiffs"), Defendants Altria Group, Inc. and Altria Enterprises LLC ("Altria"), and Defendants Juul Labs, Inc., Nicholas Pritzker, and Riaz Valani ("JLI" and together with Altria, "Defendants"), jointly submit this Statement for the Case Management Conference set for February 27, 2026.

## I. CMC PARTICIPANT INFORMATION

The Case Management Conference set for February 27, 2026, will proceed via Zoom. Any person wishing to attend may do so remotely using the access information at https://www.cand.uscourts.gov/judges/orrick-william-h-who/.

## II. REMAINDER OF SET SCHEDULE (ECF No. 455)

| Event | Date |
|---|---|
| Pretrial Filings | March 23, 2026 |
| Oppositions to Motions in Limine | March 30, 2026 |
| Pretrial Conference | April 6, 2026, at 2:00 p.m. |
| Voir Dire Hearing | May 11, 2026, at 1:30 p.m. |
| Trial | May 12, 2026, at 8:30 a.m. |

## III. PRETRIAL SCHEDULE UPDATE

The Parties have negotiated a comprehensive pretrial schedule to prepare for the Court's pretrial deadlines. Pursuant to that schedule, the Parties have exchanged preliminary witness lists and motions in limine lists and are currently exchanging deposition testimony designations and exhibit lists. The Parties remain on track to meet the Court's filing deadlines in advance of the April 6, 2026, Pretrial Conference should that Conference remain on the calendar.

## IV. CLASS NOTICE

On February 5, 2026, the Court issued a Short Order on Motions for Class Certification (ECF No. 627) for the purpose of allowing the Parties to meet and confer regarding class notice and the trial date in advance of the February 27, 2026, Case Management Conference.

**Plaintiffs' Position**

Direct Purchaser Plaintiffs: DPPs are prepared to move forward with class notice. DPPs and Defendants have begun to confer on class notice. On Tuesday, February 17, 2026, DPPs provided Defendants with a sample notice plan and the proposed long form notice. Those documents alone provide Defendants with sufficiently detailed information to develop an informed position as to DPPs' notice plan. In addition, on February 20, 2026, prior to filing this Statement, DPPs provided Defendants with mock-ups of DPPs' proposed email and postcard notices. By February 27, 2026, JLI expects to complete production of purchase history and contact information for all Direct Purchaser Class Members. Further, DPPs have retained a notice vendor and developed a robust electronic notice plan that will permit completion of notice on April 3, 2026, and the opt-out period on May 8, 2026. DPPs would send the opt-out list to Defendants on May 20, 2026. Below is a table summarizing DPPs' proposed notice schedule.

| Event | Date |
|---|---|
| Notice dissemination begins (email, social media, website) | Tuesday, March 10, 2026 |
| Cure notices with invalid addresses (email and postcard) | March 10, 2026 – April 3, 2026 |
| Notice period ends | Friday, April 3, 2026 |
| Opt-out period ends (35 days) | Friday, May 8, 2026 |
| Opt-out list to Defendants | Wednesday, May 20, 2026 |

Indirect Reseller Plaintiffs: IRPs intend to share with Defendants a class notice and notice plan prior to the Case Management Conference, and are amenable to their suggestion of a prompt meet and confer to allow objections and concerns to be discussed prior to submission to the Court. The plan will rely primarily on notice by U.S. mail to names and addresses extracted from: (1) transaction data previously produced by the three largest e-cigarette wholesalers including Core-Mark, Eby Brown, and McLane; and (2) data supplied by JLI from its online "store locator" tool. IRPs believe that the two sources combined will allow mailed notice to reach a large majority of class members and await confirmation from JLI concerning the scope of its available data. IRPs intend to supplement their mailed notice plan with the publication of a short-form notice on industry-specific websites. JLI has

advised that it anticipates producing its relevant data to IRPs in machine-readable form by the date of the Case Management Conference, and IRPs expect to begin the dissemination of class notice by mail within seven days from the receipt of such data, subject to Court approval.

<u>Indirect Purchaser Plaintiffs</u>: IPPs intend to share with Defendants a class notice and notice plan prior to the Case Management Conference, and are amenable to their suggestion of a prompt meet and confer to allow objections and concerns to be discussed prior to submission to the Court. The IPPs intend to request permission to send direct notice to all indirect purchasers for whom an email address is reasonably available and to provide notice by publication similar in scope and content to the publication notice approved by this Court in the MDL Marketing, Sales Practices and Product Liability Litigation. IPPs will attempt to effect notice so as to preserve the current trial date if possible.

**Defendants' Position**

Defendants want to work collaboratively with Plaintiffs to expedite finalization of a class notice plan. Indeed, JLI has agreed to expedite production of contact information only recently requested by Plaintiffs.

To date, Defendants have not yet received complete draft notice plans from any Plaintiffs. The DPPs provided the Defendants only with partial information late Tuesday evening, and the Indirect Plaintiffs have yet to provide any draft plans. Defendants have already provided preliminary comments on the materials that the DPPs have disclosed. But because Defendants do not yet have the full set of notice plans, Defendants cannot take a fully informed position on the entirety of Plaintiffs' notice plans at this time.

Defendants submit that, consistent with the Court's prior practice, the most efficient way to address notice once the three classes have provided Defendants with their draft notice plans is for the parties to: (i) meaningfully meet and confer prior to Plaintiffs' submitting proposed class notice plans and (ii) submit a joint filing concerning Defendants' objections to those proposed plans, for the Court's consideration and ultimate determination. *See* Ord. On Mot. For Class Certification, *In re JUUL Labs, Inc. Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 19-md-02913, ECF No. 3327, at 94. Once complete draft notice plans are received from the three classes, Defendants are committed to working expeditiously and can commit to providing comments and objections within one week.

## V. POST-NOTICE BRIEFING SCHEDULE

**DPPs' Position**

Notwithstanding that only JLI may conceivably seek to enforce the arbitration agreements and forum selection provisions at issue, Defendants nonetheless have delayed pursuing such enforcement for over five years. As this Court has noted, nothing has prevented Defendants from moving on these issues previously. *See* ECF No. 581, Civil Minutes. If Defendants intend to move now, they should do so without delay. As DPPs' have maintained, however, no Defendant has the right to enforce arbitration or forum selection provisions against any Direct Purchaser Class Member, whether an individual or an entity–including because Defendants have waived any such right that arguably exists. DPPs are prepared to move promptly to obtain a declaration to that effect. In any event, whatever occurs with respect to arbitration or forum selection will not affect the trial schedule, as briefing on these issues can take place any time before or during trial.

**Defendants' Position**

As Defendants previewed in their class certification opposition, Defendants intend to file motions to enforce arbitration agreements and forum selection provisions applicable to many absent class members of the Direct Purchaser class once the notice and opt-out period has ended. ECF No. 520-8, Defs.' Opp'n to DPP Class Cert Mot. 24-26. The DPPs claim that Defendants have waived the right to file these motions. But it is not possible for Defendants to file these motions until after the opt-out period has ended because none of these individuals and entities are plaintiffs who can be subject to these motions until they choose not to opt out. *See, e.g.*, *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 469 (9th Cir. 2023) ("[T]he district court could not compel nonparties to the case until after a class had been certified and the notice and opt-out period were complete.") (citing *In re JPMorgan Chase & Co*, 916 F.3d 494, 503 n.19 (5th Cir. 2019)); *Moser v. Benefytt Inc.*, 8 F.4th 872, 877 (9th Cir. 2021) (when filed, class action only includes claims of named plaintiffs); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 858 (D. Md. 2013) ("[B]ecause the absent class members were not part of this case prior to class certification, the Defendants did not have an earlier opportunity to enforce the forum selection clauses."). The DPPs' suggestion that the Court already addressed this issue in a minute order following the class certification hearing is misplaced. The Court was not

referring to any potential motion against a putative absent class member who was not yet part of the case, but rather to the "claims of the three plaintiffs ordered to arbitration." ECF No. 581, Civil Minutes.

Indeed, this Court previously rejected a virtually identical argument that a defendant waived the right to arbitration by "litigating this case against [an absent plaintiff] for years without moving to arbitrate." *Rushing v. Williams-Sonoma, Inc.*, 2020 WL 6787135, at *2 (N.D. Cal. Oct. 8, 2020) (Orrick, J.). As this Court explained, "a defendant cannot move to compel arbitration against unnamed class members prior to class certification," so "it did not have an existing right to compel arbitration and could not have acted inconsistently with that right." *Id.* at *3. That same principle fully applies here to both the arbitration and forum selection motions.

Respectfully, the issue of whether the claims of absent class members must be litigated in other venues is a threshold issue that must be resolved *pre*-trial. With respect to the agreements to arbitrate in particular, failing to resolve the arbitration question pre-trial would amount to a constructive denial of JLI's and the Individual Defendants' arbitration rights, giving rise to appeal rights. *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000) ("Were we to refuse to hear Advent's appeal, Advent faces the possibility of enduring a full trial on the underlying controversy before it can receive a definitive ruling on whether it was legally obligated to participate in such a trial in the first instance."); *Doe v. Swift*, 2015 WL 274092, at *4 (D. Ariz. Jan. 22, 2015) ("Orders delaying a ruling on arbitrability are immediately appealable under Section 16" of the Federal Arbitration Act). A stay of proceedings pending that appeal would be mandatory. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (confirming that "a district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing").

Defendants submit that rather than accepting the DPPs' invitation to chaos, an orderly process should be put in place for resolving motions that all parties have understood would be part of this case essentially from its inception. Defendants therefore ask the Court to order that such motions be filed within five business days after the DPPs' notice administrator provides notice of the absent class members who have or have not opted out of the class. Defendants are then prepared to brief these

motions according to the schedule provided under Civil Local Rule 7–3, followed by a hearing scheduled as early as the Court's schedule allows.

## VI. TRIAL

**Plaintiffs' Position**

Plaintiffs ask the Court for guidance as to whether the Court follows the "one up, one down" procedure for witnesses—i.e., a witness is called and examined only once before being excused—and, if so, whether that procedure also applies to witnesses appearing by video.

Direct Purchaser Plaintiffs: DPPs are amenable to a short continuance of trial to May 27, 2026, with voir dire to take place on May 26, 2026. Under DPPs' proposed notice schedule, the opt-out period will end 19 days before trial. DPPs are prepared to meet all pretrial filing deadlines under the current schedule, which DPPs submit may remain in place. DPPs anticipate that the trial will last approximately 3–4 weeks.

Defendants cite several reasons they claim warrant continuing the trial to September 28, 2026, but none justifies a continuance of that length. First, DPPs' proposed continuance will allow completion of class notice with sufficient time to account for the mailing issue Defendants raise concerning returns of opt-out requests. Second, with respect to Rule 23(f), based on DPPs' experience, the likelihood that the Ninth Circuit would grant review of a direct purchaser class certification order is low, and the speculative possibility of such review should not be outcome determinative as to the trial schedule. Third, the arbitration or forum selection issues Defendants threaten to raise should have no bearing on the trial date, as briefing on these issues can take place any time before or during trial. Fourth, the one-way intervention rule is unrelated to the timing of the pre-trial conference, and there is no authority for the proposition that a pre-trial conference cannot be held before the opt-out period is complete.

Indirect Purchaser Plaintiffs: IPPs will meet all pretrial and trial deadlines set by the Court as currently contemplated. IPPs have advised all parties that we do not object to defendants' request for a brief extension of the May 12 trial date, but believe that the trial should proceed expeditiously at the Court's earliest practical convenience.

Indirect Reseller Plaintiffs: IRPs will meet all pretrial and trial deadlines set by the Court as currently contemplated. IRPS have advised all parties that we do not object to defendants' request for a brief extension of the May 12 trial date but believe the trial should proceed expeditiously at the Court's earliest practical convenience.

**Defendants' Position**

On trial date, the Plaintiffs' positions confirm that the current May 12, 2026, trial date is not feasible. The Indirect Plaintiffs "do not object" to moving the trial date. And even the DPPs recognize that it would not be feasible to complete class notice and the opt-out period by May 12. But the DPPs' alternative proposal is equally infeasible, because it does not account for multiple pre-trial events that cannot be completed by their suggested May 27th trial date, such as:

*Rule 23(f) petition.* Defendants have a right to meaningful consideration of a Rule 23(f) petition seeking review of this Court's class certification order. That petition would be due 14 days after the Court issues its full class-certification order explaining the basis for its decision. ECF No. 627 (Short Ord. On Mots. For Class Certification). Recent statistics indicate that "the Ninth Circuit decides Rule 23(f) petitions in about 85 days on average." *See How Do Rule 23(F) Petitions Fare In The Ninth Circuit?* (June 30, 2022), https://perma.cc/BCB6-QDC7. And "some took much longer, with 17% taking longer than 120 days." *Id.* For example, in the MDL, the Ninth Circuit took 120 days to grant the petition. *See* July 11, 2022 Altria's Pet., *In re JUUL Labs, Inc. Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 19-md-02913, ECF No. 3337-1; Nov. 8, 2022 Order, No. 22-80063, ECF No. 2. Defendants assume that the Court intends to issue notice while the Rule 23(f) petition is pending, even though there is a risk that the notice might need to be modified. *See In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521-WHO (N.D. Cal. June 13, 2017), Dkt. 751. *But see* Manual for Complex Litigation (Fourth) § 21.28 ("If the appeal is from a grant of certification, the district court should ordinarily stay the dissemination of class notice to avoid the confusion and the substantial expense of renotification that may result from appellate reversal or modification after notice dissemination.").

*Class Notice.* As an initial matter, it is not reasonable to expect that a class notice plan will be approved in time for class notice to begin by March 10, 2026, as DPPs suggest. That is a mere 19 calendar days from the filing of this statement and only 10 days after the upcoming CMC. And as noted above,

1  Defendants have yet to receive the full notice plan from any class. Defendants are committed to moving
2  expeditiously and working with Plaintiffs on the notice process and have already provided preliminary
3  comments on the materials they have received. But there simply is not enough time for the parties to
4  meet and confer on the proposed plans, for the plans to be filed, for the Court to consider and approve
5  the proposed plans, and for notice to begin by March 10.

6  Moreover, beyond the procedural aspects of the notice plan, there are open substantive issues on
7  class definition for the DPPs that must be resolved before notice can begin. Specifically, the Court's
8  Short Order indicates that the DPP class period runs "to the present." Although the DPPs sought that
9  class definition, they also made clear that there would need to be an end date: "You know, we do have a
10 class period that goes up until the present. I mean, that always presents a problem in these cases. *We're
11 gonna put a finite limit on that, and then we'll deal with that*." Class Cert. Hrg. Tr. 70:15-18 (emphasis
12 added). The DPPs' acknowledgement of the need for this finite limit is consistent with the many cases
13 that have concluded that "an end date of 'the present' creates a moving target and presents potential case
14 management problems." *Gomez v. J. Jacobo Farm Lab. Contractor Inc.*, 334 F.R.D. 234, 250 (E.D. Cal.
15 2019) (collecting cases). And this finite limit needs to be set before class notice is given so that the
16 recipients of the notice are properly informed about which purchases would be covered. In any event,
17 Defendants submit that the parties should wait for the Court to issue its full class-certification decision
18 explaining the basis for its decision to ensure that the class definitions used for notice properly account
19 for the Court's reasoning.

20 The Indirect Plaintiffs notably do not provide any indication of when they believe they can
21 complete class notice. And because complete records do not exist providing contact information for all
22 of the class members within the Indirect classes, notice would have to rely heavily on publication notice,
23 which typically takes longer to execute. For example, in the JUUL MDL, this Court ordered publication
24 to last 60 days and the opt-out deadline to be 60 days after publication ended. Ord. Granting Mot. For
25 Preliminary Approval of Class Action Settlement, *In re JUUL Labs, Inc. Mktg., Sales Pracs., & Prods.
26 Liab. Litig.*, No. 19-md-02913, ECF No. 3779 at 12.

27 Even under the ambitious schedule proposed by the DPPs, notice would not be completed in time.
28 Defendants have a right to know precisely who is in the case before it is tried. Indeed, this is particularly

critical here, as there are motions directed at specific absent class members (discussed above) that can only be filed once the Defendants know that those absent class members have declined to opt out. Under the DPPs' schedule, Defendants will learn who has opted out on the Wednesday before Memorial Day weekend, a mere week before they propose trial should begin. Moreover, the DPPs contemplate that absent class members opt out by mail by May 8, 2026. That leaves only 12 calendar days until the DPPs' proposed deadline for serving the opt-out list on Defendants. With all due respect to the United States Postal Service, it is implausible to expect that all of the opt-out postcards will have been received by May 20, 2026. It will take time for the opt-outs to make it to the class notice administrator, for the administrator to process those postcards, and for the administrator to issue a final report detailing who actually opted out. For example, in *Korean Ramen*, the plaintiffs represented that the list of opt-outs would be sent to Defendants and filed with the Court 14 days after the opt-out period ended. Pls.' Mot. For Approval of Class Certification Notice Program, *In re Korean Ramen*, No. 13-cv-04115, ECF No. 529 at 12. None of these steps could be completed before the start of the trial. In addition, in Defendants' experience, there are sometimes questions as to whether a particular opt-out was effective, which take time to resolve. The DPPs' schedule does not account for any of this work.

*Post-Notice Briefing.* The significant briefing directed against specific absent class members once the opt-outs are known also cannot be completed before the current trial date. As noted above, JLI and the individual defendants intend to file arbitration motions against many absent class members. To the extent the Court denies arbitration as to any class member, those Defendants have an automatic right to an appeal and a stay pending the resolution of that appeal. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 744 (2023). In addition, all Defendants have forum selection arguments against certain potential absent class members. ECF No. 520-8, Defs.' Opp'n to DPP Class Cert Mot. 22-24. As noted above, Defendants request that the Court set the deadline for filing these motions five days after the DPPs' notice administrator provides complete opt-out information because these motions cannot be filed before the end of the opt-out period. With the DPPs' proposed opt-out period ending so close to trial, Defendants would be briefing these motions in the midst of trial. And if the arbitration issues have not been resolved prior to trial, JLI and the individual defendants intend to take an appeal as of right on the ground that the failure to resolve the arbitration motions before trial is a constructive denial of the motions.

*One-Way Intervention.* Under the one-way intervention rule, Defendants have a right to have notice completed "*before* the parties are aware of the district court's judgment on the merits." *Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995) (emphasis in original). Defendants have not waived this right. To the contrary, Defendants have repeatedly asked this Court to delay issuing its summary judgment ruling until after the opt-out period is complete. *See* ECF No. 553, Joint Case Mgmt. Statement 3; ECF No. 587-2, Altria Defs.' Mot. For Summary J. at 3, n.3; Defs.' Opp'n to DPPs' Mot. For Partial Summary J. at 2, n.1. Based on these principles, Defendants submit that it would be improper to hold the pre-trial conference—during which the Court will presumably issue significant rulings that could affect a potential absent class member's opt-out decision—until after the opt-out period is complete.

\* \* \*

Based on the above, Defendants submit that it is not practical to have a trial until at least four to five months after the Court issues its full decision outlining the basis for its class-certification decision. In addition, counsel and witnesses have existing commitments over the summer that were set when the trial date was May 12. As Defendants have informed Plaintiffs, that includes multiple critical witness conflicts at the end of May and in June which would unfairly prejudice Defendants should the Court adopt the DPPs' proposed May 27, 2026, start date. Defendants suggest that the Court reschedule the trial date to September 28, 2026, or later, with the final pretrial conference set the week of August 24. The parties previously told the Court that the trial could be completed in "estimated 13 trial days." ECF No. 349, Joint Case Mgmt. Statement 2. Defendants continue to believe that this estimate was accurate and that the trial should take no more than three weeks.

As to witness procedure, the Court should follow its ordinary practice and permit the parties to call a witness, either live or by deposition, only once. *See, e.g.*, Tentatives For Apr. 19, 2023, *In re JUUL Labs, Inc. Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 19-md-02913, ECF No. 3923 ("I think the entire video should be played at one time, rather than parsing them into each side's case. Otherwise, the witness's entire testimony could be distorted and be unclear to the jury.").

## VII. UPDATED INDIRECT DAMAGES CALCULATIONS

**Indirect Plaintiffs' Position:**

Both Indirect experts intend to supplement their reports with a revised calculation of damages for the <u>multistate</u> classes as certified.

**Defendants' Position:**

Defendants have no objection.

## VIII. SHORT ORDER ON CLASS CERTIFICATION MOTIONS

**DPPs' Position**

There are two small issues in the Short Order on Class Certification Motions, ECF No. 627 ("Short Order") that DPPs wish to bring to the Court's attention.

First, the Short Order states that "the defendants' motions to exclude DPP experts Leger, Perry, and Singh are **DENIED.**" But Defendants never moved to exclude the opinions of Dr. Perry. Although this issue may seem trivial, given that the non-existent *Daubert* motion was denied, Dr. Perry will be asked in future cases whether any opposing party ever sought exclusion of his opinions. DPPs thus seek clarification and wish to bring this small issue to the Court's attention before the Court issues its full order.

Second, the Short Order held that "Hoelle should also be produced for a supplemental two hour deposition and Murphy may prepare a supplemental report, responding to Dr. Hoelle's supplemental opinions." DPPs also seek clarification of this portion of the Short Order, because it appears to conflict with the parties' stipulation on Dr. Hoelle's supplemental report. *See* ECF No. 518. Pursuant to that stipulation, Defendants agreed to fully withdraw their objection to the timeliness of Dr. Hoelle's supplement, because (1) the parties agreed that Dr. Hoelle's supplement would constitute the response to Dr. Murphy's untimely sur-rebuttal charts, which the Court specifically gave Plaintiffs leave to file after the discovery cutoff (*See* ECF No. 504); and (2) the parties agreed that Defendants would be able to take an additional two-hour deposition of Dr. Hoelle on his supplement. *See* ECF No. 518, 519. Defendants already deposed Dr. Hoelle for an additional two hours on his supplement on August 29, 2025. Thus, DPPs seek clarification as to whether the Court intended to hold that Dr. Hoelle would be required to sit for another, duplicative, 2-hour deposition on his supplement, when Defendants have already done so

pursuant to the parties' stipulation. Further, the parties' stipulation made clear that Defendants were waiving any right to seek a further sur-rebuttal report by Dr. Murphy in response to Dr. Hoelle's supplement. *See* ECF No. 518 at 1. The stipulation stated:

> **WHEREAS** the parties have agreed that Dr. Hoelle's July 3, 2025 supplemental report will serve as Dr. Hoelle's sur-rebuttal to Dr. Murphy's charts, and that Dr. Hoelle and Dr. Murphy will not file any additional sur-rebuttal report.

Given the parties' stipulation, Defendants never asked the Court to strike the supplement as untimely. *See* ECF No. 520-6 at 4. Instead, Defendants only sought to exclude Dr. Hoelle's entire regression analysis as improper rebuttal. *Id.* For the same reason, Defendants never asked the Court for a further deposition (since Defendants already took an additional deposition on the supplement) and never asked the Court for any further sur-rebuttal response by Dr. Murphy (since Dr. Hoelle's supplement was agreed by the parties to constitute his response to Dr. Murphy's untimely charts). *See* ECF No. 518. By order of the Court, DPPs were given leave to submit the Dr. Hoelle supplement after the discovery cutoff. *See* ECF No. 504 at 1–2 (giving DPPs leave to file a 2-page declaration as a remedy for Dr. Murphy's untimely sur-rebuttal charts); *see also* ECF No. 518 ("[T]he parties have agreed that Dr. Hoelle's July 3, 2025 supplemental report will serve as Dr. Hoelle's sur-rebuttal to Dr. Murphy's charts."). DPPs thus seek clarification on this issue.

**Defendants' Position**

The DPPs' request for "clarification" of the Court's Short Order as to Dr. Hoelle should be rejected.[1] As an initial matter, to the extent that Plaintiffs wish the Court to revisit any of its rulings in the Short Order, ECF No. 627, they should obtain leave of Court to file a Motion for Reconsideration under FRCP 59(e) or 60(b). *See* Civ. L. R. 7-9(a). And given that the Court has yet to explain its reasoning for its decision, it is premature for the DPPs to raise this issue and use this joint statement in lieu of a properly filed motion.

On the merits, the DPPs' request fundamentally misreads the Court's Short Order and misrepresents the litigation history on these issues. The Court's decision to order a supplemental

---

[1] Defendants have no objection to the Court modifying its ruling that purports to deny the motion to exclude Dr. Perry, because (as Plaintiffs correctly note) Defendants never moved to exclude Dr. Perry.

deposition of Dr. Hoelle and a supplemental report from Dr. Murphy was the culmination of months of litigation on the admissibility of Dr. Hoelle's opinions and was directly responsive to issues discussed by the parties at the October 10, 2025, *Daubert* hearing.

These issues can be traced back to the DPPs' decision to disclose Dr. Hoelle as a rebuttal-only witness on March 21, 2025. At the time, Defendants moved to strike Dr. Hoelle's overcharge regressions as improper rebuttal. See ECF No. 471. The Court tentatively agreed with the view that "any opinions of Dr. Hoelle based upon a new regression analysis seem to extend beyond the scope of proper rebuttal," but stated that it would defer its ruling until *Daubert* briefing. ECF No. 472.

Defendants thereafter deposed Dr. Hoelle on May 22, 2025, and that deposition exposed various errors in Dr. Hoelle's analyses. See ECF No. 520-6, at 3. As a result, the DPPs decided to produce a "Supplement" to Dr. Hoelle's report that contained new pricing and overcharge analyses on July 3, 2025. Defendants moved to strike this "Supplement" as untimely and improper. ECF No. 509. But while their motion was pending, the Court ruled that the DPPs could take a second two-hour deposition of Defendants' primary expert, Dr. Kevin Murphy, regarding certain rebuttal charts disclosed by Dr. Murphy during the expert discovery period. In light of this ruling and the Court's prior tentative ruling that suggested the Court was inclined to exclude parts of Dr. Hoelle's opinions, Defendants stipulated with the DPPs that Defendants would receive another two-hour deposition of Dr. Hoelle on the opinions and analyses in his July 3 report. ECF No. 518.[2]

During negotiations over the stipulation, Defendants specifically informed Plaintiffs that they would not agree to any limitations on the testimony Dr. Murphy would offer at trial in response to Dr. Hoelle. Indeed, if the DPPs introduce new regressions in rebuttal through Dr. Hoelle at trial, then Dr. Murphy must have the opportunity to respond to those opinions. As a practical matter, given those reservations, it is unclear why Plaintiffs would not want to receive Dr. Murphy's supplemental report responding to Dr. Hoelle's rebuttal, which will disclose to them ahead of time what Dr. Murphy intends to say.

---

[2] Ultimately, Defendants deposed Dr. Hoelle for a second time on August 29, 2025; the DPPs declined to take a second deposition of Dr. Murphy.

Against this backdrop, Defendants filed their motion to exclude Dr. Hoelle's overcharge regressions and damages opinions as improper rebuttal. *See* ECF No. 520-6. On October 16, 2025, the Court issued its tentative ruling indicating its intention to deny Defendants' motion "because of the lack of prejudice." ECF No. 578, at 2. Accordingly, the parties' arguments as to Dr. Hoelle at the hearing the next day focused on the question of prejudice. Among other things, Defendants specifically argued that Dr. Hoelle's report should be excluded as prejudicial because "Dr. Murphy has never actually had a chance to file a report responding to Dr. Hoelle because Dr. Hoelle filed his report at the last date." *Daubert* Hrg. Tr. 75:7-9. In response, the Court raised the possibility of curing any prejudice by allowing Dr. Murphy to file a rebuttal report, asking: "Then don't you think that it would be fair for the defendants to have their own expert take a look at Dr. Hoelle and provide a rebuttal to Dr. Hoelle?" *Id*. at 89:6-8. In response, DPPs agreed and went so far as to offer a third deposition of Dr. Hoelle: "If they need to take their deposition and have every – everybody have their opportunity to examine the witnesses, then we let the jury decide, I have no objection to that. I'm in favor of that." *Id*. at 89:14-17; *see also id*. at 88:13-15 ("If it's really the case that the defendants have been prejudiced, we would make Dr. Hoelle available for a deposition on a third occasion.").

Because the DPPs have raised this issue before the Court has had the opportunity to explain its reasoning fully, Defendants would not presume to know why the Court granted the relief it did. But given that the supplemental report and additional deposition were the precise measures the parties discussed at the hearing to cure any prejudice to Defendants caused by Dr. Hoelle's untimely disclosure, it is unsurprising that the Court ordered a supplemental report from Dr. Murphy and an additional deposition of Dr. Hoelle. There is no basis for the Court to revisit its rulings at this juncture.

| | |
|---|---|
| DATED: February 20, 2026 | **JOSEPH SAVERI LAW FIRM, LLP** |
| | By:     */s/ Joseph R. Saveri*<br>        Joseph R. Saveri |

Joseph R. Saveri (SBN 130064)
Diane S. Rice (SBN 118303)
Ronnie S. Spiegel (*pro hac vice*)*
David H. Seidel (SBN 307135)
Itak K. Moradi (SBN 310537)
Christopher J. Hydal (*pro hac vice*)**
Trevor Young (*pro hac vice*)***
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Email: jsaveri@saverilawfirm.com
      drice@saverilawfirm.com
      rspiegel@saverilawfirm.com
      dseidel@saverilawfirm.com
      imoradi@saverilawfirm.com
      chydal@saverilawfirm.com
      tyoung@saverilawfirm.com

*Interim Lead Counsel for Direct Purchaser Plaintiffs*

*\*Located in Washington State*
*\*\*Located in New York State*
*\*\*\* Located in Texas State*

**ZWERLING, SCHACHTER & ZWERLING, LLP**

By:     */s/ Robin F. Zwerling*
        Robin F. Zwerling

Robin F. Zwerling (*pro hac vice*)
Justin M. Tarshis (*pro hac vice*)
41 Madison Avenue
New York, NY 10010
Telephone: (212) 223-3900
Email: rzwerling@zsz.com
      jtarshis@zsz.com

*Interim Lead Counsel for Indirect Purchaser Plaintiffs and Indirect Reseller Plaintiffs*

**KAPLAN FOX & KILSHEIMER LLP**

By:      /s/ Elana Katcher
             Elana Katcher

Robert N. Kaplan (*pro hac vice*)
Elana Katcher (*pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Email: rkaplan@kaplanfox.com
            ekatcher@kaplanfox.com

*Steering Committee Counsel for Indirect Purchaser Plaintiffs and Indirect Reseller Plaintiffs*

**CERA LLP**

By:      /s/ C. Andrew Dirksen
             C. Andrew Dirksen

C. Andrew Dirksen (SBN 197378)
529 Main St., Suite P200
Boston, MA 02129
Telephone: (857) 453-6555
Email: cdirksen@cerallp.com

Solomon B. Cera (SBN 099467)
**CERA LLP**
201 California Street, Suite 1240
San Francisco, CA 94111
Telephone: (415) 777-2230
Email: scera@cerallp.com

*Steering Committee Counsel for Indirect Purchaser Plaintiffs and Indirect Reseller Plaintiffs*

| | |
|---|---|
| 1 | **WILKINSON STEKLOFF LLP** |
| 2 | By:      */s/ Beth A. Wilkinson*      |
|   |            Beth A. Wilkinson |
| 3 | |
| 4 | Beth A. Wilkinson (*pro hac vice*) |
|   | James M. Rosenthal (*pro hac vice*) |
| 5 | Matthew Skanchy (*pro hac vice*) |
|   | Alysha Bohanon (*pro hac vice*) |
| 6 | Jenna Pavelec (*pro hac vice*) |
| 7 | 2001 M Street, N.W., 10th Floor |
|   | Washington, D.C. 20036 |
|   | Telephone: (202) 847-4000 |
| 8 | Email: bwilkinson@wilkinsonstekloff.com |
| 9 |            jrosenthal@wilkinsonstekoff.com |
|   |            mskanchy@wilkinsonstekloff.com |
| 10 |           abohanon@wilkinsonstekloff.com |
|    |           jpavelec@wilkinsonstekloff.com |
| 11 | |
| 12 | Moira Penza (*pro hac vice*) |
|    | Jeremy Barber (*pro hac vice*) |
| 13 | **WILKINSON STEKLOFF LLP** |
|    | West 42nd Street, 24th Floor |
| 14 | New York, New York 10036 |
|    | Telephone: (212) 294-8910 |
| 15 | Email: mpenza@wilkinsonstekloff.com |
|    | jbarber@wilkinsonstekloff.com |
| 16 | |
| 17 | |
|    | Lauren S. Wulfe (SBN 287592) |
| 18 | **ARNOLD & PORTER KAYE SCHOLER LLP** |
|    | 777 South Figueroa Street, Forty-Fourth Floor |
| 19 | Los Angeles, California 90017 |
|    | Telephone: 213-243-4000 |
| 20 | Email: Lauren.Wulfe@arnoldporter.com |
| 21 | |
|    | *Counsel for Defendants Altria Group, Inc. and Altria Enterprises LLC* |
| 22 | |

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

By:     */s/ Nowell D. Bamberger*
        Nowell D. Bamberger

David I. Gelfand (*pro hac vice*)
Jeremy J. Calsyn (State Bar No. 205062)
Nowell D. Bamberger (*pro hac vice*)
2112 Pennsylvania Avenue
NW Washington, DC 20037
Telephone: (202) 974-1500
Email: dgelfand@cgsh.com
       jcalsyn@cgsh.com
       nbamberger@cgsh.com

*Counsel for Defendant Juul Labs, Inc.*

**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**

By:     */s/ Michael J. Guzman*
        Michael J. Guzman

Mark C. Hansen (*pro hac vice*)
Michael J. Guzman (*pro hac vice*)
David L. Schwarz (CA Bar No. 206257)
Andrew Skaras (*pro hac vice*)
1615 M Street, NW Suite 400
Washington, DC 20036
Telephone: (202) 326-7900
Email: mhansen@kellogghansen.com
      mguzman@kellogghansen.com
      dschwarz@kellogghansen.com
      askaras@kellogghansen.com

*Counsel for Individual Defendants Nicholas Pritzker and Riaz Valani*

**L.R. 5-1 SIGNATURE ATTESTATION**

As the ECF user whose user ID and password are utilized in the filing of this document, I attest under penalty of perjury that concurrence in the filing of the document has been obtained from each of the other signatories.

Dated: February 20, 2026            By:  */s/ Joseph R. Saveri*
                                          Joseph R. Saveri